## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

KIDDE-FENWAL, INC.,[1]

      Debtor.

KIDDE-FENWAL, INC.,

      Plaintiff,

      v.

ACE AMERICAN INSURANCE COMPANY;
ADMIRAL INSURANCE COMPANY; AETNA
CASUALTY & SURETY COMPANY;
AMERICAN GUARANTEE & LIABILITY
INSURANCE COMPANY; ARCH INSURANCE
COMPANY; ARCH REINSURANCE LTD.;
ARCH SPECIALTY INSURANCE COMPANY;
ATLANTA INTERNATIONAL INSURANCE
COMPANY; CALIFORNIA UNION
INSURANCE COMPANY; CERTAIN
UNDERWRITERS AT LLOYD'S, LONDON
SUBSCRIBING TO POLICY NO. UL73935;
CHARTIS INSURANCE COMPANY OF
CANADA; COLUMBIA CASUALTY
COMPANY; CONTINENTAL INSURANCE
COMPANY; EMPLOYERS MUTUAL
CASUALTY COMPANY; ENDURANCE
AMERICAN SPECIALTY INSURANCE
COMPANY; EVANSTON INSURANCE
COMPANY; FEDERAL INSURANCE
COMPANY; FIRST STATE INSURANCE
COMPANY; GEICO (GOVERNMENT
EMPLOYEES INSURANCE COMPANY);
GIBRALTAR CASUALTY COMPANY; GREAT
AMERICAN ASSURANCE COMPANY; GREAT
AMERICAN INSURANCE COMPANY OF NEW
YORK; HARBOR INSURANCE COMPANY;
HARTFORD FINANCIAL SERVICES GROUP,
INC.; INSURANCE COMPANY OF NORTH
AMERICA; LANDMARK AMERICAN
INSURANCE COMPANY; LEXINGTON
INSURANCE COMPANY; LONDON
GUARANTEE AND ACCIDENT COMPANY OF
NEW YORK; NATIONAL UNION FIRE

Chapter 11

Case No. 23-10638 (LSS)

Adv. Proc. No._____

---

[1] The last four digits of Kidde-Fenwal, Inc.'s tax identification number are 5282. The Debtor's corporate headquarters is located at 400 Main Street, Ashland, Massachusetts 01721.

INSURANCE COMPANY OF PITTSBURGH,
PA; NORTHBROOK EXCESS AND SURPLUS
INSURANCE COMPANY; NORTHBROOK
INSURANCE COMPANY; PACIFIC
EMPLOYERS INSURANCE COMPANY;
PURITAN INSURANCE COMPANY; RSA
INSURANCE GROUP LIMITED; TWIN CITY
FIRE INSURANCE COMPANY; UNITED
NATIONAL INSURANCE COMPANY; ZURICH
AMERICAN INSURANCE COMPANY; ABC
INSURANCE COMPANIES NOS. 1–20,

    Defendants.

## COMPLAINT

Kidde-Fenwal, Inc. ("KFI," "Debtor," or "Plaintiff"), as debtor and debtor-in-possession in the
above-captioned chapter 11 case and plaintiff in this adversary proceeding, by and through its counsel,
alleges for its Complaint, upon knowledge of its own acts and upon information and belief as to other
matters, as follows:

## NATURE OF ACTION

1.    KFI has been named as a defendant in thousands of underlying product liability actions
arising out of the alleged historic design, manufacture, sale, and distribution of the product aqueous
film-forming foam, or AFFF (the "AFFF Claims"). In pertinent part, the claimants in the AFFF Claims
seek to hold KFI liable for bodily injury, personal injury, and/or property damage allegedly sustained as
a result of exposure to or use of AFFF. KFI disputes liability for the AFFF Claims, which are alleged to
arise from the historic manufacture of AFFF products in Pennsylvania by the National Foam Business,
as defined below in Paragraph 57, which KFI owned and operated from 2007 to 2013.

2.    Given KFI's financial situation and the potential for liability associated with the AFFF
Claims that could exhaust KFI's ability to pay, on May 14, 2023, KFI filed in this Court a voluntary
petition for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code").

3.    KFI is an indirect, wholly owned subsidiary of Carrier Fire & Security Americas
Corporation (f/k/a UTC Fire & Security Americas Corporation) ("Carrier Fire"), which is in turn
indirectly wholly owned by Carrier Global Corporation ("Carrier Global").

4.     KFI possesses rights under all insurance coverage provided by the primary, umbrella, and excess liability insurance policies issued to or covering the National Foam Business from its inception through 2013, when the National Foam Business was sold to a third party.

5.     Defendants ACE American Insurance Company; Admiral Insurance Company; Aetna Casualty & Surety Company; American Guarantee & Liability Insurance Company; Arch Insurance Company; Arch Reinsurance Ltd.; Arch Specialty Insurance Company; Atlanta International Insurance Company; California Union Insurance Company; Certain Underwriters at Lloyd's, London Subscribing to Policy No. UL73935; Chartis Insurance Company of Canada; Columbia Casualty Company; Continental Insurance Company; Employers Mutual Casualty Company; Endurance American Specialty Insurance Company; Evanston Insurance Company; Federal Insurance Company; First State Insurance Company; GEICO (Government Employees Insurance Company); Gibraltar Casualty Company; Great American Assurance Company; Great American Insurance Company of New York; Harbor Insurance Company; Hartford Financial Services Group, Inc.; Insurance Company of North America; Landmark American Insurance Company; Lexington Insurance Company; London Guarantee and Accident Company of New York; National Union Fire Insurance Company of Pittsburgh, Pa; Northbrook Excess and Surplus Insurance Company; Northbrook Insurance Company; Pacific Employers Insurance Company; Puritan Insurance Company; RSA Insurance Group Limited; Twin City Fire Insurance Company; United National Insurance Company; Zurich American Insurance Company; and ABC Insurance Companies 1–20 (collectively, "Insurers"), or their respective predecessors-in-interest, issued or subscribed to liability insurance policies issued to the National Foam Business and/or its corporate parents from the 1960s to 2013 (the "Policies").

6.     The Policies known to Plaintiff at this time are set forth in Attachment A hereto, which is incorporated herein by reference.

7.     Upon information and belief, Aetna Casualty & Surety Company, Hartford Financial Services Group, Inc., Insurance Company of North America, RSA Insurance Group Limited, and Zurich American Insurance Company issued or are the successors to insurance companies that issued primary insurance policies (the "Primary Policies") promising to defend and indemnify insured entities, including the National Foam Business, against potentially covered claims, including as is relevant here

the AFFF Claims. Upon information and belief, other Insurers may also have issued primary insurance policies with a duty to defend. The Insurers referenced in this Paragraph 7 are collectively referred to herein as the "Primary Insurers."

8.      Upon information and belief, each Insurer identified in Paragraph 5 issued or is the successor to one or more insurance companies that issued umbrella and/or excess liability insurance policies (the "Excess Policies") insuring the National Foam Business.

9.      Upon information and belief, some or all Insurers issued or subscribed to additional Policies that are unknown to Plaintiff at this time. In the event that any such Policies become known to Plaintiff, Plaintiff through this lawsuit seeks coverage under all such additional Policies issued or subscribed to by any Insurer.

10.      Plaintiff seeks declaratory relief against all Insurers and damages from the Primary Insurers arising out of the Insurers' failure to acknowledge or perform their contractual obligations to defend, pay, reimburse, and indemnify Plaintiff in connection with the AFFF Claims under the Policies. Plaintiff seeks, *inter alia*:

> (a) a declaration of the rights, duties, and liabilities of the parties under the Policies at issue;
>
> (b) damages against the Primary Insurers for breach of their contractual duty to defend Plaintiff against the AFFF Claims; and
>
> (c) costs and attorneys' fees.

## THE PARTIES

11.      KFI is a U.S.-based manufacturing company formed as a Delaware corporation in 1987 and located in Ashland, Massachusetts. KFI has continuously owned and operated numerous lines of business related to industrial fire detection and suppression, as well as temperature control products and products to light and control gas burners. KFI acquired the National Foam Business by merger in 2007 and owned and operated that business until 2013.

12.      ACE American Insurance Company is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Philadelphia, Pennsylvania.

13.      Admiral Insurance Company is a corporation organized under the laws of the State of Delaware and has its principal place of business in Scottsdale, Arizona.

14.     The Aetna Casualty & Surety Company ("Aetna"), now known as Travelers Casualty and Surety Company ("Travelers") following the purchase of Aetna by Travelers Property Casualty Corp. in 1996 and name change in 1997, is a corporation organized under the laws of the State of Connecticut and has its principal place of business in Hartford, Connecticut.

15.     American Guarantee and Liability Insurance Company is a corporation organized under the laws of the State of New York and has its principal place of business in Schaumburg, Illinois.

16.     Arch Insurance Company is a corporation organized under the laws of the State of Missouri and has its principal place of business in Jersey City, New Jersey.

17.     Arch Reinsurance Ltd. is a corporation organized under the laws of Bermuda and has its principal place of business in Pembroke, Bermuda.

18.     Arch Specialty Insurance Company is a corporation organized under the laws of the State of Missouri and has its principal place of business in Stamford, Connecticut.

19.     Atlanta International Insurance Company, now known as Wellfleet New York Insurance Company following corporate reorganization, including its purchase by Columbia Insurance Company in 2017 and name change in 2019, is a corporation organized under the laws of the State of New York and has its principal place of business in Fort Wayne, Indiana.

20.     California Union Insurance Company, now known as Century Indemnity Company, following corporate reorganization, including a name change in 1994 and a merger in 1996, is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Philadelphia, Pennsylvania.

21.     On information and belief, Certain Underwriters at Lloyd's, London are individuals, unincorporated associations, partnerships and/or corporations existing under the laws of various foreign and domestic jurisdictions who have subscribed to insurance policies through the Lloyd's of London insurance market located in the United Kingdom, including but not limited to those subscribing to Policy No. UL73935.

22.     Chartis Insurance Company of Canada, now known as AIG Insurance Company of Canada following a name change in 2013, is a corporation organized under the laws of Canada and has its principal place of business in Toronto, Canada.

23.     Columbia Casualty Company is a corporation organized under the laws of the State of Illinois and has its principal place of business in Chicago, Illinois.

24.     Continental Insurance Company is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Chicago, Illinois.

25.     Employers Mutual Casualty Company is a corporation organized under the laws of the State of Iowa and has its principal place of business in Des Moines, Iowa.

26.     Endurance American Specialty Insurance Company is a corporation organized under the laws of the State of Delaware and has its principal place of business in Purchase, New York.

27.     Evanston Insurance Company is a corporation organized under the laws of the State of Illinois and has its principal place of business in Rosemond, Illinois.

28.     Federal Insurance Company is a corporation organized under the laws of the State of Indiana and has its principal place of business in Whitehouse Station, New Jersey.

29.     First State Insurance Company is a corporation organized under the laws of the State of Connecticut and has its principal place of business in Boston, Massachusetts.

30.     GEICO (Government Employees Insurance Company) is a corporation organized under the laws of the State of Nebraska and has its principal place of business in Washington, DC.

31.     Upon information and belief, Gibraltar Casualty Company, now known as TIG Insurance Company following corporate reorganization, including mergers in 2015 and 2016, is a corporation organized under the laws of the State of California and has its principal place of business in Manchester, New Hampshire.

32.     Great American Assurance Company is a corporation organized under the laws of the State of Ohio and has its principal place of business in Cincinnati, Ohio.

33.     Great American Insurance Company of New York is a corporation organized under the laws of the State of New York and has its principal place of business in Cincinnati, Ohio.

34.     Harbor Insurance Company, now known as Greenwich Insurance Company following a name change in 1991, is a corporation organized under the laws of Delaware and has its principal place of business in Stamford, Connecticut.

35.     Hartford Financial Services Group, Inc. ("Hartford") is a corporation organized under the laws of the State of Delaware and has its principal place of business in Hartford, Connecticut.

36.     Insurance Company of North America is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Philadelphia, Pennsylvania.

37.     Landmark American Insurance Company is a corporation organized under the laws of the State of New Hampshire and has its principal place of business in Atlanta, Georgia.

38.     Lexington Insurance Company is a corporation organized under the laws of the State of Delaware and has its principal place of business in Boston, Massachusetts.

39.     London Guarantee and Accident Company of New York, now known as Centre Insurance Company following corporate reorganization, including a purchase and name change in 1998, is a corporation organized under the laws of the State of Delaware and has its principal place of business in New York, New York.

40.     National Union Fire Insurance Company of Pittsburgh, Pa. is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in New York, New York.

41.     Northbrook Excess and Surplus Insurance Company, now known as Allstate Insurance Company following a merger in 1985, is a corporation organized under the laws of the State of Illinois and has its principal place of business in Northbrook, Illinois.

42.     Northbrook Insurance Company, now known as Allstate Insurance Company following a name change in 1978 and a merger in 1985, is a corporation organized under the laws of the State of Illinois and has its principal place of business in Northbrook, Illinois.

43.     Pacific Employers Insurance Company is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Philadelphia, Pennsylvania.

44.     Puritan Insurance Company, now known as Westport Insurance Corporation following corporate reorganization, including a merger and name change in 2008, is a corporation organized under the laws of the State of Missouri and has its principal place of business in Kansas City, Missouri.

45.     Upon information and belief, RSA Insurance Group Limited is a corporation organized under the laws of England that has its principal place of business in London, England, and is a

successor-in-interest under certain policies issued by Royal Indemnity Company, including the insurance policies identified in Attachment A to this Complaint.

46.     Twin City Fire Insurance Company is a corporation organized under the laws of the State of Indiana and has its principal place of business in Indianapolis, Indiana.

47.     United National Insurance Company is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Bala Cynwyd, Pennsylvania.

48.     Zurich American Insurance Company is a corporation organized under the laws of the State of New York and has its principal place of business in Schaumburg, Illinois.

49.     ABC Insurance Companies 1–20 are the fictitious names of insurance companies presently unknown to Plaintiff, despite having conducted a reasonable search with due diligence, that, upon information and belief, issued or subscribed to Policies issued to the National Foam Business and/or its corporate parents between the 1960s and 2013.

## JURISDICTION AND VENUE

50.     This adversary proceeding was commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure and includes an action for declaratory judgment pursuant to 28 U.S.C. § 2201.

51.      This court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(c) and 1334(b) and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated February 29, 2012.

52.     The potential liabilities KFI is facing in connection with the AFFF Claims for which it seeks coverage in this case were a significant factor in the decision to commence KFI's bankruptcy proceeding.  The Policies at issue are shared assets of KFI and other non-party policyholders, and resolution of the claims made under the Policies will have a significant impact on the value of KFI's bankruptcy estate.

53.     Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Plaintiff consents to the entry of a final order by the Court in connection with this adversary proceeding to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

54. This Court has personal jurisdiction over each of the Defendants under Federal Rule of Bankruptcy Procedure 7004(f).

55. Venue for this matter is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND FACTS**

**A. The History of the National Foam Business**

56. National Foam System, Inc., a manufacturer and distributor of fire extinguishing products, was incorporated in Delaware in or about 1927 and registered in Pennsylvania in or about 1928. It existed as an independent company until 1969. National Foam System, Inc. had its principal place of business in West Chester, Pennsylvania.

57. As described in more detail in Paragraphs 60 through 95 below, from 1969 to 2013, the business that was originally known as National Foam System, Inc., was acquired by various companies and underwent multiple name changes. Upon information and belief, the business was operated under various names from 1969 to 2013, including "National Foam System, Inc.," the "National Foam System, Inc. Division of PSC," the "National Foam System, Inc. Division of Enterra," "National Foam, Inc.," "Chubb National Foam, Inc.," "Kidde Fire Fighting, Inc.," "Kidde-Fenwal, Inc.," and the "National Foam Business" (collectively, the "National Foam Business"). Throughout the period from 1927 through 2013, the National Foam Business manufactured, sold, or distributed firefighting products.

58. The AFFF Claims against KFI are premised on allegations related to the design, manufacture, sale, and distribution of AFFF by the National Foam Business. AFFF is a highly effective fire suppressant developed and used for the suppression of Class B fires involving flammable liquids such as petroleum, jet fuel, and other liquid hydrocarbons.

59. Upon information and belief, the National Foam Business's headquarters, physical plants, and facilities, including for its manufacture of AFFF, were at all relevant times located in or around Chester County, Pennsylvania.

> **1. 1927–1987: National Foam System, Inc., Philadelphia Suburban Corp., and Enterra Corp.**

60. During the period in which it was an independent company, National Foam System, Inc. purchased various liability insurance policies from its headquarters in Pennsylvania, including policies

issued by Insurers that cover liabilities arising out of the design, manufacture, sale, and distribution of AFFF (the "NFS Policies").

61.     Philadelphia Suburban Corporation ("PSC"), now known as Essential Utilities, Inc., was formed under the laws of the Commonwealth of Pennsylvania in or around 1968 and is headquartered in Bryn Mawr, Pennsylvania.

62.     Upon information and belief, in or about 1969, PSC acquired National Foam System, Inc., including insurance rights under the NFS Policies, through a purchase of the entirety of National Foam System, Inc.'s outstanding stock.

63.     Upon information and belief, from the date of its acquisition by PSC until November 5, 1974, National Foam System, Inc. was, and did business as, a wholly-owned subsidiary of PSC.  On or about November 5, 1974, National Foam System, Inc. merged into PSC pursuant to Section 907 of Pennsylvania's Business Corporation Law.  Pursuant to the merger, PSC directly assumed all of the rights and obligations of National Foam System, Inc., and acquired insurance rights then belonging to the National Foam Business, including insurance rights under the NFS Policies.

64.     Upon information and belief, for some period of time following this merger, the National Foam Business did business as an unincorporated division of PSC and was referred to as the "National Foam System, Inc. Division."  That Division was part of PSC's Fire Protection and Specialty Services group.  During the period from 1969 to May 28, 1981, PSC purchased various liability insurance policies, including policies issued by Insurers that cover liabilities arising out of the design, manufacture, sale, and distribution of AFFF by National Foam System, Inc. and/or by the National Foam System, Inc. Division (the "PSC Policies").

65.     On or about May 28, 1981, PSC split into two separate, publicly traded companies—PSC and Enterra Corporation ("Enterra").  Enterra was a corporation organized under the laws of the Commonwealth of Pennsylvania and its headquarters were located in Philadelphia, Pennsylvania.

66.     Pursuant to the May 28, 1981 corporate reorganization, all of the assets and liabilities of PSC's Fire Protection and Specialty Services group, of which the National Foam System, Inc. Division was a part, were transferred to Enterra.  Enterra thereby acquired insurance rights then belonging to the

National Foam Business and its parent company, including insurance rights under the PSC Policies and the NFS Policies.

67.     From May 28, 1981, to April 30, 1987, the National Foam Business did business as an unincorporated division of Enterra and continued to be referred to as the "National Foam System, Inc. Division."  During the period from May 28, 1981, to April 30, 1987, Enterra purchased various liability insurance policies, including policies issued by Insurers that cover liabilities arising out of the design, manufacture, sale, and distribution of AFFF by the National Foam System, Inc. Division (the "Enterra Policies").

### 2.     1987–1997: Racal-Chubb, Inc., Racal Electronics plc, and Chubb Security plc

68.     On or about March 3, 1987, a corporation called National Foam System, Inc. was formed under the laws of the Commonwealth of Pennsylvania ("National Foam PA").

69.     In or about April 1987, Racal Electronics plc, through its subsidiary Racal-Chubb Fire Security, Inc. ("Racal-Chubb"), purchased the outstanding stock of Enterra and transferred all the assets and property of, and the business conducted by, the National Foam System, Inc. Division of Enterra to National Foam PA.

70.     Upon information and belief, pursuant to the stock purchase and asset transfer described in Paragraph 69, Racal-Chubb owned the National Foam Business and acquired insurance rights then belonging to the National Foam Business and its parent company, including insurance rights under the Enterra Policies, the PSC Policies, and the NFS Policies.

71.     On or about May 2, 1988, National Foam PA was renamed Chubb National Foam, Inc.

72.     Upon information and belief, on or about October 5, 1992, Racal Electronics plc de-merged its security business, including Racal-Chubb, which owned Chubb National Foam, Inc., from a division within Racal Electronics plc into an independent, publicly-listed entity called Chubb Security plc.

73.     On or about August 30, 1993, Chubb National Foam, Inc. was renamed National Foam, Inc.

74.     Upon information and belief, from April 30, 1987, until February 1997, the National Foam Business was, and did business as, a wholly owned subsidiary of Racal-Chubb, which was in turn owned at times by Racal Electronics plc or Chubb Security plc.  During the period from April 30, 1987, to February 1997, Racal-Chubb purchased various liability insurance policies, including policies issued by Insurers, that cover liabilities arising out of the design, manufacture, sale, and distribution of AFFF by National Foam PA, Chubb National Foam, Inc., and/or National Foam, Inc. (the "Racal-Chubb Policies").

### 3.     1997–2005: Williams Holdings plc and Kidde plc

75.     Upon information and belief, in or about 1917, the Walter Kidde Company was formed under the laws of the State of New York.  In 1980, it changed its name to Kidde, Inc.

76.     On or about March 3, 1987, Kidde Fire Fighting, Inc. was formed under the laws of the Commonwealth of Pennsylvania.  Kidde Fire Fighting, Inc. was a wholly owned subsidiary of Kidde, Inc.

77.     On or about September 20, 1987, KFI was formed under the laws of the State of Delaware.  KFI was a wholly owned subsidiary of Kidde, Inc.

78.     Upon information and belief, in or about November 1988, Williams Holdings plc acquired Kidde, Inc., including its subsidiaries Kidde Fire Fighting, Inc. and KFI.

79.     Upon information and belief, in or about February 1997, Williams Holdings plc acquired Chubb Security plc, which owned National Foam, Inc.

80.     Upon information and belief, pursuant to its acquisition of National Foam, Inc., Williams Holdings plc acquired insurance rights then belonging to the National Foam Business and its parent company, including insurance rights under the Racal-Chubb Policies, the Enterra Policies, the PSC Policies, and the NFS Policies.

81.     From February 1997 until November 10, 2000, the National Foam Business continued to be known as National Foam, Inc. and was a wholly owned subsidiary of Williams Holdings plc.  During the period from February 1997 until November 10, 2000, Williams Holdings plc purchased various liability insurance policies, including policies issued by Insurers, that cover liabilities arising out of the

design, manufacture, sale, and distribution of AFFF by National Foam, Inc. (the "Williams Holdings Policies").

82.     On or about November 10, 2000, Williams Holdings plc de-merged Kidde, Inc. into a separate, publicly listed entity named Kidde plc.  As part of this reorganization, National Foam, Inc. became a wholly owned subsidiary of Kidde plc.

83.     Upon information and belief, Kidde plc acquired insurance rights then belonging to the National Foam Business and its parent company, including insurance rights under the Williams Holdings Policies, the Racal-Chubb Policies, the Enterra Policies, the PSC Policies, and the NFS Policies.

84.     On or about January 1, 2002, National Foam, Inc. was re-named Kidde Fire Fighting, Inc.

85.     From November 10, 2000, until April 1, 2005, the National Foam Business was, and did business as, an indirect, wholly owned subsidiary of Kidde plc.  During the period from November 10, 2000, until April 1, 2005, Kidde plc purchased various liability insurance policies, including policies issued by Insurers, that cover liabilities arising out of the design, manufacture, sale, and distribution of AFFF by National Foam, Inc. and/or Kidde Fire Fighting, Inc. (the "Kidde Policies").

### 4.     2005–2013: United Technologies Corp.

86.     On or about April 1, 2005, United Technologies Corp. ("UTC") acquired Kidde plc and all of its subsidiaries, including Kidde Fire Fighting, Inc. and KFI, by purchasing all of Kidde plc's outstanding stock.

87.     Upon information and belief, pursuant to the stock purchase, UTC acquired insurance rights then belonging to the National Foam Business and its parent company, including insurance rights under the Kidde Policies, the Williams Holdings Policies, the Racal-Chubb Policies, the Enterra Policies, the PSC Policies, and the NFS Policies.

88.     From April 1, 2005, until March 8, 2007, the National Foam Business continued to be known as Kidde Fire Fighting, Inc. and was an indirect, wholly owned subsidiary of UTC.

89.     On or about March 8, 2007, Kidde Fire Fighting, Inc. was merged into KFI pursuant to Section 252 of the General Corporation Law of Delaware.  As a result of this merger, the National Foam Business became part of KFI.

90.    From March 8, 2007, until June 28, 2013, the National Foam Business did business as an unincorporated entity within KFI.  KFI was an indirect, wholly owned subsidiary of UTC Fire & Security Americas Corporation (n/k/a Carrier Fire), which in turn was an indirect, wholly owned subsidiary of UTC.

91.    During the period from April 1, 2005, until June 28, 2013, UTC purchased various liability insurance policies, including policies issued by Insurers, that cover liabilities arising out of the design, manufacture, sale, and distribution of AFFF by Kidde Fire Fighting, Inc. and/or KFI (the "UTC Policies").

### 5.    2013 Sale of the National Foam Business

92.    By a Share and Business Sale Agreement dated June 28, 2013 (the "Sale Agreement"), the assets comprising the "National Foam Business," defined as "the unincorporated business trading as National Foam . . . as currently carried on by Kidde-Fenwal," were severed from KFI and sold to Eurostar Holdco Ltd., a corporation controlled by Lloyds Development Capital.

93.    National Foam, Inc., a Delaware corporation formed in 2013, ("New National Foam") is the entity that has owned the National Foam Business since June 28, 2013.

94.    The ownership of KFI was unaffected by the sale of the National Foam Business, and KFI continued to be an indirect, wholly owned subsidiary of UTC Fire & Security Americas Corporation (n/k/a Carrier Fire) and UTC.

95.    Pursuant to the terms of the Sale Agreement, UTC and KFI retained the insurance rights under the UTC Policies, the Kidde Policies, the Williams Holdings Policies, the Racal-Chubb Policies, the Enterra Policies, the PSC Policies, and the NFS Policies.

### 6.    Carrier Global

96.    Carrier Corporation was formed in 1915 in New York.  From 1979 through April 2020, Carrier Corporation was a wholly owned subsidiary of UTC.

97.    On or about April 2, 2020, UTC transferred Carrier Corporation, UTC Fire & Security Americas Corporation (n/k/a Carrier Fire), Kidde plc Inc., KFI, and other entities to the newly-formed Carrier Global Corporation.  UTC then spun off Carrier Global Corporation, including UTC Fire & Security Americas Corporation (n/k/a Carrier Fire), Kidde plc Inc., and KFI, as a separate public

company. As of the date of this spin off, UTC Fire & Security Americas Corporation (n/k/a Carrier Fire), Kidde plc Inc., and KFI became indirect, wholly owned subsidiaries of Carrier Global.

98.     UTC Fire & Security Americas Corporation was renamed Carrier Fire on or about October 1, 2020.

99.     Other than certain *de minimis* employee shares, Carrier Global remains the sole owner of Carrier Fire, Kidde plc Inc., and KFI.

100.    Pursuant to the spin-off, Carrier Global and its subsidiaries, including KFI, acquired insurance rights then belonging to the National Foam Business and its parent company prior to its 2013 sale, including insurance rights under the UTC Policies, the Kidde Policies, the Williams Holdings Policies, the Racal-Chubb Policies, the Enterra Policies, the PSC Policies, and the NFS Policies.

### B.     The Underlying AFFF Claims

101.    KFI has been named as a defendant in more than 4,700 product liability lawsuits arising out of the alleged historic manufacture, sale, and distribution of AFFF, including products containing AFFF. Additional AFFF actions have continued to be filed.

102.    KFI contends that it has no liability in connection with the AFFF Claims.

103.    The AFFF Claims allege that AFFF manufactured by the National Foam Business historically contained or degraded into one or more types of per- and polyfluoroalkyl substances ("PFAS"), including perfluorinated octanoic acid ("PFOA"). The claimants allege that certain types of PFAS, including PFOA, are known carcinogens, are bioaccumulative, and cause certain cancers and other bodily injury or property damage. The AFFF claimants allege exposure to AFFF starting in the 1960s.

104.    Most of the AFFF Claims have been consolidated in the federal multi-district litigation *In re: Aqueous Film-Forming Foams Product Liability Litigation*, MDL No. 2:18-mn-2873, in the United States District Court for the District of South Carolina. More than 5,000 cases have been consolidated in the MDL. KFI is named in a substantial majority of the MDL cases.

105.    The MDL cases are brought by individuals, including firefighters and individuals who live near military bases, airports, fire training academies, and other locations where AFFF-containing

products allegedly were used; the MDL cases are also brought by water providers, state attorneys general, and other entities across the country.

106. More than 90% of the AFFF Claims against KFI consolidated in the MDL have been brought by individual plaintiffs who have allegedly suffered personal injury or bodily injury that they attribute to exposure to AFFF, including AFFF incorporated into products. More than 3,200 of the MDL cases were brought by individual firefighters, and additional firefighter actions have continued to be filed.

107. The individual AFFF Claims contain substantially similar claims and allegations. Common allegations of exposure to AFFF include exposure by ingestion, by inhalation, by dermal contact, or through the use of AFFF-containing products. Representative allegations include:

(a) "Plaintiff conducted routine [firefighter] trainings using Defendants' AFFF and fluorochemical products" which "proximately caused" Plaintiff's illness. Complaint, *Knesley v. 3M Company, et al.*, ¶¶ 98, 102, 2:20-cv-2759-RMG (D.S.C. July 27, 2020).

(b) "Defendant's PFAS-containing AFFF products were used by the Plaintiff in their intended manner, without significant change in the products' condition. . . . Plaintiff's consumption, inhalation and/or dermal absorption of PFAS from Defendant's AFFF products caused Plaintiff to develop the serious medical conditions and complications alleged herein." Complaint, *Schremp v. 3M Company, et al.*, ¶ 6, 2:21-cv-03599-RMG (D.S.C. Nov. 1, 2021).

(c) "During Plaintiff's use of Defendants' AFFF products . . . Plaintiff ingested such products, and the PFOA and/or PFOS and/or their precursor chemicals entered Plaintiff's body." Complaint, *Wright, et al. v. 3M Company, et al.*, ¶ 100, 2:21-cv-03627-RMG (D.S.C. Nov. 3, 2021).

(d) "Throughout the time of his service as a firefighter in the United States Navy, Plaintiff regularly used and was exposed to Defendants' AFFF products" and "Plaintiff ingested such products, and the PFOA and/or PFOS and/or their precursor chemicals entered Plaintiff's body." Complaint, *Chisholm, et al. v. 3M Company, et al.*, ¶¶ 99-100, 2:21-cv-03729-RMG (D.S.C. Nov. 12, 2021).

108. The individual AFFF Claims allege that exposure to and/or the use of the National Foam Business's products containing AFFF caused bodily injury, personal injury, and/or property damage and seek damages based on causes of action sounding in product liability, strict liability, negligence, and negligent failure to warn, among others.

109. The AFFF Claims brought by water providers, state attorneys general, and other entities allege that the use of the National Foam Business's products containing AFFF caused bodily injury, personal injury, and/or property damage. These claimants seek damages based on causes of action sounding in product liability, strict liability, defective design, breach of the implied warranty of merchantability, failure to warn, and negligence, among others.

110. Plaintiff reasonably anticipates that additional lawsuits similar to the AFFF Claims will continue to be filed in the future.

111. In an order entered on May 16, 2023, the MDL court stated that KFI's chapter 11 filing resulted in an automatic stay of claims against KFI. Text Order, *City of Stuart, Fla. v. 3M et al.*, No. 2:18-cv-03487-RMG (D.S.C. May 16, 2023) (ECF No. 326).

112. To date, KFI has incurred more than $10 million in defense costs related to the AFFF Claims. In the AFFF Claims, the claimants seek damages in excess of amounts that, when allocated in accordance with law, are sufficient to reach each of the Policies.

**C. The Policies At Issue**

113. Upon information and belief, each of the Insurers or their respective predecessors-in-interest, in consideration of premiums paid by the National Foam Business and/or its corporate parents, issued or subscribed to primary, umbrella, and/or excess Policies in effect between the 1960s and 2013 covering the National Foam Business.

114. As set forth in Paragraphs 56 to 100 above, KFI is a legal successor to the National Foam Business's rights under the Policies.

115. As described in more detail below, upon information and belief, each of the Policies provides broad coverage for claims seeking damages due to alleged bodily injury, personal injury, and/or property damage arising out of the manufacture, sale, and distribution of AFFF by the National Foam Business.

116.    Beginning in May 2020, KFI began requesting copies of the Policies from certain of the Insurers.

117.    Upon information and belief, some or all of the Insurers issued additional Policies that are in the possession of Defendants and are currently unknown to KFI.  For example:

(a) Defendant Travelers has acknowledged that it has copies of relevant Policies in its possession but has refused to provide copies of those Policies to KFI.

(b) KFI possesses secondary evidence that Defendant Hartford issued primary liability insurance incepting in 1976.  Specifically, the Excess Policy issued by Northbrook Insurance Company for the period August 1, 1976, to August 1, 1977, Policy No. 63 002 090, identifies "Hartford" as the insurer that issued the first underlying policy.

118.    Upon information and belief, each of the Policies requires the issuing or subscribing Insurers to pay or to indemnify KFI for all sums that it becomes legally obligated to pay as a result of claims and suits by third parties alleging bodily injury, personal injury, or property damage arising out of the National Foam Business's operations, so long as any part of the bodily injury, personal injury, or property damage happened during the period in which the Policy was in effect.

119.    This duty to pay or to indemnify KFI for "all sums" includes a promise by each Insurer to pay or to indemnify Plaintiff for all damages incurred by Plaintiff pursuant to a settlement or judgment of an AFFF Claim, as long as any part of the alleged injury or damage occurred during the policy period. The duty to pay mentioned in the preceding sentence applies (a) immediately as to Primary Policies without any retention or deductible, and (b) as soon as losses and/or defense costs are sufficient to reach the attachment point of any Policies that are subject to a retention, deductible or underlying limit (if any) expressly set forth in the Policies.

120.    The Primary Policies also require the Primary Insurers to defend KFI, to pay, or to reimburse KFI for all costs, including attorneys' fees, experts' fees, and supplemental expenses, incurred by Plaintiff in the investigation and defense of underlying actions alleging bodily injury, personal injury, or property damage that potentially took place, in whole or in part, during the relevant policy periods. The Primary Insurers' obligation to defend potentially covered actions against KFI (the "duty to defend") applies even if the underlying allegations are groundless, false, or fraudulent.  The Primary

Insurers' duty to defend KFI continues until the applicable limits of liability set forth in the Primary Policies are exhausted.

121. Upon information and belief, the promise by each Insurer that issued or subscribed to an Excess Policy to pay or indemnify for "all sums" includes a promise to defend, to pay, or to reimburse KFI for all costs, including attorneys' fees and supplemental expenses, incurred by KFI in the investigation and defense of claims and suits for which the insurer has a potential duty to indemnify as set forth in Paragraph 118 ("Defense Obligation"). These Insurers' Defense Obligation is subject only to exhaustion of applicable underlying, upper, or quota-share limits of liability (if any) expressly set forth in the Policies.

122. Upon information and belief, all premiums due under the Policies have been paid and all other pertinent conditions and requirements for obtaining the declaration of coverage under the Policies sought herein have been or will be satisfied and/or have been waived, excused, or are subject to an estoppel against the Insurers, such that Plaintiff is entitled to seek the relief herein sought.

123. Upon information and belief, none of the Policies contain terms that apply to preclude coverage for the AFFF Claims.

124. Each of the AFFF Claims alleges a covered, or potentially covered, occurrence, and seeks damages for bodily injury, property damage, or personal injury, as those terms are defined in the Policies. Accordingly, the Primary Insurers have a current duty to defend and/or to pay or reimburse defense costs in full.

125. Despite multiple requests, no Primary Insurer has agreed to defend KFI against the AFFF Claims or to pay or reimburse KFI's defense costs incurred in connection with the AFFF Claims.

126. Despite multiple requests, no Insurer has acknowledged its coverage obligations to KFI for the AFFF Claims, nor has any Insurer agreed to provide coverage for those Claims upon exhaustion of any applicable underlying limits.

127. KFI is entitled to defense coverage from any Insurer that issued a Policy containing a duty to defend or a Defense Obligation (as defined in Paragraphs 120 and 121).

128. In addition to the Insurers' obligation to cover defense costs, to the extent that KFI is held liable for any AFFF Claims, any such liability would be covered under each Policy that was in effect

during any portion of the period in which bodily injury, personal injury, or property damage allegedly happened.

129.     An actual controversy of a justiciable nature presently exists between KFI and the Insurers concerning the proper construction of the Policies and the extent of the Insurers' duty to defend, pay and/or reimburse KFI for any damages, losses, liabilities, defense costs, or other monetary obligations that may be sustained by or imposed upon KFI as a result of the AFFF Claims and any similar AFFF-related claims that may be filed in the future.

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief – Primary Insurers' Duty to Defend)

130.     KFI repeats and reincorporates by reference the allegations set forth in Paragraphs 1 through 129 as if fully set forth herein.

131.     This is a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201 et seq.  KFI seeks declaratory relief in the form of a judicial determination of the rights and of the duties of the Primary Insurers to defend KFI against the AFFF Claims and any similar AFFF-related claims that may be filed in the future under the Primary Policies.

132.     Pursuant to the terms of the Primary Policies, the Primary Insurers have a duty to defend KFI against the AFFF Claims and any similar AFFF-related claims that may be filed in the future.  The Primary Insurers' contractual duty to defend KFI as set forth herein is subject only to the conditions set forth in Paragraph 120, which are incorporated herein by reference.

133.     No Primary Insurer has accepted its obligation to defend KFI against the AFFF Claims as required under the terms of each Primary Policy issued by each Primary Insurer.

134.     Through their failure to provide a complete defense to KFI despite multiple requests that they provide such a defense, each Primary Insurer has effectively denied coverage for the AFFF Claims.

135.     An actual controversy of a justiciable nature presently exists between KFI and the Primary Insurers concerning the proper construction of the Primary Policies and the extent of the Primary Insurers' duty to defend KFI against the AFFF Claims and any similar AFFF-related claims that may be filed in the future.  The issuance of declaratory relief by this Court addressing the Primary Insurers' duty to defend KFI will terminate some or all of the existing controversy between the parties.

136.     Plaintiff also seeks an award of attorneys' fees and costs for prosecuting this claim for declaratory relief.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract – Primary Insurers' Duty to Defend)

137.     KFI repeats and reincorporates by reference the allegations set forth in Paragraphs 1 through 129 as if fully set forth herein.

138.     This is a claim for damages for breach of contract.  KFI seeks reimbursement from the Primary Insurers of the defense costs they have incurred and will continue to incur to defend against the AFFF Claims, which the Primary Insurers have failed or refused to defend.

139.     KFI has incurred and/or will continue to incur financial losses in the investigation and defense of the AFFF Claims.

140.     The Primary Insurers have breached their contractual obligations under the Primary Policies to provide a complete defense to KFI against the AFFF Claims.

141.     As a direct result of the Primary Insurers' breach of their duty to defend, KFI has been and will be deprived of the benefit of the insurance coverage for which Plaintiff's predecessors paid substantial premiums, and have been and will be forced to pay sums in the investigation and defense of the AFFF Claims, including attorneys' fees, experts' fees, and supplemental expenses, which the Primary Insurers have a contractual obligation to pay.

142.     As a direct result of the Primary Insurers' breach of their duty to defend, KFI has been forced to incur and will continue to incur consequential damages, including, without limitation, attorneys' fees and other expenses in bringing these claims and the interest and lost earnings on amounts wrongfully held by the Primary Insurers, which damages are not subject to the Primary Policies' limits of liability.

143.     As a direct and proximate result of the aforesaid acts and omissions by the Primary Insurers, KFI has been damaged in an amount to be proven at trial, for all damages, costs, and payments, and other sums.

## THIRD CLAIM FOR RELIEF

### (Declaratory Relief – Insurers' Defense Obligation under Excess Policies)

144.     KFI repeats and reincorporates by reference the allegations set forth in Paragraphs 1 through 129 as if fully set forth herein.

145.     This is a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201 et seq. KFI seeks declaratory relief in the form of a judicial determination of the rights and of the duties of the Insurers with respect to their Defense Obligation under the Excess Policies for the AFFF Claims and any similar AFFF-related claims that may be filed in the future. The Insurers' contractual Defense Obligation is subject only to the conditions set forth in Paragraph 121, which is incorporated herein by reference.

146.     The Insurers have denied or otherwise failed or refused to acknowledge their Defense Obligation pursuant to the Excess Policies with respect to the AFFF Claims and with respect to any similar AFFF-related claims that may be filed in the future.

147.     An actual controversy of a justiciable nature presently exists between KFI and the Insurers concerning the proper construction of the Excess Policies and the extent of the Insurers' Defense Obligation. The issuance of declaratory relief by this Court addressing the Insurers' Defense Obligation will terminate some or all of the existing controversy between the parties.

148.     KFI also seeks an award of attorneys' fees and costs for prosecuting this claim for declaratory relief.

### FOURTH CLAIM FOR RELIEF

### (Declaratory Relief – Insurers' Duty to Indemnify)

149.     KFI repeats and reincorporates by reference the allegations set forth in Paragraphs 1 through 129 as if fully set forth herein.

150.     This is a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201 et seq. KFI seeks declaratory relief in the form of a judicial determination of the rights and the obligations of the Insurers under the Policies to indemnify KFI for any damages, losses, liabilities, and monetary obligations that may be sustained by or imposed upon Plaintiff as a result of the AFFF Claims and any similar AFFF-related claims that may be filed in the future.

151.     Pursuant to the terms of the Insurance Policies, the Insurers are obligated to indemnify KFI for, or pay on their behalf, all sums that they become legally obligated to pay through judgment, settlement, or otherwise as a result of the AFFF Claims and any similar AFFF-related claims that may be

filed in the future. The Insurers' contractual duty to indemnify KFI as set forth herein is subject only to the conditions set forth in Paragraph 119, which is incorporated herein by reference.

152. The Insurers have denied or otherwise failed or refused to acknowledge their duty to indemnify KFI with respect to the AFFF Claims and with respect to any similar AFFF-related claims that may be filed in the future.

153. An actual controversy of a justiciable nature presently exists between KFI and the Insurers concerning the proper construction of the Policies and the extent of the Insurers' duty to indemnify KFI for any damages, losses, liabilities, and monetary obligations that may be sustained by or imposed upon KFI as a result of the AFFF Claims. The issuance of declaratory relief by this Court addressing the Insurers' duty to indemnify KFI will terminate some or all of the existing controversy between the parties.

154. KFI also seeks an award of attorneys' fees and costs for prosecuting this claim for declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

155. On the First Claim for Relief, KFI requests that the Court enter a judgment:

   (a) declaring that the Primary Insurers are contractually obligated to provide a complete defense to KFI, including to pay its reasonable attorneys' fees, experts' fees, and other costs, in connection with the AFFF Claims and any similar AFFF-related claims that may be filed in the future;

   (b) entering a judgment awarding KFI its reasonable attorneys' fees, interest, costs and the expenses of this action; and

   (c) awarding such other and further relief as the Court deems just and proper.

156. On the Second Claim for Relief, KFI requests that the Court enter a judgment:

   (a) awarding KFI compensatory damages and consequential damages, in an amount to be proven at trial, plus interest thereon and costs according to law, for the Primary Insurers' breach of their contractual duty to defend KFI against the AFFF Claims;

(b) entering a judgment awarding KFI its reasonable attorneys' fees, interest, costs and the expenses of this action; and

(c) awarding such other and further relief as the Court deems just and proper.

157. On the Third Claim for Relief, KFI request that the Court enter a judgment:

(a) declaring that pursuant to the terms of the Excess Policies, the Insurers are obligated to defend, pay for, or reimburse KFI for costs incurred by KFI with respect to the defense of the AFFF Claims and any similar AFFF-related claims that may be filed in the future, subject only to exhaustion of any applicable underlying or upper limit of liability as set forth in each of the Excess Policies;

(b) entering a judgment awarding KFI its reasonable attorneys' fees, interest, costs and the expenses of this action; and

(c) awarding such other and further relief as the Court deems just and proper.

158. On the Fourth Claim for Relief, KFI requests that the Court enter a judgment:

(a) declaring that pursuant to the terms of the Policies, Insurers are obligated to indemnify KFI for, or pay on its behalf, all sums for which it becomes legally obligated to pay as allocated by KFI in the event of judgment, settlement, or otherwise, as a result of the AFFF Claims or any similar AFFF-related claims that may be filed in the future;

(b) declaring that, in the event of a judgment, settlement, or other resolution of the AFFF Claims, KFI is entitled to recover all sums paid in connection with the AFFF Claims from any triggered Policy subject only to exhaustion of the upper and lower limits of liability as set forth in each of the Policies;

(c) entering a judgment awarding KFI its reasonable attorneys' fees, interest, costs and the expenses of this action; and

(d) awarding such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff requests a trial by jury on all issues.

Dated: November 9, 2023          **MORRIS NICHOLS ARSHT & TUNNELL LLP**

*/s/ Derek C. Abbott*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Tamara K. Mann (No. 5643)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
E-mail: dabbott@morrisnichols.com
       aremming@morrisnichols.com
       dbutz@morrisnichols.com
       tmann@morrisnichols.com

-and-

**COVINGTON & BURLING LLP**
Benedict M. Lenhart (admitted *pro hac vice*)
Alexis N. Dyschkant (admitted *pro hac vice*)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-5575
E-mail: blenhart@cov.com
       adyschkant@cov.com

David A. Luttinger, Jr. (admitted *pro hac vice*)
New York Times Building
620 8th Ave
New York, NY 10018
Telephone: (212) 841-1134
E-mail: dluttinger@cov.com

*Counsel to Plaintiff*