## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | |
| KIDDE-FENWAL, INC., | Chapter 11 |
| Debtor. | Case No. 23-10638 (LSS) |

KIDDE-FENWAL, INC.,

          Plaintiff,

    v.

ACE AMERICAN INSURANCE COMPANY;
ADMIRAL INSURANCE COMPANY; AETNA
CASUALTY & SURETY COMPANY;
AMERICAN GUARANTEE & LIABILITY
INSURANCE COMPANY; ARCH INSURANCE
COMPANY; ARCH REINSURANCE LTD.;
ARCH SPECIALTY INSURANCE COMPANY;
ATLANTA INTERNATIONAL INSURANCE
COMPANY; CALIFORNIA UNION
INSURANCE COMPANY; CERTAIN
UNDERWRITERS AT LLOYD'S, LONDON
SUBSCRIBING TO POLICY NO. UL73935;
CHARTIS INSURANCE COMPANY OF
CANADA; COLUMBIA CASUALTY
COMPANY; CONTINENTAL INSURANCE
COMPANY; EMPLOYERS MUTUAL
CASUALTY COMPANY; ENDURANCE
AMERICAN SPECIALTY INSURANCE
COMPANY; EVANSTON INSURANCE
COMPANY; FEDERAL INSURANCE
COMPANY; FIRST STATE INSURANCE
COMPANY; GEICO (GOVERNMENT
EMPLOYEES INSURANCE COMPANY);
GIBRALTAR CASUALTY COMPANY; GREAT
AMERICAN ASSURANCE COMPANY;
GREAT AMERICAN INSURANCE COMPANY
OF NEW YORK; HARBOR INSURANCE
COMPANY; HARTFORD FINANCIAL
SERVICES GROUP, INC.; INSURANCE
COMPANY OF NORTH AMERICA;
LANDMARK AMERICAN INSURANCE
COMPANY; LEXINGTON INSURANCE
COMPANY; LONDON GUARANTEE AND
ACCIDENT COMPANY OF NEW YORK;
NATIONAL UNION FIRE I NSURANCE

Adv. Proc. No. 23-50758-LSS

COMPANY OF PITTSBURGH, PA;
NORTHBROOK EXCESS AND SURPLUS
INSURANCE COMPANY; NORTHBROOK
INSURANCE COMPANY; PACIFIC
EMPLOYERS INSURANCE COMPANY;
PURITAN INSURANCE COMPANY; RSA
INSURANCE GROUP LIMITED; TWIN CITY
FIRE INSURANCE COMPANY; UNITED
NATIONAL INSURANCE COMPANY;
ZURICH AMERICAN INSURANCE
COMPANY; ABC INSURANCE COMPANIES
NOS. 1–20,

                  Defendants.

**WESTPORT INSURANCE CORPORATION, AS SUCCESSOR-IN-INTEREST TO
PURITAN INSURANCE COMPANY
ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES TO THE
ADVERSARY PROCEEDING COMPLAINT OF KIDDE-FENWAL, INC.**

NOW COMES, Westport Insurance Corporation as successor-in-interest to Puritan

Insurance Company ("Westport"), by and through its attorneys Kennedys CMP LLP, and for

its Answer and Affirmative Defenses, states as follows:

### NATURE OF ACTION

1.      KFI has been named as a defendant in thousands of underlying product liability
actions arising out of the alleged historic design, manufacture, sale, and distribution of the
product aqueous film-forming foam, or AFFF (the "AFFF Claims"). In pertinent part, the
claimants in the AFFF Claims seek to hold KFI liable for bodily injury, personal injury, and/or
property damage allegedly sustained as a result of exposure to or use of AFFF. KFI disputes
liability for the AFFF Claims, which are alleged to arise from the historic manufacture of AFFF
products in Pennsylvania by the National Foam Business, as defined below in Paragraph 57,
which KFI owned and operated from 2007 to 2013.

**ANSWER**:      Westport is without knowledge or information to form a belief as to the truth or

                  falsity of the allegations in Paragraph 1, and on that basis denies each and every

                  allegation contained therein.

2.      Given KFI's financial situation and the potential for liability associated with the
AFFF Claims that could exhaust KFI's ability to pay, on May 14, 2023, KFI filed in this Court
a voluntary petition for relief under chapter 11 of title 11 of the United States Code
("Bankruptcy Code").

**ANSWER**:    Westport admits that KFI filed a voluntary petition for relief under the Bankruptcy Code. As to the remaining allegations, Westport is without knowledge or information to form a belief as to the truth or falsity of those allegations in Paragraph 2 and on that basis denies the remaining allegations contained therein.

3.      KFI is an indirect, wholly owned subsidiary of Carrier Fire & Security Americas Corporation (f/k/a UTC Fire & Security Americas Corporation) ("Carrier Fire"), which is in turn indirectly wholly owned by Carrier Global Corporation ("Carrier Global").

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 3, and on that basis denies each and every allegation contained therein.

4.      KFI possesses rights under all insurance coverage provided by the primary, umbrella, and excess liability insurance policies issued to or covering the National Foam Business from its inception through 2013, when the National Foam Business was sold to a third party.

**ANSWER**:    The allegations contained in Paragraph 4 consist of legal conclusions to which no answer is required. If an answer is required, answering only as to the Puritan Policies, Westport denies that KFI is an insured under the Puritan Policies and denies that KFI has any rights under the Puritan Policies. As to allegations against the other defendants, Westport is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 4, and on that basis denies each and every allegation contained therein.

5.      Defendants ACE American Insurance Company; Admiral Insurance Company; Aetna Casualty & Surety Company; American Guarantee & Liability Insurance Company; Arch Insurance Company; Arch Reinsurance Ltd.; Arch Specialty Insurance Company; Atlanta International Insurance Company; California Union Insurance Company; Certain Underwriters at Lloyd's, London Subscribing to Policy No. UL73935; Chartis Insurance Company of Canada; Columbia Casualty Company; Continental Insurance Company; Employers Mutual Casualty Company; Endurance American Specialty Insurance Company; Evanston Insurance Company; Federal Insurance Company; First State Insurance Company; GEICO (Government Employees Insurance Company); Gibraltar Casualty Company; Great American Assurance

Company; Great American Insurance Company of New York; Harbor Insurance Company; Hartford Financial Services Group, Inc.; Insurance Company of North America; Landmark American Insurance Company; Lexington Insurance Company; London Guarantee and Accident Company of New York; National Union Fire Insurance Company of Pittsburgh, Pa; Northbrook Excess and Surplus Insurance Company; Northbrook Insurance Company; Pacific Employers Insurance Company; Puritan Insurance Company; RSA Insurance Group Limited; Twin City Fire Insurance Company; United National Insurance Company; Zurich American Insurance Company; and ABC Insurance Companies 1–20 (collectively, "Insurers"), or their respective predecessors-in-interest, issued or subscribed to liability insurance policies issued to the National Foam Business and/or its corporate parents from the 1960s to 2013 (the "Policies").

**ANSWER**:    Westport admits only that Puritan Insurance Company issued to Philadelphia Suburban Corporation Policy No. ML652416 for the period August 1, 1979 to August 1, 1980 and Policy No.  ML652444 for the period August 1, 1980 to August 1, 1981 (the "Puritan Policies"), and denies that KFI is an insured or otherwise has rights under the Puritan Policies.  As to the remaining allegations, Westport is without knowledge or information sufficient to form a belief as to the truth or falsity of those allegations in Paragraph 5 and on that basis denies the remaining allegations contained therein.

6.    The Policies known to Plaintiff at this time are set forth in Attachment A hereto, which is incorporated herein by reference.

**ANSWER**:    Westport admits only that Puritan Insurance Company issued to Philadelphia Suburban Corporation Policy No. ML652416 for the period August 1, 1979 to August 1, 1980 and Policy No.  ML652444 for the period August 1, 1980 to August 1, 1981 (the "Puritan Policies"), as reflected on Exhibit A to the complaint, and denies that KFI is an insured or otherwise has rights under the Puritan Policies.   As to the remaining allegations, Westport is without knowledge or information sufficient to form a belief as to the truth or falsity of those allegations in Paragraph 6 and on that basis denies the remaining allegations contained therein.

7.    Upon information and belief, Aetna Casualty & Surety Company, Hartford Financial Services Group, Inc., Insurance Company of North America, RSA Insurance Group Limited, and Zurich American Insurance Company issued or are the successors to insurance companies that issued primary insurance policies (the "Primary Policies") promising to defend and indemnify insured entities, including the National Foam Business, against potentially covered claims, including as is relevant here the AFFF Claims.  Upon information and belief, other Insurers may also have issued primary insurance policies with a duty to defend.  The Insurers referenced in this Paragraph 7 are collectively referred to herein as the "Primary Insurers."

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 7, and on that basis denies each and every

allegation contained therein.

8.    Upon information and belief, each Insurer identified in Paragraph 5 issued or is the successor to one or more insurance companies that issued umbrella and/or excess liability insurance policies (the "Excess Policies") insuring the National Foam Business.

**ANSWER**:    Westport admits only that Puritan Insurance Company issued to Philadelphia

Suburban Corporation Policy No. ML652416 for the period August 1, 1979 to

August 1, 1980 and Policy No.  ML652444 for the period August 1, 1980 to

August 1, 1981, but denies that KFI is an insured or otherwise has any rights

under the Puritan Policies. As to the remaining allegations, Westport is without

knowledge or information to form a belief as to the truth or falsity of those

allegations in Paragraph 8 and on that basis denies the remaining allegations

contained therein.

9.    Upon information and belief, some or all Insurers issued or subscribed to additional Policies that are unknown to Plaintiff at this time.  In the event that any such Policies become known to Plaintiff, Plaintiff through this lawsuit seeks coverage under all such additional Policies issued or subscribed to by any Insurer.

**ANSWER**:    Based on information known to date, Westport denies that that it issued or

subscribed to additional Policies covering the Plaintiff.  Westport is without

knowledge or information to form a belief as to the truth or falsity of the

remaining allegations in Paragraph 9, and on that basis denies each and every

allegation contained therein.

10.     Plaintiff seeks declaratory relief against all Insurers and damages from the Primary Insurers arising out of the Insurers' failure to acknowledge or perform their contractual obligations to defend, pay, reimburse, and indemnify Plaintiff in connection with the AFFF Claims under the Policies.  Plaintiff seeks, inter alia:

(a)     a declaration of the rights, duties, and liabilities of the parties under the Policies at issue;

(b)     damages against the Primary Insurers for breach of their contractual duty to defend Plaintiff against the AFFF Claims; and

(c)     costs and attorneys' fees.

**ANSWER**:     Paragraph 10 sets forth conclusions of law to which no answer is required.  To the extent an answer is required, Westport admits that Plaintiff seeks declaratory relief as set forth in its Complaint, but denies that Plaintiff is entitled to such judgment or relief against Westport. As to the remaining allegations, Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 10 and on that basis denies the remaining allegations contained in Paragraph 10.

## THE PARTIES

11.     KFI is a U.S.-based manufacturing company formed as a Delaware corporation in 1987 and located in Ashland, Massachusetts.  KFI has continuously owned and operated numerous lines of business related to industrial fire detection and suppression, as well as temperature control products and products to light and control gas burners.  KFI acquired the National Foam Business by merger in 2007 and owned and operated that business until 2013.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 11, and on that basis denies each and every allegation contained therein.

12.     ACE American Insurance Company is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Philadelphia, Pennsylvania.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 12, and on that basis denies each and every allegation contained therein.

13.     Admiral Insurance Company is a corporation organized under the laws of the State of Delaware and has its principal place of business in Scottsdale, Arizona.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph13, and on that basis denies each and every

allegation contained therein.

14.      The Aetna Casualty & Surety Company ("Aetna"), now known as Travelers Casualty and Surety Company ("Travelers") following the purchase of Aetna by Travelers Property Casualty Corp. in 1996 and name change in 1997, is a corporation organized under the laws of the State of Connecticut and has its principal place of business in Hartford, Connecticut.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 14, and on that basis denies each and every

allegation contained therein.

15.     American Guarantee and Liability Insurance Company is a corporation organized under the laws of the State of New York and has its principal place of business in Schaumburg, Illinois.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 15, and on that basis denies each and every

allegation contained therein.

16.     Arch Insurance Company is a corporation organized under the laws of the State of Missouri and has its principal place of business in Jersey City, New Jersey.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 16, and on that basis denies each and every

allegation contained therein.

17.     Arch Reinsurance Ltd. is a corporation organized under the laws of Bermuda and has its principal place of business in Pembroke, Bermuda.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 17, and on that basis denies each and every

allegation contained therein.

18.     Arch Specialty Insurance Company is a corporation organized under the laws of the State of Missouri and has its principal place of business in Stamford, Connecticut.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 18, and on that basis denies each and every

allegation contained therein.

19.     Atlanta International Insurance Company, now known as Wellfleet New York Insurance Company following corporate reorganization, including its purchase by Columbia Insurance Company in 2017 and name change in 2019, is a corporation organized under the laws of the State of New York and has its principal place of business in Fort Wayne, Indiana.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 19, and on that basis denies each and every

allegation contained therein.

20.     California Union Insurance Company, now known as Century Indemnity Company, following corporate reorganization, including a name change in 1994 and a merger in 1996, is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Philadelphia, Pennsylvania.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 20, and on that basis denies each and every

allegation contained therein.

21.     On information and belief, Certain Underwriters at Lloyd's, London are individuals, unincorporated associations, partnerships and/or corporations existing under the laws of various foreign and domestic jurisdictions who have subscribed to insurance policies through the Lloyd's of London insurance market located in the United Kingdom, including but not limited to those subscribing to Policy No. UL73935.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 21, and on that basis denies each and every

allegation contained therein.

22.      Chartis Insurance Company of Canada, now known as AIG Insurance Company of Canada following a name change in 2013, is a corporation organized under the laws of Canada and has its principal place of business in Toronto, Canada.

**ANSWER**:      Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 22, and on that basis denies each and every

allegation contained therein.

23.      Columbia Casualty Company is a corporation organized under the laws of the State of Illinois and has its principal place of business in Chicago, Illinois.

**ANSWER**:      Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 23, and on that basis denies each and every

allegation contained therein.

24.      Continental Insurance Company is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Chicago, Illinois.

**ANSWER**:      Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 24, and on that basis denies each and every

allegation contained therein.

25.      Employers Mutual Casualty Company is a corporation organized under the laws of the State of Iowa and has its principal place of business in Des Moines, Iowa.

**ANSWER**:      Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 25, and on that basis denies each and every

allegation contained therein.

26.      Endurance American Specialty Insurance Company is a corporation organized under the laws of the State of Delaware and has its principal place of business in Purchase, New York.

**ANSWER**:      Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 26, and on that basis denies each and every

allegation contained therein.

27.     Evanston Insurance Company is a corporation organized under the laws of the State of Illinois and has its principal place of business in Rosemond, Illinois.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 27, and on that basis denies each and every

allegation contained therein.

28.     Federal Insurance Company is a corporation organized under the laws of the State of Indiana and has its principal place of business in Whitehouse Station, New Jersey.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 28, and on that basis denies each and every

allegation contained therein.

29.     First State Insurance Company is a corporation organized under the laws of the State of Connecticut and has its principal place of business in Boston, Massachusetts.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 29, and on that basis denies each and every

allegation contained therein.

30.     GEICO (Government Employees Insurance Company) is a corporation organized under the laws of the State of Nebraska and has its principal place of business in Washington, DC.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 30, and on that basis denies each and every

allegation contained therein.

31.     Upon information and belief, Gibraltar Casualty Company, now known as TIG Insurance Company following corporate reorganization, including mergers in 2015 and 2016, is a corporation organized under the laws of the State of California and has its principal place of business in Manchester, New Hampshire.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 31, and on that basis denies each and every

allegation contained therein.

32.     Great American Assurance Company is a corporation organized under the laws of the State of Ohio and has its principal place of business in Cincinnati, Ohio.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 32, and on that basis denies each and every

allegation contained therein.

33.     Great American Insurance Company of New York is a corporation organized under the laws of the State of New York and has its principal place of business in Cincinnati, Ohio.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 33, and on that basis denies each and every

allegation contained therein.

34.     Harbor Insurance Company, now known as Greenwich Insurance Company following a name change in 1991, is a corporation organized under the laws of Delaware and has its principal place of business in Stamford, Connecticut.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 34, and on that basis denies each and every

allegation contained therein.

35.     Hartford Financial Services Group, Inc. ("Hartford") is a corporation organized under the laws of the State of Delaware and has its principal place of business in Hartford, Connecticut.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 35, and on that basis denies each and every

allegation contained therein.

36.     Insurance Company of North America is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Philadelphia, Pennsylvania.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 36, and on that basis denies each and every

allegation contained therein.

37.     Landmark American Insurance Company is a corporation organized under the laws of the State of New Hampshire and has its principal place of business in Atlanta, Georgia.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 37, and on that basis denies each and every

allegation contained therein.

38.     Lexington Insurance Company is a corporation organized under the laws of the State of Delaware and has its principal place of business in Boston, Massachusetts.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 38, and on that basis denies each and every

allegation contained therein.

39.     London Guarantee and Accident Company of New York, now known as Centre Insurance Company following corporate reorganization, including a purchase and name change in 1998, is a corporation organized under the laws of the State of Delaware and has its principal place of business in New York, New York.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 39, and on that basis denies each and every

allegation contained therein.

40.     National Union Fire Insurance Company of Pittsburgh, Pa. is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in New York, New York.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 40, and on that basis denies each and every

allegation contained therein.

41.    Northbrook Excess and Surplus Insurance Company, now known as Allstate Insurance Company following a merger in 1985, is a corporation organized under the laws of the State of Illinois and has its principal place of business in Northbrook, Illinois.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 41, and on that basis denies each and every

allegation contained therein.

42.    Northbrook Insurance Company, now known as Allstate Insurance Company following a name change in 1978 and a merger in 1985, is a corporation organized under the laws of the State of Illinois and has its principal place of business in Northbrook, Illinois.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 42, and on that basis denies each and every

allegation contained therein.

43.    Pacific Employers Insurance Company is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Philadelphia, Pennsylvania.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 43, and on that basis denies each and every

allegation contained therein.

44.    Puritan Insurance Company, now known as Westport Insurance Corporation following corporate reorganization, including a merger and name change in 2008, is a corporation organized under the laws of the State of Missouri and has its principal place of business in Kansas City, Missouri.

**ANSWER**:    Westport Insurance Corporation, as successor-in-interest to Puritan Insurance

Company, admits only that it is a corporation organized under the laws of the

State of Missouri and has its principle place of business in Kansas City,

Missouri. Westport denies the remaining allegations contained in Paragraph 44.

45.     Upon information and belief, RSA Insurance Group Limited is a corporation organized under the laws of England that has its principal place of business in London, England, and is a successor-in-interest under certain policies issued by Royal Indemnity Company, including the insurance policies identified in Attachment A to this Complaint.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 45, and on that basis denies each and every

allegation contained therein.

46.     Twin City Fire Insurance Company is a corporation organized under the laws of the State of Indiana and has its principal place of business in Indianapolis, Indiana.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 46, and on that basis denies each and every

allegation contained therein.

47.     United National Insurance Company is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Bala Cynwyd, Pennsylvania.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 47, and on that basis denies each and every

allegation contained therein.

48.     Zurich American Insurance Company is a corporation organized under the laws of the State of New York and has its principal place of business in Schaumburg, Illinois.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 48, and on that basis denies each and every

allegation contained therein.

49.     ABC Insurance Companies 1–20 are the fictitious names of insurance companies presently unknown to Plaintiff, despite having conducted a reasonable search with

due diligence, that, upon information and belief, issued or subscribed to Policies issued to the National Foam Business and/or its corporate parents between the 1960s and 2013.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 49, and on that basis denies each and every

allegation contained therein.

## JURISDICTION AND VENUE

50.     This adversary proceeding was commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure and includes an action for declaratory judgment pursuant to 28 U.S.C. § 2201.

**ANSWER**:     Westport only admits that Plaintiff's complaint purports to be an adversary

proceeding brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy

Procedure and includes an action for declaratory judgment and denies that

Plaintiff is entitled to any relief against Westport whatsoever.  Westport denies

the remaining allegations in Paragraph 50 inconsistent therewith.

51.     This court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(c) and 1334(b) and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated February 29, 2012.

**ANSWER**:     Paragraph 51consists of legal conclusions to which no answer is required. To

the extent an answer is required, Westport is without knowledge or information

to form a belief as to the truth or falsity of the allegations in Paragraph 51, and

on that basis denies each and every allegation contained therein.

52.     The potential liabilities KFI is facing in connection with the AFFF Claims for which it seeks coverage in this case were a significant factor in the decision to commence KFI's bankruptcy proceeding.  The Policies at issue are shared assets of KFI and other non-party policyholders, and resolution of the claims made under the Policies will have a significant impact on the value of KFI's bankruptcy estate.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 52, and on that basis denies each and every allegation contained therein.

53.    Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Plaintiff consents to the entry of a final order by the Court in connection with this adversary proceeding to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 53, and on that basis denies each and every allegation contained therein.

54.    This Court has personal jurisdiction over each of the Defendants under Federal Rule of Bankruptcy Procedure 7004(f).

**ANSWER**:    Westport admits only that it is subject to personal jurisdiction in this Court. Westport denies the remaining allegations contained in Paragraph 54.

55.    Venue for this matter is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

**ANSWER**:    Westport admits only that venue is proper in this Court.  Westport denies the remaining allegations contained in Paragraph 55.

## BACKGROUND FACTS

### A.  The History of the National Foam Business

56.    National Foam System, Inc., a manufacturer and distributor of fire extinguishing products, was incorporated in Delaware in or about 1927 and registered in Pennsylvania in or about 1928.  It existed as an independent company until 1969.  National Foam System, Inc. had its principal place of business in West Chester, Pennsylvania.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 56, and on that basis denies each and every allegation contained therein.

57.     As described in more detail in Paragraphs 60 through 95 below, from 1969 to 2013, the business that was originally known as National Foam System, Inc., was acquired by various companies and underwent multiple name changes.  Upon information and belief, the business was operated under various names from 1969 to 2013, including "National Foam System, Inc.," the "National Foam System, Inc. Division of PSC," the "National Foam System, Inc. Division of Enterra," "National Foam, Inc.," "Chubb National Foam, Inc.," "Kidde Fire Fighting, Inc.," "Kidde-Fenwal, Inc.," and the "National Foam Business" (collectively, the "National Foam Business").  Throughout the period from 1927 through 2013, the National Foam Business manufactured, sold, or distributed firefighting products.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 57, and on that basis denies each and every

allegation contained therein.

58.     The AFFF Claims against KFI are premised on allegations related to the design, manufacture, sale, and distribution of AFFF by the National Foam Business.  AFFF is a highly effective fire suppressant developed and used for the suppression of Class B fires involving flammable liquids such as petroleum, jet fuel, and other liquid hydrocarbons.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 58, and on that basis denies each and every

allegation contained therein.

59.     Upon information and belief, the National Foam Business's headquarters, physical plants, and facilities, including for its manufacture of AFFF, were at all relevant times located in or around Chester County, Pennsylvania.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 59, and on that basis denies each and every

allegation contained therein.

**1.     1927–1987: National Foam System, Inc., Philadelphia Suburban Corp., and Enterra Corp.**

60.     During the period in which it was an independent company, National Foam System, Inc. purchased various liability insurance policies from its headquarters in Pennsylvania, including policies issued by Insurers that cover liabilities arising out of the design, manufacture, sale, and distribution of AFFF (the "NFS Policies").

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 60, and on that basis denies each and every allegation contained therein.

61.    Philadelphia Suburban Corporation ("PSC"), now known as Essential Utilities, Inc., was formed under the laws of the Commonwealth of Pennsylvania in or around 1968 and is headquartered in Bryn Mawr, Pennsylvania.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 61, and on that basis denies each and every allegation contained therein.

62.    Upon information and belief, in or about 1969, PSC acquired National Foam System, Inc., including insurance rights under the NFS Policies, through a purchase of the entirety of National Foam System, Inc.'s outstanding stock.

**ANSWER**:    The allegations contained in Paragraph 62 consist of legal conclusions to which no answer is required.  To the extent that an answer is required, Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 62, and on that basis denies each and every allegation contained therein.

63.    Upon information and belief, from the date of its acquisition by PSC until November 5, 1974, National Foam System, Inc. was, and did business as, a wholly-owned subsidiary of PSC.  On or about November 5, 1974, National Foam System, Inc. merged into PSC pursuant to Section 907 of Pennsylvania's Business Corporation Law.  Pursuant to the merger, PSC directly assumed all of the rights and obligations of National Foam System, Inc., and acquired insurance rights then belonging to the National Foam Business, including insurance rights under the NFS Policies.

**ANSWER**:    The allegations contained in Paragraph 63 consist of legal conclusions to which no answer is required.  To the extent that an answer is required, Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 63, and on that basis denies each and every allegation contained therein.

64.    Upon information and belief, for some period of time following this merger, the National Foam Business did business as an unincorporated division of PSC and was referred to as the "National Foam System, Inc. Division." That Division was part of PSC's Fire Protection and Specialty Services group. During the period from 1969 to May 28, 1981, PSC purchased various liability insurance policies, including policies issued by Insurers that cover liabilities arising out of the design, manufacture, sale, and distribution of AFFF by National Foam System, Inc. and/or by the National Foam System, Inc. Division (the "PSC Policies").

**ANSWER**:    Westport admits only that Puritan Insurance Company issued to Philadelphia

Suburban Corporation Policy No. ML652416 for the period August 1, 1979 to

August 1, 1980 and Policy No. ML652444 for the period August 1, 1980 to

August 1, 1981, and denies that Plaintiff is an insured or otherwise has rights

under the policies. The allegations relating to the coverage provided by the

Puritan Policies consist of legal conclusions to which no answer is required, and

to the extent an answer is required, Westport denies such allegations. As to the

remaining allegations in Paragraph 64, Westport is without knowledge or

information to form a belief as to the truth or falsity of those allegations, and on

that basis denies each and every remaining allegation contained therein.

65.    On or about May 28, 1981, PSC split into two separate, publicly traded companies—PSC and Enterra Corporation ("Enterra"). Enterra was a corporation organized under the laws of the Commonwealth of Pennsylvania and its headquarters were located in Philadelphia, Pennsylvania.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 65, and on that basis denies each and every

allegation contained therein.

66.    Pursuant to the May 28, 1981 corporate reorganization, all of the assets and liabilities of PSC's Fire Protection and Specialty Services group, of which the National Foam System, Inc. Division was a part, were transferred to Enterra. Enterra thereby acquired insurance rights then belonging to the National Foam Business and its parent company, including insurance rights under the PSC Policies and the NFS Policies.

**ANSWER**:    The allegations contained in Paragraph 66 consist of legal conclusions to which

no answer is required.  To the extent that an answer is required, Westport is

without knowledge or information to form a belief as to the truth or falsity of

the allegations in Paragraph 66, and on that basis denies each and every

allegation contained therein, and specifically denies that any rights to the

Puritan Policy were transferred to Enterra.

67.    From May 28, 1981, to April 30, 1987, the National Foam Business did business as an unincorporated division of Enterra and continued to be referred to as the "National Foam System, Inc. Division."  During the period from May 28, 1981, to April 30, 1987, Enterra purchased various liability insurance policies, including policies issued by Insurers that cover liabilities arising out of the design, manufacture, sale, and distribution of AFFF by the National Foam System, Inc. Division (the "Enterra Policies").

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 67, and on that basis denies each and every

allegation contained therein.

### 2.    1987–1997: Racal-Chubb, Inc., Racal Electronics plc, and Chubb Security plc

68.    On or about March 3, 1987, a corporation called National Foam System, Inc. was formed under the laws of the Commonwealth of Pennsylvania ("National Foam PA").

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 68, and on that basis denies each and every

allegation contained therein.

69.    In or about April 1987, Racal Electronics plc, through its subsidiary Racal-Chubb Fire Security, Inc. ("Racal-Chubb"), purchased the outstanding stock of Enterra and transferred all the assets and property of, and the business conducted by, the National Foam System, Inc. Division of Enterra to National Foam PA.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 69, and on that basis denies each and every

allegation contained therein.

70.    Upon information and belief, pursuant to the stock purchase and asset transfer described in Paragraph 69, Racal-Chubb owned the National Foam Business and acquired insurance rights then belonging to the National Foam Business and its parent company, including insurance rights under the Enterra Policies, the PSC Policies, and the NFS Policies.

**ANSWER**:    The allegations contained in Paragraph 70 consist of legal conclusions to which

no answer is required.  To the extent that an answer is required, Westport is

without knowledge or information to form a belief as to the truth or falsity of

the allegations in Paragraph 70, and on that basis denies each and every

allegation contained therein, and specifically denies that Racal-Chubb acquired

any rights under the Puritan Policies.

71.    On or about May 2, 1988, National Foam PA was renamed Chubb National Foam, Inc.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 71, and on that basis denies each and every

allegation contained therein.

72.    Upon information and belief, on or about October 5, 1992, Racal Electronics plc de-merged its security business, including Racal-Chubb, which owned Chubb National Foam, Inc., from a division within Racal Electronics plc into an independent, publicly-listed entity called Chubb Security plc.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 72, and on that basis denies each and every

allegation contained therein.

73.    On or about August 30, 1993, Chubb National Foam, Inc. was renamed National Foam, Inc.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 73, and on that basis denies each and every

allegation contained therein.

74.     Upon information and belief, from April 30, 1987, until February 1997, the National Foam Business was, and did business as, a wholly owned subsidiary of Racal-Chubb, which was in turn owned at times by Racal Electronics plc or Chubb Security plc.  During the period from April 30, 1987, to February 1997, Racal-Chubb purchased various liability insurance policies, including policies issued by Insurers, that cover liabilities arising out of the design, manufacture, sale, and distribution of AFFF by National Foam PA, Chubb National Foam, Inc., and/or National Foam, Inc. (the "Racal-Chubb Policies").

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 74, and on that basis denies each and every

allegation contained therein.

### 3.     1997–2005: Williams Holdings plc and Kidde plc

75.     Upon information and belief, in or about 1917, the Walter Kidde Company was formed under the laws of the State of New York.  In 1980, it changed its name to Kidde, Inc.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 75, and on that basis denies each and every

allegation contained therein.

76.     On or about March 3, 1987, Kidde Fire Fighting, Inc. was formed under the laws of the Commonwealth of Pennsylvania.  Kidde Fire Fighting, Inc. was a wholly owned subsidiary of Kidde, Inc.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 76, and on that basis denies each and every

allegation contained therein.

77.     On or about September 20, 1987, KFI was formed under the laws of the State of Delaware.  KFI was a wholly owned subsidiary of Kidde, Inc.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 77, and on that basis denies each and every

allegation contained therein.

78.     Upon information and belief, in or about November 1988, Williams Holdings plc acquired Kidde, Inc., including its subsidiaries Kidde Fire Fighting, Inc. and KFI.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 78, and on that basis denies each and every allegation contained therein.

79.    Upon information and belief, in or about February 1997, Williams Holdings plc acquired Chubb Security plc, which owned National Foam, Inc.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 79, and on that basis denies each and every allegation contained therein.

80.    Upon information and belief, pursuant to its acquisition of National Foam, Inc., Williams Holdings plc acquired insurance rights then belonging to the National Foam Business and its parent company, including insurance rights under the Racal-Chubb Policies, the Enterra Policies, the PSC Policies, and the NFS Policies.

**ANSWER**:    The allegations contained in Paragraph 80 consist of legal conclusions to which no answer is required.  To the extent that an answer is required, Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 80, and on that basis denies each and every allegation contained therein, and specifically denies that Williams Holdings plc acquired any rights to the Puritan Policies..

81.    From February 1997 until November 10, 2000, the National Foam Business continued to be known as National Foam, Inc. and was a wholly owned subsidiary of Williams Holdings plc.  During the period from February 1997 until November 10, 2000, Williams Holdings plc purchased various liability insurance policies, including policies issued by Insurers, that cover liabilities arising out of the design, manufacture, sale, and distribution of AFFF by National Foam, Inc. (the "Williams Holdings Policies").

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 81, and on that basis denies each and every allegation contained therein.

82.     On or about November 10, 2000, Williams Holdings plc de-merged Kidde, Inc. into a separate, publicly listed entity named Kidde plc.  As part of this reorganization, National Foam, Inc. became a wholly owned subsidiary of Kidde plc.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 82, and on that basis denies each and every

allegation contained therein.

83.     Upon information and belief, Kidde plc acquired insurance rights then belonging to the National Foam Business and its parent company, including insurance rights under the Williams Holdings Policies, the Racal-Chubb Policies, the Enterra Policies, the PSC Policies, and the NFS Policies.

**ANSWER**:     The allegations contained in Paragraph 83 consist of legal conclusions to which

no answer is required.  To the extent that an answer is required, Westport is

without knowledge or information to form a belief as to the truth or falsity of

the allegations in Paragraph 83, and on that basis denies each and every

allegation contained therein, and specifically denies that Kidde plc acquired any

rights under the Puritan Policies..

84.     On or about January 1, 2002, National Foam, Inc. was re-named Kidde Fire Fighting, Inc.

**ANSWER**:     Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 84, and on that basis denies each and every

allegation contained therein.

85.     From November 10, 2000, until April 1, 2005, the National Foam Business was, and did business as, an indirect, wholly owned subsidiary of Kidde plc.  During the period from November 10, 2000, until April 1, 2005, Kidde plc purchased various liability insurance policies, including policies issued by Insurers, that cover liabilities arising out of the design, manufacture, sale, and distribution of AFFF by National Foam, Inc. and/or Kidde Fire Fighting, Inc. (the "Kidde Policies").

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 85, and on that basis denies each and every

allegation contained therein.

### 4.    2005–2013: United Technologies Corp.

86.    On or about April 1, 2005, United Technologies Corp. ("UTC") acquired Kidde plc and all of its subsidiaries, including Kidde Fire Fighting, Inc. and KFI, by purchasing all of Kidde plc's outstanding stock.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 86, and on that basis denies each and every

allegation contained therein.

87.    Upon information and belief, pursuant to the stock purchase, UTC acquired insurance rights then belonging to the National Foam Business and its parent company, including insurance rights under the Kidde Policies, the Williams Holdings Policies, the Racal-Chubb Policies, the Enterra Policies, the PSC Policies, and the NFS Policies.

**ANSWER**:    The allegations contained in Paragraph 87 consist of legal conclusions to which

no answer is required.  To the extent that an answer is required, Westport is

without knowledge or information to form a belief as to the truth or falsity of

the allegations in Paragraph 87, and on that basis denies each and every

allegation contained therein, and specifically denies that UTC acquired any

rights under the Puritan Policies.

88.    From April 1, 2005, until March 8, 2007, the National Foam Business continued to be known as Kidde Fire Fighting, Inc. and was an indirect, wholly owned subsidiary of UTC.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 88, and on that basis denies each and every

allegation contained therein.

89.    On or about March 8, 2007, Kidde Fire Fighting, Inc. was merged into KFI pursuant to Section 252 of the General Corporation Law of Delaware.  As a result of this merger, the National Foam Business became part of KFI.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 89, and on that basis denies each and every

allegation contained therein.

90.    From March 8, 2007, until June 28, 2013, the National Foam Business did business as an unincorporated entity within KFI.  KFI was an indirect, wholly owned subsidiary of UTC Fire & Security Americas Corporation (n/k/a Carrier Fire), which in turn was an indirect, wholly owned subsidiary of UTC.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 90, and on that basis denies each and every

allegation contained therein.

91.    During the period from April 1, 2005, until June 28, 2013, UTC purchased various liability insurance policies, including policies issued by Insurers, that cover liabilities arising out of the design, manufacture, sale, and distribution of AFFF by Kidde Fire Fighting, Inc. and/or KFI (the "UTC Policies").

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 91, and on that basis denies each and every

allegation contained therein.

**5.    2013 Sale of the National Foam Business**

92.    By a Share and Business Sale Agreement dated June 28, 2013 (the "Sale Agreement"), the assets comprising the "National Foam Business," defined as "the unincorporated business trading as National Foam . . . as currently carried on by Kidde-Fenwal," were severed from KFI and sold to Eurostar Holdco Ltd., a corporation controlled by Lloyds Development Capital.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 92, and on that basis denies each and every

allegation contained therein.

93.    National Foam, Inc., a Delaware corporation formed in 2013, ("New National Foam") is the entity that has owned the National Foam Business since June 28, 2013.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 93, and on that basis denies each and every allegation contained therein.

94.    The ownership of KFI was unaffected by the sale of the National Foam Business, and KFI continued to be an indirect, wholly owned subsidiary of UTC Fire & Security Americas Corporation (n/k/a Carrier Fire) and UTC.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 94, and on that basis denies each and every allegation contained therein.

95.    Pursuant to the terms of the Sale Agreement, UTC and KFI retained the insurance rights under the UTC Policies, the Kidde Policies, the Williams Holdings Policies, the Racal-Chubb Policies, the Enterra Policies, the PSC Policies, and the NFS Policies.

**ANSWER**:    The allegations contained in Paragraph 95 consist of legal conclusions to which no answer is required.  To the extent that an answer is required, Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 95, and on that basis denies each and every allegation contained therein, and specifically denies that UTC or KFI had any rights under the Puritan Policies.

### 6.    Carrier Global

96.    Carrier Corporation was formed in 1915 in New York.  From 1979 through April 2020, Carrier Corporation was a wholly owned subsidiary of UTC.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 96, and on that basis denies each and every allegation contained therein.

97.    On or about April 2, 2020, UTC transferred Carrier Corporation, UTC Fire & Security Americas Corporation (n/k/a Carrier Fire), Kidde plc Inc., KFI, and other entities to the newly-formed Carrier Global Corporation.  UTC then spun off Carrier Global Corporation, including UTC Fire & Security Americas Corporation (n/k/a Carrier Fire), Kidde plc Inc., and KFI, as a separate public company.  As of the date of this spin off, UTC Fire & Security

Americas Corporation (n/k/a Carrier Fire), Kidde plc Inc., and KFI became indirect, wholly owned subsidiaries of Carrier Global.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 97, and on that basis denies each and every

allegation contained therein.

98.    UTC Fire & Security Americas Corporation was renamed Carrier Fire on or about October 1, 2020.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 98, and on that basis denies each and every

allegation contained therein.

99.    Other than certain de minimis employee shares, Carrier Global remains the sole owner of Carrier Fire, Kidde plc Inc., and KFI.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 99, and on that basis denies each and every

allegation contained therein.

100.    Pursuant to the spin-off, Carrier Global and its subsidiaries, including KFI, acquired insurance rights then belonging to the National Foam Business and its parent company prior to its 2013 sale, including insurance rights under the UTC Policies, the Kidde Policies, the Williams Holdings Policies, the Racal-Chubb Policies, the Enterra Policies, the PSC Policies, and the NFS Policies.

**ANSWER**:    The allegations contained in Paragraph 100 consist of legal conclusions to

which no answer is required.  To the extent that an answer is required, Westport

is without knowledge or information to form a belief as to the truth or falsity of

the allegations in Paragraph 100, and on that basis denies each and every

allegation contained therein, and specifically denies that KFI has any rights

under the Puritan Policies.

**B.    The Underlying AFFF Claims**

101.    KFI has been named as a defendant in more than 4,700 product liability lawsuits arising out of the alleged historic manufacture, sale, and distribution of AFFF, including products containing AFFF.  Additional AFFF actions have continued to be filed.

**ANSWER**:    Westport admits only that KFI has been named in lawsuits involving AFFF. The allegations set forth in the individual lawsuits speak for themselves and Westport denies any mischaracterizations of the allegations of those lawsuits. As to the remaining allegations in Paragraph 101, Westport is without knowledge or information to form a belief as to the truth or falsity of such allegations and on that basis denies that allegation.

102.    KFI contends that it has no liability in connection with the AFFF Claims.

**ANSWER**:    Paragraph 102 alleges a legal conclusion to which no response is required. To the extent a response is required, Westport is without knowledge or information to form a belief as to the truth or falsity of such allegations and on that basis denies that allegation.

103.    The AFFF Claims allege that AFFF manufactured by the National Foam Business historically contained or degraded into one or more types of per- and polyfluoroalkyl substances ("PFAS"), including perfluorinated octanoic acid ("PFOA").  The claimants allege that certain types of PFAS, including PFOA, are known carcinogens, are bioaccumulative, and cause certain cancers and other bodily injury or property damage.  The AFFF claimants allege exposure to AFFF starting in the 1960s.

**ANSWER**:    Westport admits only that KFI has been named in the underlying AFFF Claims. The allegations set forth in the underlying AFFF Claims speak for themselves and Westport denies any mischaracterizations of the allegations of those lawsuits. As to the remaining allegations in Paragraph 103, Westport is without knowledge or information to form a belief as to the truth or falsity of such allegations and on that basis denies that allegation.

104.    Most of the AFFF Claims have been consolidated in the federal multi-district litigation In re: Aqueous Film-Forming Foams Product Liability Litigation, MDL No. 2:18-mn-2873, in the United States District Court for the District of South Carolina.  More than

5,000 cases have been consolidated in the MDL.  KFI is named in a substantial majority of the MDL cases.

**ANSWER**:      Westport admits only that many of the AFFF Claims have been consolidated in

the federal multi-district litigation, MDL No. 2:18-mn-2873 in the United States

District Court for the District of South Carolina. As to the remaining allegations

in Paragraph 104, Westport is without knowledge or information to form a belief

as to the truth or falsity of such allegations and on that basis denies that

allegation.

105.    The MDL cases are brought by individuals, including firefighters and individuals who live near military bases, airports, fire training academies, and other locations where AFFF-containing products allegedly were used; the MDL cases are also brought by water providers, state attorneys general, and other entities across the country.

**ANSWER**:      Westport admits only that KFI has been named in the underlying AFFF Claims.

The allegations set forth in the underlying AFFF Claims speak for themselves

and Westport denies any mischaracterizations of the allegations of those

lawsuits. As to the remaining allegations in Paragraph 105, Westport is without

knowledge or information to form a belief as to the truth or falsity of such

allegations and on that basis denies that allegation.

106.    More than 90% of the AFFF Claims against KFI consolidated in the MDL have been brought by individual plaintiffs who have allegedly suffered personal injury or bodily injury that they attribute to exposure to AFFF, including AFFF incorporated into products. More than 3,200 of the MDL cases were brought by individual firefighters, and additional firefighter actions have continued to be filed.

**ANSWER**:      Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations contained in Paragraph 106, and therefore denies each

and every such allegation.

107.    The individual AFFF Claims contain substantially similar claims and allegations.  Common allegations of exposure to AFFF include exposure by ingestion, by

inhalation, by dermal contact, or through the use of AFFF-containing products.  Representative allegations include:

    (a)    "Plaintiff conducted routine [firefighter] trainings using Defendants' AFFF and fluorochemical products" which "proximately caused" Plaintiff's illness. Complaint, *Knesley v. 3M Company, et al.*, ¶¶ 98, 102, 2:20-cv-2759-RMG (D.S.C. July 27, 2020)

    (b)    "Defendant's PFAS-containing AFFF products were used by the Plaintiff in their intended manner, without significant change in the products' condition. . . . Plaintiff's consumption, inhalation and/or dermal absorption of PFAS from Defendant's AFFF products caused Plaintiff to develop the serious medical conditions and complications alleged herein."  Complaint, *Schremp v. 3M Company, et al.*, ¶ 6, 2:21-cv-03599-RMG (D.S.C. Nov. 1, 2021).

    (c)    "During Plaintiff's use of Defendants' AFFF products . . . Plaintiff ingested such products, and the PFOA and/or PFOS and/or their precursor chemicals entered Plaintiff's body."  Complaint, *Wright, et al. v. 3M Company, et al.*, ¶ 100, 2:21-cv-03627-RMG (D.S.C. Nov. 3, 2021).

    (d)    "Throughout the time of his service as a firefighter in the United States Navy, Plaintiff regularly used and was exposed to Defendants' AFFF products" and "Plaintiff ingested such products, and the PFOA and/or PFOS and/or their precursor chemicals entered Plaintiff's body."  Complaint, *Chisholm, et al. v. 3M Company, et al.*, ¶¶ 99-100, 2:21-cv- 03729-RMG (D.S.C. Nov. 12, 2021).

**ANSWER**:    Westport admits only that KFI has been named in the underlying AFFF Claims.

The allegations set forth in the underlying AFFF Claims speak for themselves and Westport denies any mischaracterizations of the allegations of those lawsuits. The allegations contained in Paragraphs 107(a) through 107(d), inclusive, purport to characterize limited allegations of certain complaints in certain underlying AFFF Claims.  The complaints in those actions are written documents that speak for themselves and are the best evidence of their contents. Westport denies that allegations contained in Paragraph to the extent that they mischaracterize any of the allegations in any of the underlying AFFF Claims. Westport denies the remaining allegations contained in Paragraph 107.

    108.    The individual AFFF Claims allege that exposure to and/or the use of the National Foam Business's products containing AFFF caused bodily injury, personal injury, and/or property damage and seek damages based on causes of action sounding in product liability, strict liability, negligence, and negligent failure to warn, among others.

**ANSWER**:    The allegations contained in Paragraph 108 purport to collectively characterize the allegations of thousands of underlying AFFF Claims, which are not attached to the complaint and Westport is without knowledge or information sufficient to form a belief as to the truth or falsity of such characterizations and therefore denies same,.  Answering further, Westport states that the allegations contained in Paragraph 108 consist of legal conclusions to which no answer is required.  To the extent that an answer is required, Westport denies the allegations contained in Paragraph 108.

109.    The AFFF Claims brought by water providers, state attorneys general, and other entities allege that the use of the National Foam Business's products containing AFFF caused bodily injury, personal injury, and/or property damage.  These claimants seek damages based on causes of action sounding in product liability, strict liability, defective design, breach of the implied warranty of merchantability, failure to warn, and negligence, among others.

**ANSWER**:    The allegations contained in Paragraph 109 purport to collectively characterizations the allegations of thousands of underlying AFFF Claims, which are not attached to the complaint and Westport is without knowledge or information sufficient to form a belief as to the truth or falsity of such characterizations and therefore denies same,.  Answering further, Westport states that the allegations contained in Paragraph 109 consist of legal conclusions to which no answer is required.  To the extent that an answer is required, Westport denies the allegations contained in Paragraph 109.

110.    Plaintiff reasonably anticipates that additional lawsuits similar to the AFFF Claims will continue to be filed in the future.

**ANSWER**:    Paragraph 110 does not contain allegations of fact to which a response is required. To the extent a response is required, Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in

Paragraph 110 and on that basis denies each and every allegation contained therein.

111.    In an order entered on May 16, 2023, the MDL court stated that KFI's chapter 11 filing resulted in an automatic stay of claims against KFI.  Text Order, *City of Stuart, Fla. V. 3M et al.*, No. 2:18-cv-03487-RMG (D.S.C. May 16, 2023) (ECF No. 326).

**ANSWER**:    Westport admits that the order  alleged in Paragraph 111 was entered. The May 16, 2023 order speaks for itself and Westport denies any allegations inconsistent therewith.

112.    To date, KFI has incurred more than $10 million in defense costs related to the AFFF Claims.  In the AFFF Claims, the claimants seek damages in excess of amounts that, when allocated in accordance with law, are sufficient to reach each of the Policies.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or falsity of whether KFI has incurred more than $10 million in defense costs related to AFF Claims, and on that basis denies that allegation. The allegations contained in the individual AFFF Claims and the damages sought speak for themselves and Westport denies any allegations inconsistent therewith. Westport is without knowledge or information to form a belief as to the truth or falsity of whether the claims seek damages in excess of amounts that, when allocated in accordance with law, are sufficient to reach each of the Policies and on that basis denies that allegation.  Westport denies the remaining allegations contained in Paragraph 112, and specifically denies that the Plaintiff has proven that it is entitled to coverage under the Puritan Policies.

## C.    The Policies At Issue

113.    Upon information and belief, each of the Insurers or their respective predecessors-in- interest, in consideration of premiums paid by the National Foam Business and/or its corporate parents, issued or subscribed to primary, umbrella, and/or excess Policies in effect between the 1960s and 2013 covering the National Foam Business.

**ANSWER**:    Westport admits only that Puritan Insurance Company issued to the Named

Assured, Philadelphia Suburban Corporation, Policy No. ML652416 for the

period August 1, 1979 to August 1, 1980, and Policy No.  ML652444 for the

period August 1, 1980 to August 1, 1981, but denies that Plaintiff is an insured,

or is otherwise entitled to coverage, under the Puritan Policies. As to the

remaining allegations in Paragraph 113, Westport is without knowledge or

information to form a belief as to the truth or falsity of those allegations, and on

that basis denies each and every remaining allegation contained therein.

114.    As set forth in Paragraphs 56 to 100 above, KFI is a legal successor to the National Foam Business's rights under the Policies.

**ANSWER**:    The allegations contained in Paragraph 62 consist of legal conclusions to which

no answer is required.  To the extent that an answer is required, answering only

as to the Puritan Policies, Westport denies the allegations contained in

Paragraph 114.   As to allegations directed toward or against any other

defendant, Westport is without knowledge or information to form a belief as to

the truth or falsity of the allegations in Paragraph 114, and on that basis denies

each and every allegation contained therein.

115.    As described in more detail below, upon information and belief, each of the Policies provides broad coverage for claims seeking damages due to alleged bodily injury, personal injury, and/or property damage arising out of the manufacture, sale, and distribution of AFFF by the National Foam Business.

**ANSWER**:    Answering only as to the Puritan Policies, Westport states that the allegations

contained in Paragraph 115 consist of legal conclusions to which no answer is

required.   To the extent that an answer is required, Westport denies the

allegations contained in Paragraph 115.   As for any remaining allegations

directed other insurers, Westport is without knowledge or information to form

a belief as to the truth or falsity of those allegations, and on that basis, denies

each and every remaining allegation contained therein.

116.    Beginning in May 2020, KFI began requesting copies of the Policies from certain of the Insurers.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 116, and on that basis denies each and

every allegation contained therein.

117.    Upon information and belief, some or all of the Insurers issued additional Policies that are in the possession of Defendants and are currently unknown to KFI. For example:

(a)    Defendant Travelers has acknowledged that it has copies of relevant Policies in its possession but has refused to provide copies of those Policies to KFI.

(b)    KFI possesses secondary evidence that Defendant Hartford issued primary liability insurance incepting in 1976. Specifically, the Excess Policy issued by Northbrook Insurance Company for the period August 1, 1976, to August 1, 1977, Policy No. 63 002 090, identifies "Hartford" as the insurer that issued the first underlying policy.

**ANSWER**:    Westport denies it has knowledge of or possesses additional Policies that are

unknown to KFI. As to the remaining allegations in Paragraph 117, Westport is

without knowledge or information to form a belief as to the truth or falsity of

the allegations in Paragraph 117, and on that basis denies each and every

allegation contained therein.

118.    Upon information and belief, each of the Policies requires the issuing or subscribing Insurers to pay or to indemnify KFI for all sums that it becomes legally obligated to pay as a result of claims and suits by third parties alleging bodily injury, personal injury, or property damage arising out of the National Foam Business's operations, so long as any part of the bodily injury, personal injury, or property damage happened during the period in which the Policy was in effect.

**ANSWER**:    Answering only as to the Puritan Policies, Westport states that the allegations

contained in Paragraph 118 consist of legal conclusions to which no answer is

required.    To the extent that an answer is required, Westport denies the

allegations contained in Paragraph 118, and specifically denies that Plaintiff has

carried its burden to prove that it is entitled to coverage under the Puritan

Policies.  As for any remaining allegations directed to other insurers, Westport

is without knowledge or information to form a belief as to the truth or falsity of

those allegations, and on that basis, denies each and every remaining allegation

contained therein.

119.    This duty to pay or to indemnify KFI for "all sums" includes a promise by each Insurer to pay or to indemnify Plaintiff for all damages incurred by Plaintiff pursuant to a settlement or judgment of an AFFF Claim, as long as any part of the alleged injury or damage occurred during the policy period.  The duty to pay mentioned in the preceding sentence applies (a) immediately as to Primary Policies without any retention or deductible, and (b) as soon as losses and/or defense costs are sufficient to reach the attachment point of any Policies that are subject to a retention, deductible or underlying limit (if any) expressly set forth in the Policies.

**ANSWER**:    Answering only as to the Puritan Policies, Westport states that the allegations

contained in Paragraph 119 consist of legal conclusions to which no answer is

required.   To the extent that an answer is required, Westport denies the

allegations contained in Paragraph 119, and specifically denies that Plaintiff has

carried its burden to prove that it is entitled to coverage under the Puritan

Policies.  As for any remaining allegations directed to other insurers, Westport

is without knowledge or information to form a belief as to the truth or falsity of

those allegations, and on that basis, denies each and every remaining allegation

contained therein.

120.    The Primary Policies also require the Primary Insurers to defend KFI, to pay, or to reimburse KFI for all costs, including attorneys' fees, experts' fees, and supplemental expenses, incurred by Plaintiff in the investigation and defense of underlying actions alleging bodily injury, personal injury, or property damage that potentially took place, in whole or in part, during the relevant policy periods.  The Primary Insurers' obligation to defend potentially covered actions against KFI (the "duty to defend") applies even if the underlying allegations are groundless, false, or fraudulent.  The Primary Insurers' duty to defend KFI continues until the applicable limits of liability set forth in the Primary Policies are exhausted.

**ANSWER**:    Westport is without knowledge or information to form a belief as to the truth or

falsity of the allegations in Paragraph 120, and on that basis, denies each and

every allegation contained therein.

121.    Upon information and belief, the promise by each Insurer that issued or subscribed to an Excess Policy to pay or indemnify for "all sums" includes a promise to defend, to pay, or to reimburse KFI for all costs, including attorneys' fees and supplemental expenses, incurred by KFI in the investigation and defense of claims and suits for which the insurer has a potential duty to indemnify as set forth in Paragraph 118 ("Defense Obligation").  These Insurers' Defense Obligation is subject only to exhaustion of applicable underlying, upper, or quota-share limits of liability (if any) expressly set forth in the Policies.

**ANSWER**:    Answering only as to the Puritan Policies, Westport states that the allegations

contained in Paragraph 121 consist of legal conclusions to which no answer is

required.   To the extent that an answer is required, Westport denies the

allegations contained in Paragraph 121, and specifically denies that Plaintiff has

carried its burden to prove that it is entitled to coverage under the Puritan

Policies.  As for any remaining allegations directed to other insurers, Westport

is without knowledge or information to form a belief as to the truth or falsity of

those allegations, and on that basis, denies each and every remaining allegation

contained therein.

122.    Upon information and belief, all premiums due under the Policies have been paid and all other pertinent conditions and requirements for obtaining the declaration of coverage under the Policies sought herein have been or will be satisfied and/or have been waived, excused, or are subject to an estoppel against the Insurers, such that Plaintiff is entitled to seek the relief herein sought.

**ANSWER**:    Answering only as to the Puritan Policies, Westport admits only that it has no

information to indicate that premiums were not properly paid for the Puritan

Policies by the Named Assured.   The remaining allegations contained in

Paragraph 122 consist of legal conclusions to which no answer is required.  To

the extent that an answer is required, Westport denies the allegations contained

in Paragraph 122, and specifically denies that Plaintiff has carried it burden of proving that it is entitled to coverage under the Puritan Policies.  As to allegations against any other defendant, Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 122, and on that basis, denies each and every allegation contained therein.

123.    Upon information and belief, none of the Policies contain terms that apply to preclude coverage for the AFFF Claims.

**ANSWER**:    Westport denies that the Puritan Policies do not contain terms that apply to preclude coverage for the AFFF Claims. Westport is without knowledge or information to form a belief as to the truth or falsity of those allegations with respect to the other insurers, and on that basis, denies each and every remaining allegation contained therein.

124.    Each of the AFFF Claims alleges a covered, or potentially covered, occurrence, and seeks damages for bodily injury, property damage, or personal injury, as those terms are defined in the Policies.  Accordingly, the Primary Insurers have a current duty to defend and/or to pay or reimburse defense costs in full.

**ANSWER**:    Westport denies that it issued any policies of primary insurance to KFI or has any duty to defend KFI.  Westport is without knowledge or information to form a belief as to the truth or falsity of the remaining allegations in Paragraph 124, and on that basis, denies each and every allegation contained therein.

125.    Despite multiple requests, no Primary Insurer has agreed to defend KFI against the AFFF Claims or to pay or reimburse KFI's defense costs incurred in connection with the AFFF Claims.

**ANSWER**:    Westport denies that it issued any policies of primary insurance to KFI or that it has any duty to defend KFI.  Westport is without knowledge or information

to form a belief as to the truth or falsity of the remaining allegations in Paragraph

125, and on that basis, denies each and every allegation contained therein.

126.   Despite multiple requests, no Insurer has acknowledged its coverage obligations to KFI for the AFFF Claims, nor has any Insurer agreed to provide coverage for those Claims upon exhaustion of any applicable underlying limits.

**ANSWER**:   Westport admits that it has not acknowledged its coverage obligations" or

"agreed to provide coverage for the AFFF Claims," and denies that it had any

obligation to do so, and further denies that KFI has ever alleged that the

coverage underlying the Puritan Policies is exhausted. Westport further denies

that KFI has carried its burden to prove that it is entitled to coverage under the

Puritan Policies.  Westport is without knowledge or information to form a belief

as to the truth or falsity of the remaining allegations in Paragraph 126 and on

that basis denies each and every remaining allegation contained therein.

127.   KFI is entitled to defense coverage from any Insurer that issued a Policy

containing a duty to defend or a Defense Obligation (as defined in Paragraphs 120 and 121).

**ANSWER**:   Westport denies that it issued policies containing a "duty to defend" or a

Defense Obligation" as those terms are defined in Paragraphs 120 and 121.

Westport denies the remaining allegations contained in Paragraph 127.

128.   In addition to the Insurers' obligation to cover defense costs, to the extent that

KFI is held liable for any AFFF Claims, any such liability would be covered under each Policy

that was in effect during any portion of the period in which bodily injury, personal injury, or

property damage allegedly happened.

**ANSWER**:   Answering only as to the Puritan Policies, Westport states that the allegations

contained in Paragraph 128 consist of legal conclusions to which no answer is

required.   To the extent that an answer is required, Westport denies the

allegations contained in Paragraph 128, and specifically denies that KFI has

carried its burden to prove that it is entitled to coverage under the zpuritan

Policy for the underlying AFFF Claims.  As for any remaining allegations

directed to other insurers, Westport is without knowledge or information to form

a belief as to the truth or falsity of those allegations, and on that basis, denies

each and every remaining allegation contained therein.

129.    An actual controversy of a justiciable nature presently exists between KFI and

the Insurers concerning the proper construction of the Policies and the extent of the Insurers'

duty to defend, pay and/or reimburse KFI for any damages, losses, liabilities, defense costs, or

other monetary obligations that may be sustained by or imposed upon KFI as a result of the

AFFF Claims and any similar AFFF-related claims that may be filed in the future.

**ANSWER**:    Westport denies that there is a justiciable controversy between KFI and

Westport.  Westport denies the remaining allegations contained in Paragraph

129.

## <u>FIRST CLAIM FOR RELIEF</u>

### <u>(Declaratory Relief – Primary Insurers' Duty to Defend)</u>

130.    KFI repeats and reincorporates by reference the allegations set forth in
Paragraphs 1 through 129 as if fully set forth herein.

**ANSWER**:    The First Claim is not directed at Westport as Westport is not a primary insurer;

therefore, no response is required. To the extent a response is required, Westport

repeats and incorporates by reference its answers to the allegations set forth in

Paragraphs 1 through 129 as if fully set forth herein.

131.    This is a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201 et seq.
KFI seeks declaratory relief in the form of a judicial determination of the rights and of the
duties of the Primary Insurers to defend KFI against the AFFF Claims and any similar AFFF-
related claims that may be filed in the future under the Primary Policies.

**ANSWER**:    The First Claim is not directed at Westport as Westport is not a primary insurer; therefore, no response is required. To the extent a response is required, Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 131, and on that basis denies each and every allegation contained therein..

132.    Pursuant to the terms of the Primary Policies, the Primary Insurers have a duty to defend KFI against the AFFF Claims and any similar AFFF-related claims that may be filed in the future.  The Primary Insurers' contractual duty to defend KFI as set forth herein is subject only to the conditions set forth in Paragraph 120, which are incorporated herein by reference.

**ANSWER**:    The First Claim is not directed at Westport as Westport is not a primary insurer; therefore, no response is required. To the extent a response is required, Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 132, and on that basis denies each and every allegation contained therein..

133.    No Primary Insurer has accepted its obligation to defend KFI against the AFFF Claims as required under the terms of each Primary Policy issued by each Primary Insurer.

**ANSWER**:    The First Claim is not directed at Westport as Westport is not a primary insurer; therefore, no response is required. To the extent a response is required, Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 133, and on that basis denies each and every allegation contained therein..

134.    Through their failure to provide a complete defense to KFI despite multiple requests that they provide such a defense, each Primary Insurer has effectively denied coverage for the AFFF Claims.

**ANSWER**:    The First Claim is not directed at Westport as Westport is not a primary insurer; therefore, no response is required. To the extent a response is required, Westport

is without knowledge or information to form a belief as to the truth or falsity of
the allegations in Paragraph 134, and on that basis denies each and every
allegation contained therein..

135.    An actual controversy of a justiciable nature presently exists between KFI and
the Primary Insurers concerning the proper construction of the Primary Policies and the extent
of the Primary Insurers' duty to defend KFI against the AFFF Claims and any similar AFFF-
related claims that may be filed in the future.  The issuance of declaratory relief by this Court
addressing the Primary Insurers' duty to defend KFI will terminate some or all of the existing
controversy between the parties.

**ANSWER**:    The First Claim is not directed at Westport as Westport is not a primary insurer;

therefore, no response is required. To the extent a response is required, Westport

is without knowledge or information to form a belief as to the truth or falsity of

the allegations in Paragraph 135, and on that basis denies each and every

allegation contained therein..

136.    Plaintiff also seeks an award of attorneys' fees and costs for prosecuting this
claim for declaratory relief.

**ANSWER**:    The First Claim is not directed at Westport as Westport is not a primary insurer;

therefore, no response is required. To the extent a response is required, Westport

is without knowledge or information to form a belief as to the truth or falsity of

the allegations in Paragraph 136, and on that basis denies each and every

allegation contained therein..

### SECOND CLAIM FOR RELIEF

### (Breach of Contract – Primary Insurers' Duty to Defend)

137.    KFI repeats and reincorporates by reference the allegations set forth in
Paragraphs 1 through 129 as if fully set forth herein.

**ANSWER**:    The Second Claim is not directed at Westport as Westport is not a primary

insurer; therefore, no response is required. To the extent a response is required,

Westport repeats and incorporates by reference its answers to the allegations set forth in Paragraphs 1 through 129 as if fully set forth herein.

138.    This is a claim for damages for breach of contract.  KFI seeks reimbursement from the Primary Insurers of the defense costs they have incurred and will continue to incur to defend against the AFFF Claims, which the Primary Insurers have failed or refused to defend.

**ANSWER**:    The Second Claim is not directed at Westport as Westport is not a primary insurer; therefore, no response is required. To the extent a response is required, Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 138, and on that basis denies each and every allegation contained therein.

139.    KFI has incurred and/or will continue to incur financial losses in the investigation and defense of the AFFF Claims.

**ANSWER**:    The Second Claim is not directed at Westport as Westport is not a primary insurer; therefore, no response is required. To the extent a response is required, Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 139, and on that basis denies each and every allegation contained therein.

140.    The Primary Insurers have breached their contractual obligations under the Primary Policies to provide a complete defense to KFI against the AFFF Claims.

**ANSWER**:    The Second Claim is not directed at Westport as Westport is not a primary insurer; therefore, no response is required. To the extent a response is required, Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 140, and on that basis denies each and every allegation contained therein.

141.    As a direct result of the Primary Insurers' breach of their duty to defend, KFI has been and will be deprived of the benefit of the insurance coverage for which Plaintiff's predecessors paid substantial premiums, and have been and will be forced to pay sums in the

investigation and defense of the AFFF Claims, including attorneys' fees, experts' fees, and supplemental expenses, which the Primary Insurers have a contractual obligation to pay.

**ANSWER**:    The Second Claim is not directed at Westport as Westport is not a primary insurer; therefore, no response is required. To the extent a response is required, Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 141, and on that basis denies each and every allegation contained therein.

142.    As a direct result of the Primary Insurers' breach of their duty to defend, KFI has been forced to incur and will continue to incur consequential damages, including, without limitation, attorneys' fees and other expenses in bringing these claims and the interest and lost earnings on amounts wrongfully held by the Primary Insurers, which damages are not subject to the Primary Policies' limits of liability.

**ANSWER**:    The Second Claim is not directed at Westport as Westport is not a primary insurer; therefore, no response is required. To the extent a response is required, Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 142, and on that basis denies each and every allegation contained therein.

143.    As a direct and proximate result of the aforesaid acts and omissions by the Primary Insurers, KFI has been damaged in an amount to be proven at trial, for all damages, costs, and payments, and other sums.

**ANSWER**:    The Second Claim is not directed at Westport as Westport is not a primary insurer; therefore, no response is required. To the extent a response is required, Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 139, and on that basis denies each and every allegation contained therein..

### THIRD CLAIM FOR RELIEF

**(Declaratory Relief – Insurers' Defense Obligation under Excess Policies)**

144.    KFI repeats and reincorporates by reference the allegations set forth in Paragraphs 1 through 129 as if fully set forth herein.

**ANSWER**:    Westport  repeats and incorporates by reference its answers to the allegations

set forth in Paragraphs 1 through 129 as if fully set forth herein

145.    This is a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201 et seq. KFI seeks declaratory relief in the form of a judicial determination of the rights and of the duties of the Insurers with respect to their Defense Obligation under the Excess Policies for the AFFF Claims and any similar AFFF-related claims that may be filed in the future.   The Insurers' contractual Defense Obligation is subject only to the conditions set forth in Paragraph 121, which is incorporated herein by reference.

**ANSWER**:    The first sentence in Paragraph 145 is not an allegation of fact to which an

answer is required. To the extent an answer is required, Westport admits KFI is

bringing a claim for declaratory judgment. Westport denies that KFI is entitled

to the relief requested against Westport, and specifically denies that it has any

purported "Defense Obligation," as KFI purports to define that term in

Paragraph 121.  Westport further denies that KFI has carried its burden to prove

that it is entitled to coverage under the Puritan Policies.  With respect to any

remaining allegations in Paragraph 145 pertaining to other insurers, Westport is

without knowledge or information to form a belief as to the truth or falsity of

those allegations and on that basis denies the allegations contained therein.

146.    The Insurers have denied or otherwise failed or refused to acknowledge their Defense Obligation pursuant to the Excess Policies with respect to the AFFF Claims and with respect to any similar AFFF-related claims that may be filed in the future.

**ANSWER**:    Westport admits it has not acknowledged a purported "Defense Obligation"

under the Puritan Policies with respect to the AFFF Claims and with respect to

any similar AFFF-related claims that may be filed in the future, and specifically

denies that it has any purported "Defense Obligation," as KFI purports to define

that term. Westport further denies that KFI has carried its burden to prove that

it is entitled to coverage under the Puritan Policies for the underlying AFFF

Claims.  With respect to the remaining allegations in Paragraph 146, Westport

is without knowledge or information to form a belief as to the truth or falsity of

those allegations and on that basis denies the allegations contained therein.

147.    An actual controversy of a justiciable nature presently exists between KFI and the Insurers concerning the proper construction of the Excess Policies and the extent of the Insurers' Defense Obligation.  The issuance of declaratory relief by this Court addressing the Insurers' Defense Obligation will terminate some or all of the existing controversy between the parties.

**ANSWER**:    Westport denies that there is a justiciable controversy between KFI and

Westport, and denies the remaining allegations contained in Paragraph 147.

148.    KFI also seeks an award of attorneys' fees and costs for prosecuting this claim for declaratory relief.

**ANSWER**:    Paragraph 148 does not allege a statement of fact so no answer is required. To

the extent an answer is required, Westport admits that KFI is seeking an award

of attorneys' fees and costs for prosecuting this claim for declaratory relief but

denies KFI is entitled to any such relief.

### FOURTH CLAIM FOR RELIEF

### (Declaratory Relief – Insurers' Duty to Indemnify)

149.    KFI repeats and reincorporates by reference the allegations set forth in Paragraphs 1 through 129 as if fully set forth herein.

**ANSWER**:    Westport  repeats and incorporates by reference its answers to the allegations

set forth in Paragraphs 1 through 129 as if fully set forth herein

150.    This is a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201 et seq. KFI seeks declaratory relief in the form of a judicial determination of the rights and the obligations of the Insurers under the Policies to indemnify KFI for any damages, losses, liabilities, and monetary obligations that may be sustained by or imposed upon Plaintiff as a result of the AFFF Claims and any similar AFFF- related claims that may be filed in the future.

**ANSWER**:    Paragraph 150 does not allege a statement of fact so no answer is required. To the extent an answer is required, Westport admits that KFI is seeking such declaratory relief, but denies that KFI is entitled to any such relief against Westport.

151.    Pursuant to the terms of the Insurance Policies, the Insurers are obligated to indemnify KFI for, or pay on their behalf, all sums that they become legally obligated to pay through judgment, settlement, or otherwise as a result of the AFFF Claims and any similar AFFF-related claims that may be filed in the future.  The Insurers' contractual duty to indemnify KFI as set forth herein is subject only to the conditions set forth in Paragraph 119, which is incorporated herein by reference.

**ANSWER**:    The allegations contained in Paragraph 151 consist of legal conclusions to which no answer is required.  To the extent that an answer is required, answering only as to the Puritan Policies, Westport acknowledges its obligations under the terms of the Puritan Policies but denies that it has any current duty to indemnify because KFI has not carried its burden to prove that it is entitled to coverage under the Puritan Policies for the underlying AFFF Claims.  With respect to the remaining allegations in Paragraph 151, Westport is without knowledge or information to form a belief as to the truth or falsity of those allegations and on that basis denies the allegations contained therein.

152.    The Insurers have denied or otherwise failed or refused to acknowledge their duty to indemnify KFI with respect to the AFFF Claims and with respect to any similar AFFF-related claims that may be filed in the future.

**ANSWER**:    Westport admits that it has not acknowledged "a duty to indemnify KFI with respect to the AFFF Claims and with respect to any similar AFFF-related claims that may be filed in the future under the Puritan Policies," and denies that it had any obligation to do so, and further denies that KFI has carried its burden to show that it is entitled to coverage under the Puritan Policies.  Westport is

without knowledge or information to form a belief as to the truth or falsity of

the remaining allegations in Paragraph 126 and on that basis denies each and

every remaining allegation contained therein.

153.    An actual controversy of a justiciable nature presently exists between KFI and the Insurers concerning the proper construction of the Policies and the extent of the Insurers' duty to indemnify KFI for any damages, losses, liabilities, and monetary obligations that may be sustained by or imposed upon KFI as a result of the AFFF Claims.  The issuance of declaratory relief by this Court addressing the Insurers' duty to indemnify KFI will terminate some or all of the existing controversy between the parties.

**ANSWER**:    Westport denies that there is a justiciable controversy between Westport and

KFI.

154.    KFI also seeks an award of attorneys' fees and costs for prosecuting this claim for declaratory relief.

**ANSWER**:    Paragraph 154 does not allege a statement of fact so no answer is required. To

the extent an answer is required, Westport admits that KFI is seeking an award

of attorneys' fees and costs for prosecuting this claim for declaratory relief but

denies that KFI is entitled to any such relief against Westport.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

155.    On the First Claim for Relief, KFI requests that the Court enter a judgment:
(a)    declaring that the Primary Insurers are contractually obligated to provide a complete defense to KFI, including to pay its reasonable attorneys' fees, experts' fees, and other costs, in connection with the AFFF Claims and any similar AFFF-related claims that may be filed in the future;
(b)    entering a judgment awarding KFI its reasonable attorneys' fees, interest, costs and the expenses of this action; and
(c)    awarding such other and further relief as the Court deems just and proper.

**ANSWER**:    The First Claim is not directed at Westport as Westport is not a primary insurer;

therefore, no answer is required to Paragraph 155. To the extent a response is

required, Westport is without knowledge or information to form a belief as to

the truth or falsity of the allegations in Paragraph 155, and on that basis denies

each and every allegation contained therein.

156.    On the Second Claim for Relief, KFI requests that the Court enter a judgment:

(a)    awarding KFI compensatory damages and consequential damages, in an amount to be proven at trial, plus interest thereon and costs according to law, for the Primary Insurers' breach of their contractual duty to defend KFI against the AFFF Claims;

(b)    entering a judgment awarding KFI its reasonable attorneys' fees, interest, costs and the expenses of this action; and

(c)    awarding such other and further relief as the Court deems just and proper.


**ANSWER**:    The Second Claim is not directed at Westport as Westport is not a primary

insurer; therefore, no answer is required to Paragraph 156. To the extent a

response is required, Westport is without knowledge or information to form a

belief as to the truth or falsity of the allegations in Paragraph 156, and on that

basis denies each and every allegation contained therein..


157.    On the Third Claim for Relief, KFI request that the Court enter a judgment:

(a)    declaring that pursuant to the terms of the Excess Policies, the Insurers are obligated to defend, pay for, or reimburse KFI for costs incurred by KFI with respect to the defense of the AFFF Claims and any similar AFFF-related claims that may be filed in the future, subject only to exhaustion of any applicable underlying or upper limit of liability as set forth in each of the Excess Policies;

(b)    entering a judgment awarding KFI its reasonable attorneys' fees, interest, costs and the expenses of this action; and

(c)    awarding such other and further relief as the Court deems just and proper.


**ANSWER**:    Westport admits that KFI is seeking the relief set forth in Paragraph 157, but

denies that it is entitled to such relief under the Puritan Policies. With respect to

the other Insurers, Westport is without knowledge or information to form a

belief as to the truth or falsity of the allegations in Paragraph 157 and on that

basis denies the remaining allegations in Paragraph 157.

158.    On the Fourth Claim for Relief, KFI requests that the Court enter a judgment:

(a)    declaring that pursuant to the terms of the Policies, Insurers are obligated to indemnify KFI for, or pay on its behalf, all sums for which it becomes legally obligated to pay as allocated by KFI in the event of judgment, settlement, or otherwise, as a result of the AFFF Claims or any similar AFFF-related claims that may be filed in the future;

(b)    declaring that, in the event of a judgment, settlement, or other resolution of the AFFF Claims, KFI is entitled to recover all sums paid in connection with the AFFF Claims from any triggered Policy subject only to exhaustion of the upper and lower limits of liability as set forth in each of the Policies;

(c)    entering a judgment awarding KFI its reasonable attorneys' fees, interest, costs and the expenses of this action; and

(d)    awarding such other and further relief as the Court deems just and proper.

**ANSWER**:    Westport admits that KFI is seeking the relief set forth in Paragraph 158, but denies that it is entitled to such relief under the Puritan Policies. With respect to the other Insurers, Westport is without knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 158 and on that basis denies the remaining allegations in Paragraph 158.

Defendant Westport asserts the following affirmative defenses:

### FIRST AFFIRMATVE DEFENSE

KFI's Complaint fails to state a claim against Westport upon which relief may be granted.

### SECOND AFFIRMATVE DEFENSE

There is no actual justiciable controversy between KFI and Westport.

### THIRD AFFIRMATIVE DEFENSE

KFI's claims in this action may be barred by the applicable statute of limitations, statute of repose, or other time-barred defenses.

### FOURTH AFFIRMATIVE DEFENSE

The claims asserted by KFI may be barred, in whole or in part, by the equitable doctrines of laches, unclean hands, waiver or estoppel.

## FIFTH AFFIRMATIVE DEFENSE

Westport may have no liability to KFI because KFI has not proven the existence and terms and conditions of the policies allegedly underlying the Puritan Policies.

## SIXTH AFFIRMATIVE DEFENSE

Westport has no liability to KFI because the Puritan Policies do no provide coverage for any loss or damages which were known to the insureds prior to the inception of the Puritan Policies.

## SEVENTH AFFIRMATIVE DEFENSE

KFI is not entitled to coverage for bodily injury, personal injury, or property damage that was either expected or intended by the assured under the Puritan Policies.

## EIGHTH AFFIRMATIVE DEFENSE

KFI is not entitled to coverage under the Puritan Policies unless and until KFI proves that all applicable underlying insurance and self-insured retentions have been properly exhausted.

## NINTH AFFIRMATIVE DEFENSE

KFI is not entitled to coverage to the extent it failed to comply with the terms and conditions of the Puritan Policies.

## TENTH AFFIRMATIVE DEFENSE

KFI is not entitled to coverage to the extent that the insured failed to disclose, concealed, omitted, or misrepresented material facts to the insurer when applying for or renewing the Puritan Policies.

## ELEVENTH AFFIRMATIVE DEFENSE

KFI  is not entitled to coverage to the extent that it failed to provide timely notice of any occurrence, loss, claim or suit as required by the Puritan Policies.

## TWELFTH AFFIRMATIVE DEFENSE

KFI is not entitled to coverage under the Puritan Policies to the extent that KFI is liable for personal injury or property damage that did not happen or occur during the policy periods of the Puritan Policies.

### THIRTEENTH AFFIRMATIVE DEFENSE

KFI is not entitled to coverage under the Puritan Policies for damage to any property owned by, or in the care, custody and control of KFI or any insured.

### FOURTEENTH AFFIRMATIVE DEFENSE

KFI is not entitled to coverage to the extent any of the claims against KFI are for, or results from, the imposition of fines, penalties, punitive or exemplary damages.

### FIFTEENTH AFFIRMATIVE DEFENSE

KFI is not entitled to coverage because of the application of the pollution exclusion in the Puritan Policies or in the underlying policies to which the Puritan Policies may follow form.

### SIXTEENTH AFFIRMATIVE DEFENSE

To the extent that KFI is entitled to coverage under the Puritan Policies, such coverage must be reduced by proper allocation of liability among all other applicable self-insured retentions, primary and excess insurance policies, and years of no insurance.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Any liability of Westport under the Puritan Policies may be limited by the application of other insurance provisions.

### EIGHTEENTH AFFIRMATIVE DEFENSE

KFI is not entitled to coverage to the extent that is has failed to comply with all conditions precedent to coverage under the Puritan Policies.

### NINETEENTH AFFIRMATIVE DEFENSE

KFI's claims for indemnity are not ripe and KFI lacks standing to bring indemnity claims because, upon information and belief, KFI has not yet incurred or paid any amounts for which it seeks indemnity under the Puritan Policies.

## TWENTIETH AFFIRMATIVE DEFENSE

KFI is not entitled to coverage, if at all, until it proves that it qualifies as an assured under the Puritan Policies.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

KFI'S claims against Westport are barred in whole or in part to the extent that it failed to cooperate as required by the Puritan Policies.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

KFI is not entitled to coverage unless and until it proves that any amounts it is obligated to pay were caused by an accident or occurrence as those terms may be defined in the Puritan Policies or the underlying policies to which the Puritan Policies follow form.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Westport has no liability to KFI to the extent that KFI fails to prove that the underlying AFFF Claims are for bodily injury, personal injury, or property damage as those terms are defined in the Puritan Policies or the underlying policies.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

KFI's claims are barred, in whole or in part, by the doctrines of res judicata, collateral estoppel, judicial estoppel, claim preclusion and/or issue preclusion.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

KFI's claims are barred, in whole or in part, by the failure to mitigate damages.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Westport has no liability to KFI to the extent that KFI fails to prove that the recovery sought constitutes sums that an insured is obligated to pay as "damages" or "ultimate net loss"

within the meaning of the Puritan Policies or the underlying policies to which the Puritan Policies follow form.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

KFI's claims are barred, in whole or in part, to the extent that an insured has harmed, reduced, prejudiced, or impaired Westport's subrogation and/or contribution rights with regard to any claims asserted against such insured.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

KFI's claims are barred, in whole or in part, to the extent that the underlying claims have not been reduced to a settlement consented to by Westport or a final judgment.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

KFI's claims are barred, in whole or in part, to the extent that KFI or any of its predecessors, or any other person claiming coverage, voluntarily incurred costs, without Westport's consent, including any and all costs incurred prior to notice of any claim or suit.

## THIRTIETH AFFIRMATIVE DEFENSE

Westport may have no obligation under the Puritan Policies to the extent any insured has failed to obtain Wesport's consent to assignment of interest under the Puritan Policies.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

KFI's claims are barred, in whole or in part, to the extent that the insured has no legal liability with respect to any of the underlying claims.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

To the extent that it is found that any insurer who issued underlying policies of insurance to the Puritan Policies has or does become insolvent, or otherwise does not satisfy its obligations, if any, to an insured, the Puritan Policy(ies) does/do not "drop down" to provide coverage.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

KFI's claims are barred, in whole or in part, to the extent that those claims arise out of the activities of corporations or other entities that took place prior to an insured's acquisition of such corporations or entities.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

KFI's claims are barred, in whole or in part, to the extent that any claimed loss arises from any actions, omissions, or other conduct that is or was in violation of federal, state and/or local law, statutes, regulations, or public policy.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

KFI's claims are barred, in whole or in part, to the extent that any alleged liability for which it seeks coverage was assumed pursuant to a contract or agreement.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

KFI's claims are barred, in whole or in part, for losses that have not yet occurred or for sums that have not yet been paid.

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

Any liability of Westport under the Puritan Policies may be limited by the application of non-cumulation clauses.

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

KFI's claims for coverage under the Puritan Policies may be barred, in whole or in part, to the extent KFI is barred from recovering any amounts for which they have been unjustly enriched or that must be offset from any alleged damages.

### THIRTY-NINTH AFFIRMATIVE DEFENSE

Westport reserves the right to assert any and all defenses, including all defenses available to them under the Puritan Policies or any underlying policies, as well as all defenses

that may be applicable based on information obtained through discovery or further investigation.

WHEREFORE, Westport respectfully requests that this Court enter judgment in its favor;

A. Dismissing the Plaintiff's Complaint with prejudice;

B. Declaring that Westport owes no obligations under the Puritan Policies to KFI with respect to any past, present, or future AFFF claims;

C. Awarding Westport its costs and attorneys' fees in this action;

D. Awarding Westport such other relief as the Court deems just and proper.

## **JURY DEMAND**

Defendant, Westport Insurance Corporation, as successor-in-interest to Puritan Insurance Company, demands a trial by jury on all issues.

Dated: February 12, 2024

KENNEDYS CMK LLP

/s/ Benjamin A. Blume
Benjamin A. Blume (Pro Hac Vice)
30 South Wacker Drive, Suite 3650
Chicago, Illinois 60606
Telephone: 312-800-5000
Benjamin.blume@kennedyslaw.com

Marc Casarino, Esq.
222 Delaware Ave. Suite 710
Wilmington, Delaware 19801
Telephone: 302-308-6647
Marc.casarino@kennedyslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of February, 2024, I electronically filed the foregoing with the clerk of the Court using the electronic filing system which will send notification of such filing to all attorneys of record.

Dated: February 12, 2024

KENNEDYS CMK LLP


/s/ Benjamin A. Blume
Benjamin A. Blume (Pro Hac Vice)
30 South Wacker Drive, Suite 3650
Chicago, Illinois 60606
Telephone: 312-800-5000
Benjamin.blume@kennedyslaw.com

Marc Casarino, Esq.
222 Delaware Ave. Suite 710
Wilmington, Delaware 19801
Telephone: 302-308-6647
Marc.casarino@kennedyslaw.com