## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>KIDDE-FENWAL, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 23-10638 (LSS) |
| KIDDE-FENWAL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ACE AMERICAN INSURANCE COMPANY, *et al.,*<br><br>Defendants. | Adv. Proc. No. 23-50758 (LSS) |

**ANSWER AND ADDITIONAL DEFENSES OF
WELLFLEET NEW YORK INSURANCE COMPANY, FORMERLY KNOWN AS
ATLANTA INTERNATIONAL INSURANCE COMPANY; COLUMBIA CASUALTY
COMPANY; THE CONTINENTAL INSURANCE COMPANY, ON ITS OWN BEHALF
AND AS SUCCESSOR-IN-INTEREST TO HARBOR INSURANCE COMPANY AND
LONDON GUARANTEE AND ACCIDENT COMPANY OF NEW YORK; AND
<u>GOVERNMENT EMPLOYEES INSURANCE COMPANY</u>**

Wellfleet New York Insurance Company, formerly known as Atlanta International Insurance Company; Columbia Casualty Company; The Continental Insurance Company, on its own behalf and as successor-in-interest to Harbor Insurance Company and London Guarantee and Accident Company of New York; and Government Employees Insurance Company (GEICO) (collectively the "Answering Defendants"), by and through their undersigned attorneys, hereby answer the Complaint of Kidde-Fenwal, Inc. ("KFI"). By filing this Answer, the Answering

---

[1] The last four digits of Kidde-Fenwal, Inc.'s tax identification number are 5282. The Debtor's corporate headquarters is located at 400 Main Street, Ashland, Massachusetts 01721.

Defendants do not waive the right to contest and expressly do contest the authority of the Bankruptcy Court to enter final orders or judgments in this matter, which actions by the Bankruptcy Court would be inconsistent with Article III of the United States Constitution. The Answering Defendants expressly contest that the Bankruptcy Court has such authority, and the Answering Defendants do not consent to the entry of final orders or judgments by the Court in this matter, if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## NATURE OF ACTION

1.      KFI has been named as a defendant in thousands of underlying product liability actions arising out of the alleged historic design, manufacture, sale, and distribution of the product aqueous film-forming foam, or AFFF (the "AFFF Claims").  In pertinent part, the claimants in the AFFF Claims seek to hold KFI liable for bodily injury, personal injury, and/or property damage allegedly sustained as a result of exposure to or use of AFFF.  KFI disputes liability for the AFFF Claims, which are alleged to arise from the historic manufacture of AFFF products in Pennsylvania by the National Foam Business, as defined below in Paragraph 57, which KFI owned and operated from 2007 to 2013.

**Answer:       Paragraph 1 of the Complaint consists entirely of KFI's summary of the nature of the assertedly underlying "AFFF Claims", to which no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 of the Complaint and therefore deny them.**

2.      Given KFI's financial situation and the potential for liability associated with the AFFF Claims that could exhaust KFI's ability to pay, on May 14, 2023, KFI filed in this Court a

voluntary petition for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code").

**Answer:** **Upon information and belief, the Answering Defendants admit that KFI filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code and that the date of filing of said petition was May 14, 2023. The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 2 of the Complaint and therefore deny them.**

3.      KFI is an indirect, wholly owned subsidiary of Carrier Fire & Security Americas Corporation (f/k/a UTC Fire & Security Americas Corporation) ("Carrier Fire"), which is in turn indirectly wholly owned by Carrier Global Corporation ("Carrier Global").

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 of the Complaint and therefore deny them.**

4.      KFI possesses rights under all insurance coverage provided by the primary, umbrella, and excess liability insurance policies issued to or covering the National Foam Business from its inception through 2013, when the National Foam Business was sold to a third party.

**Answer: The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 of the Complaint and therefore deny them.**

5.      Defendants ACE American Insurance Company; Admiral Insurance Company; Aetna Casualty & Surety Company; American Guarantee & Liability Insurance Company; Arch Insurance Company; Arch Reinsurance Ltd.; Arch Specialty Insurance Company; Atlanta International Insurance Company; California Union Insurance Company; Certain Underwriters at

Lloyd's, London Subscribing to Policy No. UL73935; Chartis Insurance Company of Canada; Columbia Casualty Company; Continental Insurance Company; Employers Mutual Casualty Company; Endurance American Specialty Insurance Company; Evanston Insurance Company; Federal Insurance Company; First State Insurance Company; GEICO (Government Employees Insurance Company); Gibraltar Casualty Company; Great American Assurance Company; Great American Insurance Company of New York; Harbor Insurance Company; Hartford Financial Services Group, Inc.; Insurance Company of North America; Landmark American Insurance Company; Lexington Insurance Company; London Guarantee and Accident Company of New York; National Union Fire Insurance Company of Pittsburgh, Pa; Northbrook Excess and Surplus Insurance Company; Northbrook Insurance Company; Pacific Employers Insurance Company; Puritan Insurance Company; RSA Insurance Group Limited; Twin City Fire Insurance Company; United National Insurance Company; Zurich American Insurance Company; and ABC Insurance Companies 1–20 (collectively, "Insurers"), or their respective predecessors-in-interest, issued or subscribed to liability insurance policies issued to the National Foam Business and/or its corporate parents from the 1960s to 2013 (the "Policies").

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 5 of the Complaint and therefore deny them.**

6. The Policies known to Plaintiff at this time are set forth in Attachment A hereto, which is incorporated herein by reference.

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 of the Complaint and therefore deny them.**

7.      Upon information and belief, Aetna Casualty & Surety Company, Hartford Financial Services Group, Inc., Insurance Company of North America, RSA Insurance Group Limited, and Zurich American Insurance Company issued or are the successors to insurance companies that issued primary insurance policies (the "Primary Policies") promising to defend and indemnify insured entities, including the National Foam Business, against potentially covered claims, including as is relevant here the AFFF Claims.  Upon information and belief, other Insurers may also have issued primary insurance policies with a duty to defend.  The Insurers referenced in this Paragraph 7 are collectively referred to herein as the "Primary Insurers."

**Answer:      The Answering Defendants deny being a "Primary Insurer" (as that term is used in the Complaint) and further deny having issued primary insurance policies with a duty to defend the "AFFF Claims" or any of them. The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 7 of the Complaint and therefore deny them.**

8.      Upon information and belief, each Insurer identified in Paragraph 5 issued or is the successor to one or more insurance companies that issued umbrella and/or excess liability insurance policies (the "Excess Policies") insuring the National Foam Business.

**Answer:      The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 of the Complaint and therefore deny them.**

9.      Upon information and belief, some or all Insurers issued or subscribed to additional Policies that are unknown to Plaintiff at this time.  In the event that any such Policies become known to Plaintiff, Plaintiff through this lawsuit seeks coverage under all such additional Policies issued or subscribed to by any Insurer.

**Answer:** The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 9 of the Complaint and therefore deny them. The second sentence of Paragraph 9 contains no allegations as to which an answer is required; to the extent an answer is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in in the second sentence of Paragraph 9 of the Complaint and therefore deny them.

10. Plaintiff seeks declaratory relief against all Insurers and damages from the Primary Insurers arising out of the Insurers' failure to acknowledge or perform their contractual obligations to defend, pay, reimburse, and indemnify Plaintiff in connection with the AFFF Claims under the Policies. Plaintiff seeks, *inter alia*:

(a) a declaration of the rights, duties, and liabilities of the parties under the Policies at issue;

(b) damages against the Primary Insurers for breach of their contractual duty to defend Plaintiff against the AFFF Claims; and

(c) costs and attorneys' fees.

**Answer:** Paragraph 10 does not contain allegations to which a response is required. To the extent a response is required, the Answering Defendants admit that KFI purports to seek the relief specified in Paragraph 10, but deny that any such relief, including without limitation declaratory relief, damages, costs, or attorneys' fees, is available from the Answering Defendants. The Answering Defendants further deny that they have failed to acknowledge or perform any contractual obligations in connection with the "AFFF Claims," and deny the remaining allegations in Paragraph 10, including all subparts, to the extent

directed against the Answering Defendants. **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 as they relate to any other defendant and therefore deny them.**

<u>**THE PARTIES**</u>

11.     KFI is a U.S.-based manufacturing company formed as a Delaware corporation in 1987 and located in Ashland, Massachusetts. KFI has continuously owned and operated numerous lines of business related to industrial fire detection and suppression, as well as temperature control products and products to light and control gas burners. KFI acquired the National Foam Business by merger in 2007 and owned and operated that business until 2013.

**Answer:     The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint and therefore deny them.**

12.     ACE American Insurance Company is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Philadelphia, Pennsylvania.

**Answer:     The allegations in Paragraph 12 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint and therefore deny them.**

13.     Admiral Insurance Company is a corporation organized under the laws of the State of Delaware and has its principal place of business in Scottsdale, Arizona.

**Answer:** The allegations in Paragraph 13 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 of the Complaint and therefore deny them.

14. The Aetna Casualty & Surety Company ("Aetna"), now known as Travelers Casualty and Surety Company ("Travelers") following the purchase of Aetna by Travelers Property Casualty Corp. in 1996 and name change in 1997, is a corporation organized under the laws of the State of Connecticut and has its principal place of business in Hartford, Connecticut.

**Answer:** The allegations in Paragraph 14 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of the Complaint and therefore deny them.

15. American Guarantee and Liability Insurance Company is a corporation organized under the laws of the State of New York and has its principal place of business in Schaumburg, Illinois.

**Answer:** The allegations in Paragraph 15 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint and therefore deny them.

16.     Arch Insurance Company is a corporation organized under the laws of the State of Missouri and has its principal place of business in Jersey City, New Jersey.

**Answer:     The allegations in Paragraph 16 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of the Complaint and therefore deny them.**

17.     Arch Reinsurance Ltd. is a corporation organized under the laws of Bermuda and has its principal place of business in Pembroke, Bermuda.

**Answer:     The allegations in Paragraph 17 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 of the Complaint and therefore deny them.**

18.     Arch Specialty Insurance Company is a corporation organized under the laws of the State of Missouri and has its principal place of business in Stamford, Connecticut.

**Answer:     The allegations in Paragraph 18 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 of the Complaint and therefore deny them.**

19.     Atlanta International Insurance Company, now known as Wellfleet New York Insurance Company following corporate reorganization, including its purchase by Columbia

Insurance Company in 2017 and name change in 2019, is a corporation organized under the laws of the State of New York and has its principal place of business in Fort Wayne, Indiana.

**Answer:** **The Answering Defendants admit that Wellfleet New York Insurance Company, formerly known as Atlanta International Insurance Company, is a corporation domiciled in New York with its administrative office in Fort Wayne, Indiana, and otherwise deny the allegations in Paragraph 19 of the Complaint.**

20. California Union Insurance Company, now known as Century Indemnity Company, following corporate reorganization, including a name change in 1994 and a merger in 1996, is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Philadelphia, Pennsylvania.

**Answer:** **The allegations in Paragraph 20 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 of the Complaint and therefore deny them.**

21. On information and belief, Certain Underwriters at Lloyd's, London are individuals, unincorporated associations, partnerships and/or corporations existing under the laws of various foreign and domestic jurisdictions who have subscribed to insurance policies through the Lloyd's of London insurance market located in the United Kingdom, including but not limited to those subscribing to Policy No. UL73935.

**Answer:** **The allegations in Paragraph 21 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient**

**to form a belief as to the truth of the allegations in Paragraph 21 of the Complaint and therefore deny them.**

22.     Chartis Insurance Company of Canada, now known as AIG Insurance Company of Canada following a name change in 2013, is a corporation organized under the laws of Canada and has its principal place of business in Toronto, Canada.

**Answer:     The allegations in Paragraph 22 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 of the Complaint and therefore deny them.**

23.     Columbia Casualty Company is a corporation organized under the laws of the State of Illinois and has its principal place of business in Chicago, Illinois.

**Answer:     Admitted.**

24.     Continental Insurance Company is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Chicago, Illinois.

**Answer:     Admitted.**

25.     Employers Mutual Casualty Company is a corporation organized under the laws of the State of Iowa and has its principal place of business in Des Moines, Iowa.

**Answer:     The allegations in Paragraph 25 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 of the Complaint and therefore deny them.**

26.    Endurance American Specialty Insurance Company is a corporation organized under the laws of the State of Delaware and has its principal place of business in Purchase, New York.

**Answer:    The allegations in Paragraph 26 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 of the Complaint and therefore deny them.**

27.    Evanston Insurance Company is a corporation organized under the laws of the State of Illinois and has its principal place of business in Rosemond, Illinois.

**Answer:    The allegations in Paragraph 27 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 of the Complaint and therefore deny them.**

28.    Federal Insurance Company is a corporation organized under the laws of the State of Indiana and has its principal place of business in Whitehouse Station, New Jersey.

**Answer:    The allegations in Paragraph 28 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 of the Complaint and therefore deny them.**

29.     First State Insurance Company is a corporation organized under the laws of the State of Connecticut and has its principal place of business in Boston, Massachusetts.

**Answer:     The allegations in Paragraph 29 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of the Complaint and therefore deny them.**

30.     GEICO (Government Employees Insurance Company) is a corporation organized under the laws of the State of Nebraska and has its principal place of business in Washington, DC.

**Answer:     The Answering Defendants admit that Government Employees Insurance Company is a corporation organized under the laws of the State of Nebraska and deny that it has its principal place of business in Washington, D.C.**

31.     Upon information and belief, Gibraltar Casualty Company, now known as TIG Insurance Company following corporate reorganization, including mergers in 2015 and 2016, is a corporation organized under the laws of the State of California and has its principal place of business in Manchester, New Hampshire.

**Answer:     The allegations in Paragraph 31 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 of the Complaint and therefore deny them.**

32.     Great American Assurance Company is a corporation organized under the laws of the State of Ohio and has its principal place of business in Cincinnati, Ohio.

**Answer:** The allegations in Paragraph 32 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 of the Complaint and therefore deny them.

33. Great American Insurance Company of New York is a corporation organized under the laws of the State of New York and has its principal place of business in Cincinnati, Ohio.

**Answer:** The allegations in Paragraph 33 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 of the Complaint and therefore deny them.

34. Harbor Insurance Company, now known as Greenwich Insurance Company following a name change in 1991, is a corporation organized under the laws of Delaware and has its principal place of business in Stamford, Connecticut.

**Answer:** The Answering Defendants admit that Greenwich Insurance Company, formerly known as Harbor Insurance Company prior to a name change in 1991 is a corporation organized under the laws of Delaware and has its principal place of business in Stamford, Connecticut and further state that The Continental Insurance Company (a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in Chicago, Illinois), is the successor in interest to the rights and obligations under certain insurance policies issued by Harbor Insurance Company, including the policy that Plaintiff alleges to have been issued by Harbor Insurance Company

**as listed in Attachment A to the Complaint, and deny that the Plaintiff is entitled to any of the relief it seeks in its Complaint with respect to such policy.**

35. Hartford Financial Services Group, Inc. ("Hartford") is a corporation organized under the laws of the State of Delaware and has its principal place of business in Hartford, Connecticut.

**Answer:** **The allegations in Paragraph 35 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 of the Complaint and therefore deny them.**

36. Insurance Company of North America is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Philadelphia, Pennsylvania.

**Answer:** **The allegations in Paragraph 36 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 of the Complaint and therefore deny them.**

37. Landmark American Insurance Company is a corporation organized under the laws of the State of New Hampshire and has its principal place of business in Atlanta, Georgia.

**Answer:** **The allegations in Paragraph 37 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to**

form a belief as to the truth of the allegations in Paragraph 37 of the Complaint and therefore deny them.

38.     Lexington Insurance Company is a corporation organized under the laws of the State of Delaware and has its principal place of business in Boston, Massachusetts.

**Answer:     The allegations in Paragraph 38 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 of the Complaint and therefore deny them.**

39.     London Guarantee and Accident Company of New York, now known as Centre Insurance Company following corporate reorganization, including a purchase and name change in 1998, is a corporation organized under the laws of the State of Delaware and has its principal place of business in New York, New York.

**Answer:     The Answering Defendants admit that London Guarantee and Accident Company of New York, now known as Centre Insurance Company, is a corporation organized under the laws of the State of Delaware and has its principal place of business in New York, New York, and further state that The Continental Insurance Company (a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Chicago, Illinois) is successor in interest to the rights and obligations under insurance policies issued by London Guarantee and Accident Company of New York, including the policy that Plaintiff alleges to have been issued by London Guarantee and Accident Company of New York as listed in Attachment A to the Complaint,**

**and deny that the Plaintiff is entitled to any of the relief it seeks in its Complaint with respect to such policy.**

40.     National Union Fire Insurance Company of Pittsburgh, Pa. is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in New York, New York.

**Answer:       The allegations in Paragraph 40 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 of the Complaint and therefore deny them.**

41.     Northbrook Excess and Surplus Insurance Company, now known as Allstate Insurance Company following a merger in 1985, is a corporation organized under the laws of the State of Illinois and has its principal place of business in Northbrook, Illinois.

**Answer:       The allegations in Paragraph 41 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 of the Complaint and therefore deny them.**

42.     Northbrook Insurance Company, now known as Allstate Insurance Company following a name change in 1978 and a merger in 1985, is a corporation organized under the laws of the State of Illinois and has its principal place of business in Northbrook, Illinois.

**Answer:       The allegations in Paragraph 42 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a**

**response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 of the Complaint and therefore deny them.**

43.     Pacific Employers Insurance Company is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Philadelphia, Pennsylvania.

**Answer:     The allegations in Paragraph 43 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 of the Complaint and therefore deny them.**

44.     Puritan Insurance Company, now known as Westport Insurance Corporation following corporate reorganization, including a merger and name change in 2008, is a corporation organized under the laws of the State of Missouri and has its principal place of business in Kansas City, Missouri.

**Answer:     The allegations in Paragraph 44 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 of the Complaint and therefore deny them.**

45.     Upon information and belief, RSA Insurance Group Limited is a corporation organized under the laws of England that has its principal place of business in London, England,

and is a successor-in-interest under certain policies issued by Royal Indemnity Company, including the insurance policies identified in Attachment A to this Complaint.

**Answer:** **The allegations in Paragraph 45 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45 of the Complaint and therefore deny them.**

46. Twin City Fire Insurance Company is a corporation organized under the laws of the State of Indiana and has its principal place of business in Indianapolis, Indiana.

**Answer:** **The allegations in Paragraph 46 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 of the Complaint and therefore deny them.**

47. United National Insurance Company is a corporation organized under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Bala Cynwyd, Pennsylvania.

**Answer:** **The allegations in Paragraph 47 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 of the Complaint and therefore deny them.**

48.     Zurich American Insurance Company is a corporation organized under the laws of the State of New York and has its principal place of business in Schaumburg, Illinois.

**Answer:     The allegations in Paragraph 48 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 of the Complaint and therefore deny them.**

49.     ABC Insurance Companies 1–20 are the fictitious names of insurance companies presently unknown to Plaintiff, despite having conducted a reasonable search with due diligence, that, upon information and belief, issued or subscribed to Policies issued to the National Foam Business and/or its corporate parents between the 1960s and 2013.

**Answer:     The allegations in Paragraph 49 of the Complaint are not directed towards the Answering Defendants, and thus, no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49 of the Complaint and therefore deny them.**

## JURISDICTION AND VENUE

50.     This adversary proceeding was commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure and includes an action for declaratory judgment pursuant to 28 U.S.C. § 2201.

**Answer:     The allegations in Paragraph 50 of the Complaint contain legal contentions and conclusions which do not require a response.**

51. This court has subject matter jurisdiction over this adversary proceeding pursuant to 28. U.S.C. §§ 157(c) and 1334(b) and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated February 29, 2012.

**Answer:** **The allegations in Paragraph 51 of the Complaint contain legal contentions and conclusions to which no response is required. To the extent a response is required, the Answering Defendants state that this proceeding is not a core proceeding and that the relief sought by Plaintiff in the complaint is "non-core." The Answering Defendants deny that the relief sought by Plaintiff in the complaint is "core," deny that this Court has the authority to enter final orders or judgments in this adversary proceeding,[2] and respectfully do not consent to the entry of final orders or judgment by the bankruptcy judge.**

52. The potential liabilities KFI is facing in connection with the AFFF Claims for which it seeks coverage in this case were a significant factor in the decision to commence KFI's bankruptcy proceeding. The Policies at issue are shared assets of KFI and other non-party policyholders, and resolution of the claims made under the Policies will have a significant impact on the value of KFI's bankruptcy estate.

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 52 of the Complaint and therefore deny them. The second sentence of Paragraph 52 contains legal contentions and conclusions and/or predictions of future events to which no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 52 of the Complaint and therefore deny them.**

---

[2] Contemporaneous with this pleading, the Answering Defendants are moving to withdraw the reference to the Bankruptcy Court pursuant to 28 U.S.C. 157(d) and Bankruptcy Rule 5011(a).

53.     Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Plaintiff consents to the entry of a final order by the Court in connection with this adversary proceeding to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**Answer:       Paragraph 53 of the Complaint does not contain allegations of fact to which a response is required. To the extent a response is required, the Answering Defendants deny consenting to the authority of the Bankruptcy Court to enter final orders or judgments in this adversary proceeding and state, pursuant to Federal Rule of Bankruptcy Procedure 7012(b), that the claims raised in the Complaint are non-core, and they do not consent to any entry of final orders or judgments by the Bankruptcy Court.**

54.     This Court has personal jurisdiction over each of the Defendants under Federal Rule of Bankruptcy Procedure 7004(f).

**Answer:       Paragraph 54 of the Complaint contains legal contentions and conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations contained in Paragraph 54 of the Complaint as they relate to the Answering Defendants and further deny that this matter is a core proceeding under the bankruptcy law and do not consent to the entry of final orders or judgments by the Bankruptcy Court. The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 of the Complaint as they relate to other any other defendant and therefore deny them.**

55.     Venue for this matter is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

**Answer:** Paragraph 55 of the Complaint contains legal contentions and conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny that this matter is a core proceeding under bankruptcy law and do not consent to the entry of final orders or judgments by the Bankruptcy Court.

## BACKGROUND FACTS

### A. The History of the National Foam Business

56. National Foam System, Inc., a manufacturer and distributor of fire extinguishing products, was incorporated in Delaware in or about 1927 and registered in Pennsylvania in or about 1928. It existed as an independent company until 1969. National Foam System, Inc. had its principal place of business in West Chester, Pennsylvania.

**Answer:** The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 of the Complaint and therefore deny them.

57. As described in more detail in Paragraphs 60 through 95 below, from 1969 to 2013, the business that was originally known as National Foam System, Inc., was acquired by various companies and underwent multiple name changes. Upon information and belief, the business was operated under various names from 1969 to 2013, including "National Foam System, Inc.," the "National Foam System, Inc. Division of PSC," the "National Foam System, Inc. Division of Enterra," "National Foam, Inc.," "Chubb National Foam, Inc.," "Kidde Fire Fighting, Inc.," "Kidde-Fenwal, Inc.," and the "National Foam Business" (collectively, the "National Foam Business"). Throughout the period from 1927 through 2013, the National Foam Business manufactured, sold, or distributed firefighting products.

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 of the Complaint and therefore deny them.**

58.     The AFFF Claims against KFI are premised on allegations related to the design, manufacture, sale, and distribution of AFFF by the National Foam Business.  AFFF is a highly effective fire suppressant developed and used for the suppression of Class B fires involving flammable liquids such as petroleum, jet fuel, and other liquid hydrocarbons.

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58 of the Complaint and therefore deny them.**

59.     Upon information and belief, the National Foam Business's headquarters, physical plants, and facilities, including for its manufacture of AFFF, were at all relevant times located in or around Chester County, Pennsylvania.

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59 of the Complaint and therefore deny them.**

      **1.     1927–1987: National Foam System, Inc., Philadelphia Suburban Corp., and Enterra Corp.**

60.     During the period in which it was an independent company, National Foam System, Inc. purchased various liability insurance policies from its headquarters in Pennsylvania, including policies issued by Insurers that cover liabilities arising out of the design, manufacture, sale, and distribution of AFFF (the "NFS Policies").

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60 of the Complaint and therefore deny them.**

61. Philadelphia Suburban Corporation ("PSC"), now known as Essential Utilities, Inc., was formed under the laws of the Commonwealth of Pennsylvania in or around 1968 and is headquartered in Bryn Mawr, Pennsylvania.

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 of the Complaint and therefore deny them.**

62. Upon information and belief, in or about 1969, PSC acquired National Foam System, Inc., including insurance rights under the NFS Policies, through a purchase of the entirety of National Foam System, Inc.'s outstanding stock.

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 of the Complaint and therefore deny them.**

63. Upon information and belief, from the date of its acquisition by PSC until November 5, 1974, National Foam System, Inc. was, and did business as, a wholly-owned subsidiary of PSC. On or about November 5, 1974, National Foam System, Inc. merged into PSC pursuant to Section 907 of Pennsylvania's Business Corporation Law. Pursuant to the merger, PSC directly assumed all of the rights and obligations of National Foam System, Inc., and acquired insurance rights then belonging to the National Foam Business, including insurance rights under the NFS Policies.

**Answer:** The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63 of the Complaint and therefore deny them.

64. Upon information and belief, for some period of time following this merger, the National Foam Business did business as an unincorporated division of PSC and was referred to as the "National Foam System, Inc. Division." That Division was part of PSC's Fire Protection and Specialty Services group. During the period from 1969 to May 28, 1981, PSC purchased various liability insurance policies, including policies issued by Insurers that cover liabilities arising out of the design, manufacture, sale, and distribution of AFFF by National Foam System, Inc. and/or by the National Foam System, Inc. Division (the "PSC Policies").

**Answer:** The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64 of the Complaint and therefore deny them.

65. On or about May 28, 1981, PSC split into two separate, publicly traded companies—PSC and Enterra Corporation ("Enterra"). Enterra was a corporation organized under the laws of the Commonwealth of Pennsylvania and its headquarters were located in Philadelphia, Pennsylvania.

**Answer:** The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65 of the Complaint and therefore deny them.

66. Pursuant to the May 28, 1981 corporate reorganization, all of the assets and liabilities of PSC's Fire Protection and Specialty Services group, of which the National Foam System, Inc. Division was a part, were transferred to Enterra. Enterra thereby acquired insurance

rights then belonging to the National Foam Business and its parent company, including insurance rights under the PSC Policies and the NFS Policies.

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66 of the Complaint and therefore deny them.**

67. From May 28, 1981, to April 30, 1987, the National Foam Business did business as an unincorporated division of Enterra and continued to be referred to as the "National Foam System, Inc. Division." During the period from May 28, 1981, to April 30, 1987, Enterra purchased various liability insurance policies, including policies issued by Insurers that cover liabilities arising out of the design, manufacture, sale, and distribution of AFFF by the National Foam System, Inc. Division (the "Enterra Policies").

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67 of the Complaint and therefore deny them.**

### 2. 1987–1997: Racal-Chubb, Inc., Racal Electronics plc, and Chubb Security plc

68. On or about March 3, 1987, a corporation called National Foam System, Inc. was formed under the laws of the Commonwealth of Pennsylvania ("National Foam PA").

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68 of the Complaint and therefore deny them.**

69. In or about April 1987, Racal Electronics plc, through its subsidiary Racal-Chubb Fire Security, Inc. ("Racal-Chubb"), purchased the outstanding stock of Enterra and transferred all

the assets and property of, and the business conducted by, the National Foam System, Inc. Division of Enterra to National Foam PA.

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69 of the Complaint and therefore deny them.**

70. Upon information and belief, pursuant to the stock purchase and asset transfer described in Paragraph 69, Racal-Chubb owned the National Foam Business and acquired insurance rights then belonging to the National Foam Business and its parent company, including insurance rights under the Enterra Policies, the PSC Policies, and the NFS Policies.

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70 of the Complaint and therefore deny them.**

71. On or about May 2, 1988, National Foam PA was renamed Chubb National Foam, Inc.

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71 of the Complaint and therefore deny them.**

72. Upon information and belief, on or about October 5, 1992, Racal Electronics plc de- merged its security business, including Racal-Chubb, which owned Chubb National Foam, Inc., from a division within Racal Electronics plc into an independent, publicly-listed entity called Chubb Security plc.

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72 of the Complaint and therefore deny them.**

73. On or about August 30, 1993, Chubb National Foam, Inc. was renamed National Foam, Inc.

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73 of the Complaint and therefore deny them.**

74. Upon information and belief, from April 30, 1987, until February 1997, the National Foam Business was, and did business as, a wholly owned subsidiary of Racal-Chubb, which was in turn owned at times by Racal Electronics plc or Chubb Security plc. During the period from April 30, 1987, to February 1997, Racal-Chubb purchased various liability insurance policies, including policies issued by Insurers, that cover liabilities arising out of the design, manufacture, sale, and distribution of AFFF by National Foam PA, Chubb National Foam, Inc., and/or National Foam, Inc. (the "Racal-Chubb Policies").

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74 of the Complaint and therefore deny them.**

3.   **1997–2005: Williams Holdings plc and Kidde plc**

75. Upon information and belief, in or about 1917, the Walter Kidde Company was formed under the laws of the State of New York. In 1980, it changed its name to Kidde, Inc.

**Answer:** The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75 of the Complaint and therefore deny them.

76. On or about March 3, 1987, Kidde Fire Fighting, Inc. was formed under the laws of the Commonwealth of Pennsylvania. Kidde Fire Fighting, Inc. was a wholly owned subsidiary of Kidde, Inc.

**Answer:** The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76 of the Complaint and therefore deny them.

77. On or about September 20, 1987, KFI was formed under the laws of the State of Delaware. KFI was a wholly owned subsidiary of Kidde, Inc.

**Answer:** The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77 of the Complaint and therefore deny them.

78. Upon information and belief, in or about November 1988, Williams Holdings plc acquired Kidde, Inc., including its subsidiaries Kidde Fire Fighting, Inc. and KFI.

**Answer:** The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78 of the Complaint and therefore deny them.

79. Upon information and belief, in or about February 1997, Williams Holdings plc acquired Chubb Security plc, which owned National Foam, Inc.

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79 of the Complaint and therefore deny them.**

80. Upon information and belief, pursuant to its acquisition of National Foam, Inc., Williams Holdings plc acquired insurance rights then belonging to the National Foam Business and its parent company, including insurance rights under the Racal-Chubb Policies, the Enterra Policies, the PSC Policies, and the NFS Policies.

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80 of the Complaint and therefore deny them.**

81. From February 1997 until November 10, 2000, the National Foam Business continued to be known as National Foam, Inc. and was a wholly owned subsidiary of Williams Holdings plc. During the period from February 1997 until November 10, 2000, Williams Holdings plc purchased various liability insurance policies, including policies issued by Insurers, that cover liabilities arising out of the design, manufacture, sale, and distribution of AFFF by National Foam, Inc. (the "Williams Holdings Policies").

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81 of the Complaint and therefore deny them.**

82. On or about November 10, 2000, Williams Holdings plc de-merged Kidde, Inc. into a separate, publicly listed entity named Kidde plc. As part of this reorganization, National Foam, Inc. became a wholly owned subsidiary of Kidde plc.

**Answer:** The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82 of the Complaint and therefore deny them.

83. Upon information and belief, Kidde plc acquired insurance rights then belonging to the National Foam Business and its parent company, including insurance rights under the Williams Holdings Policies, the Racal-Chubb Policies, the Enterra Policies, the PSC Policies, and the NFS Policies.

**Answer:** The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83 of the Complaint and therefore deny them.

84. On or about January 1, 2002, National Foam, Inc. was re-named Kidde Fire Fighting, Inc.

**Answer:** The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 84 of the Complaint and therefore deny them.

85. From November 10, 2000, until April 1, 2005, the National Foam Business was, and did business as, an indirect, wholly owned subsidiary of Kidde plc. During the period from November 10, 2000, until April 1, 2005, Kidde plc purchased various liability insurance policies, including policies issued by Insurers, that cover liabilities arising out of the design, manufacture, sale, and distribution of AFFF by National Foam, Inc. and/or Kidde Fire Fighting, Inc. (the "Kidde Policies").

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 85 of the Complaint and therefore deny them.**

### 4. 2005–2013: United Technologies Corp.

86. On or about April 1, 2005, United Technologies Corp. ("UTC") acquired Kidde plc and all of its subsidiaries, including Kidde Fire Fighting, Inc. and KFI, by purchasing all of Kidde plc's outstanding stock.

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86 of the Complaint and therefore deny them.**

87. Upon information and belief, pursuant to the stock purchase, UTC acquired insurance rights then belonging to the National Foam Business and its parent company, including insurance rights under the Kidde Policies, the Williams Holdings Policies, the Racal-Chubb Policies, the Enterra Policies, the PSC Policies, and the NFS Policies.

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87 of the Complaint and therefore deny them.**

88. From April 1, 2005, until March 8, 2007, the National Foam Business continued to be known as Kidde Fire Fighting, Inc. and was an indirect, wholly owned subsidiary of UTC.

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88 of the Complaint and therefore deny them.**

89.     On or about March 8, 2007, Kidde Fire Fighting, Inc. was merged into KFI pursuant to Section 252 of the General Corporation Law of Delaware. As a result of this merger, the National Foam Business became part of KFI.

**Answer:       The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89 of the Complaint and therefore deny them.**

90.     From March 8, 2007, until June 28, 2013, the National Foam Business did business as an unincorporated entity within KFI. KFI was an indirect, wholly owned subsidiary of UTC Fire & Security Americas Corporation (n/k/a Carrier Fire), which in turn was an indirect, wholly owned subsidiary of UTC.

**Answer:       The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90 of the Complaint and therefore deny them.**

91.     During the period from April 1, 2005, until June 28, 2013, UTC purchased various liability insurance policies, including policies issued by Insurers, that cover liabilities arising out of the design, manufacture, sale, and distribution of AFFF by Kidde Fire Fighting, Inc. and/or KFI (the "UTC Policies").

**Answer:       The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91 of the Complaint and therefore deny them.**

**5.       2013 Sale of the National Foam Business**

92.     By a Share and Business Sale Agreement dated June 28, 2013 (the "Sale Agreement"), the assets comprising the "National Foam Business," defined as "the unincorporated

business trading as National Foam . . . as currently carried on by Kidde-Fenwal," were severed from KFI and sold to Eurostar Holdco Ltd., a corporation controlled by Lloyds Development Capital.

**Answer:**      **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92 of the Complaint and therefore deny them.**

93.      National Foam, Inc., a Delaware corporation formed in 2013, ("New National Foam") is the entity that has owned the National Foam Business since June 28, 2013.

**Answer:**      **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93 of the Complaint and therefore deny them.**

94.      The ownership of KFI was unaffected by the sale of the National Foam Business, and KFI continued to be an indirect, wholly owned subsidiary of UTC Fire & Security Americas Corporation (n/k/a Carrier Fire) and UTC.

**Answer:**      **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94 of the Complaint and therefore deny them.**

95.      Pursuant to the terms of the Sale Agreement, UTC and KFI retained the insurance rights under the UTC Policies, the Kidde Policies, the Williams Holdings Policies, the Racal-Chubb Policies, the Enterra Policies, the PSC Policies, and the NFS Policies.

**Answer:**      **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 95 of the Complaint and therefore deny them.**

### 6. Carrier Global

96.     Carrier Corporation was formed in 1915 in New York. From 1979 through April 2020, Carrier Corporation was a wholly owned subsidiary of UTC.

**Answer:       The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 96 of the Complaint and therefore deny them.**

97.     On or about April 2, 2020, UTC transferred Carrier Corporation, UTC Fire & Security Americas Corporation (n/k/a Carrier Fire), Kidde plc Inc., KFI, and other entities to the newly-formed Carrier Global Corporation. UTC then spun off Carrier Global Corporation, including UTC Fire & Security Americas Corporation (n/k/a Carrier Fire), Kidde plc Inc., and KFI, as a separate public company. As of the date of this spin off, UTC Fire & Security Americas Corporation (n/k/a Carrier Fire), Kidde plc Inc., and KFI became indirect, wholly owned subsidiaries of Carrier Global.

**Answer:       The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 97 of the Complaint and therefore deny them.**

98.     UTC Fire & Security Americas Corporation was renamed Carrier Fire on or about October 1, 2020.

**Answer:       The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98 of the Complaint and therefore deny them.**

99.     Other than certain *de minimis* employee shares, Carrier Global remains the sole owner of Carrier Fire, Kidde plc Inc., and KFI.

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 99 of the Complaint and therefore deny them.**

100. Pursuant to the spin-off, Carrier Global and its subsidiaries, including KFI, acquired insurance rights then belonging to the National Foam Business and its parent company prior to its 2013 sale, including insurance rights under the UTC Policies, the Kidde Policies, the Williams Holdings Policies, the Racal-Chubb Policies, the Enterra Policies, the PSC Policies, and the NFS Policies.

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100 of the Complaint and therefore deny them.**

**B. The Underlying AFFF Claims**

101. KFI has been named as a defendant in more than 4,700 product liability lawsuits arising out of the alleged historic manufacture, sale, and distribution of AFFF, including products containing AFFF. Additional AFFF actions have continued to be filed.

**Answer:** **Paragraph 101 of the Complaint purports to summarize the nature of the underlying AFFF Claims filed against KFI, and thus are not allegations to which a response is required. To the extent that a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 101 of the Complaint and therefore deny them.**

102. KFI contends that it has no liability in connection with the AFFF Claims.

**Answer:** **Paragraph 102 of the Complaint contains statements of position which are not allegations to which a response is required. To the extent that a response is required,**

the Answering Defendants acknowledges that KFI contends in its Complaint "that it has no liability in connection with the AFFF Claims" but the Answering Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 102 of the Complaint and therefore deny them.

103.    The AFFF Claims allege that AFFF manufactured by the National Foam Business historically contained or degraded into one or more types of per- and polyfluoroalkyl substances ("PFAS"), including perfluorinated octanoic acid ("PFOA").  The claimants allege that certain types of PFAS, including PFOA, are known carcinogens, are bioaccumulative, and cause certain cancers and other bodily injury or property damage.  The AFFF claimants allege exposure to AFFF starting in the 1960s.

**Answer:        Paragraph 103 of the Complaint contains a purported summary of the nature of the underlying AFFF Claims filed against KFI and thus no response is required. To the extent that a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 103 of the Complaint and therefore deny them.**

104.    Most of the AFFF Claims have been consolidated in the federal multi-district litigation *In re: Aqueous Film-Forming Foams Product Liability Litigation*, MDL No. 2:18-mn-2873, in the United States District Court for the District of South Carolina.  More than 5,000 cases have been consolidated in the MDL.  KFI is named in a substantial majority of the MDL cases.

**Answer:        The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 104 of the Complaint and therefore deny them.**

105.     The MDL cases are brought by individuals, including firefighters and individuals who live near military bases, airports, fire training academies, and other locations where AFFF-containing products allegedly were used; the MDL cases are also brought by water providers, state attorneys general, and other entities across the country.

**Answer:     Paragraph 105 of the Complaint contains a purported summary of the nature of the underlying MDL AFFF Claims and thus no response is required. To the extent that a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 105 of the Complaint and therefore deny them.**

106.     More than 90% of the AFFF Claims against KFI consolidated in the MDL have been brought by individual plaintiffs who have allegedly suffered personal injury or bodily injury that they attribute to exposure to AFFF, including AFFF incorporated into products.  More than 3,200 of the MDL cases were brought by individual firefighters, and additional firefighter actions have continued to be filed.

**Answer:     Paragraph 106 of the Complaint contains a purported summary of the nature of the underlying AFFF Claims filed against KFI and thus no response is required. To the extent that a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 106 of the Complaint and therefore deny them.**

107.     The individual AFFF Claims contain substantially similar claims and allegations. Common allegations of exposure to AFFF include exposure by ingestion, by inhalation, by dermal contact, or through the use of AFFF-containing products.  Representative allegations include:

(a) "Plaintiff conducted routine [firefighter] trainings using Defendants' AFFF and fluorochemical products" which "proximately caused" Plaintiff's illness. Complaint, *Knesley v. 3M Company, et al.*, ¶¶ 98, 102, 2:20-cv-2759-RMG (D.S.C. July 27, 2020).

(b) "Defendant's PFAS-containing AFFF products were used by the Plaintiff in their intended manner, without significant change in the products' condition. Plaintiff's consumption, inhalation and/or dermal absorption of PFAS from Defendant's AFFF products caused Plaintiff to develop the serious medical conditions and complications alleged herein." Complaint, *Schremp v. 3M Company, et al.*, ¶ 6, 2:21-cv-03599-RMG (D.S.C. Nov. 1, 2021).

(c) "During Plaintiff's use of Defendants' AFFF products Plaintiff ingested such products, and the PFOA and/or PFOS and/or their precursor chemicals entered Plaintiff's body." Complaint, *Wright, et al. v. 3M Company, et al.*, ¶ 100, 2:21-cv-03627-RMG (D.S.C. Nov. 3, 2021).

(d) "Throughout the time of his service as a firefighter in the United States Navy, Plaintiff regularly used and was exposed to Defendants' AFFF products" and "Plaintiff ingested such products, and the PFOA and/or PFOS and/or their precursor chemicals entered Plaintiff's body." Complaint, *Chisholm, et al. v. 3M Company, et al.*, ¶¶ 99-100, 2:21-cv- 03729-RMG (D.S.C. Nov. 12, 2021).

**Answer:** **Paragraph 107 of the Complaint contains Plaintiff's characterization of the underlying AFFF Claims and legal contentions and conclusions, to which no response is required. To the extent that a response is required, the Answering Defendants lack**

**knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 107 of the Complaint and therefore deny them.**

108.  The individual AFFF Claims allege that exposure to and/or the use of the National Foam Business's products containing AFFF caused bodily injury, personal injury, and/or property damage and seek damages based on causes of action sounding in product liability, strict liability, negligence, and negligent failure to warn, among others.

**Answer:**  **Paragraph 108 of the Complaint contains a purported summary of the nature of the underlying AFFF Claims and sets forth legal contentions and conclusions, and thus no response is required. To the extent that a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 108 of the Complaint and therefore deny them.**

109.  The AFFF Claims brought by water providers, state attorneys general, and other entities allege that the use of the National Foam Business's products containing AFFF caused bodily injury, personal injury, and/or property damage.  These claimants seek damages based on causes of action sounding in product liability, strict liability, defective design, breach of the implied warranty of merchantability, failure to warn, and negligence, among others.

**Answer:**  **Paragraph 109 of the Complaint contains a purported summary of the nature of the underlying AFFF Claims and sets forth legal contentions and conclusions, and thus no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 109 of the Complaint and therefore deny them.**

110.  Plaintiff reasonably anticipates that additional lawsuits similar to the AFFF Claims will continue to be filed in the future.

**Answer:** **Paragraph 110 of the Complaint contains a prediction of future developments, legal contentions and conclusions, and/or statements of position to which no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 110 of the Complaint and therefore deny them.**

111. In an order entered on May 16, 2023, the MDL court stated that KFI's chapter 11 filing resulted in an automatic stay of claims against KFI. Text Order, *City of Stuart, Fla. v. 3M et al.*, No. 2:18-cv-03487-RMG (D.S.C. May 16, 2023) (ECF No. 326).

**Answer:** **Paragraph 111 of the Complaint is Plaintiff's characterization of a court order, and thus no response is required. To the extent that a response is required, the Answering Defendants state that the May 16, 2023 Order speaks for itself and deny any allegations herein regarding the contents of the Order that are inconsistent with the Order itself.**

112. To date, KFI has incurred more than $10 million in defense costs related to the AFFF Claims. In the AFFF Claims, the claimants seek damages in excess of amounts that, when allocated in accordance with law, are sufficient to reach each of the Policies.

**Answer:** **Paragraph 112 of the Complaint contains legal contentions and conclusions or statements of position to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations with respect to any policies that may have been issued by the Answering Defendants. The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 112 of the Complaint as they relate to any other defendant and therefore deny them.**

## C.    The Policies At Issue

113.    Upon information and belief, each of the Insurers or their respective predecessors-in- interest, in consideration of premiums paid by the National Foam Business and/or its corporate parents, issued or subscribed to primary, umbrella, and/or excess Policies in effect between the 1960s and 2013 covering the National Foam Business.

**Answer:      The Answering Defendants deny issuing Primary Policies covering the National Foam Business at any time between the 1960s through 2013. The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 113 of the Complaint and therefore deny them.**

114.    As set forth in Paragraphs 56 to 100 above, KFI is a legal successor to the National Foam Business's rights under the Policies.

**Answer:      The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 114 of the Complaint and therefore deny them.**

115.    As described in more detail below, upon information and belief, each of the Policies provides broad coverage for claims seeking damages due to alleged bodily injury, personal injury, and/or property damage arising out of the manufacture, sale, and distribution of AFFF by the National Foam Business.

**Answer:      The Answering Defendants deny the allegations in Paragraph 115 of the Complaint as they relate to the Answering Defendants and lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 115 of the Complaint as they relate to any other defendant and therefore deny them.**

116. Beginning in May 2020, KFI began requesting copies of the Policies from certain of the Insurers.

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 116 of the Complaint and therefore deny them.**

117. Upon information and belief, some or all of the Insurers issued additional Policies that are in the possession of Defendants and are currently unknown to KFI. For example:

(a) Defendant Travelers has acknowledged that it has copies of relevant Policies in its possession but has refused to provide copies of those Policies to KFI.

(b) KFI possesses secondary evidence that Defendant Hartford issued primary liability insurance incepting in 1976. Specifically, the Excess Policy issued by Northbrook Insurance Company for the period August 1, 1976, to August 1, 1977, Policy No. 63 002 090, identifies "Hartford" as the insurer that issued the first underlying policy.

**Answer:** **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 117 of the Complaint and therefore deny them.**

118. Upon information and belief, each of the Policies requires the issuing or subscribing Insurers to pay or to indemnify KFI for all sums that it becomes legally obligated to pay as a result of claims and suits by third parties alleging bodily injury, personal injury, or property damage arising out of the National Foam Business's operations, so long as any part of the bodily injury, personal injury, or property damage happened during the period in which the Policy was in effect.

**Answer:** **Paragraph 118 of the Complaint contains legal contentions and conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations in Paragraph 118 of the Complaint as they relate to the Answering Defendants and lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 118 of the Complaint as they relate to any other defendant and therefore deny them.**

119. This duty to pay or to indemnify KFI for "all sums" includes a promise by each Insurer to pay or to indemnify Plaintiff for all damages incurred by Plaintiff pursuant to a settlement or judgment of an AFFF Claim, as long as any part of the alleged injury or damage occurred during the policy period. The duty to pay mentioned in the preceding sentence applies (a) immediately as to Primary Policies without any retention or deductible, and (b) as soon as losses and/or defense costs are sufficient to reach the attachment point of any Policies that are subject to a retention, deductible or underlying limit (if any) expressly set forth in the Policies.

**Answer:** **Paragraph 119 of the Complaint contains legal contentions and conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations of Paragraph 119 of the Complaint as they relate to the Answering Defendants and lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 119 of the Complaint as they relate to any other defendant and therefore deny them.**

120. The Primary Policies also require the Primary Insurers to defend KFI, to pay, or to reimburse KFI for all costs, including attorneys' fees, experts' fees, and supplemental expenses, incurred by Plaintiff in the investigation and defense of underlying actions alleging bodily injury, personal injury, or property damage that potentially took place, in whole or in part, during the

relevant policy periods. The Primary Insurers' obligation to defend potentially covered actions against KFI (the "duty to defend") applies even if the underlying allegations are groundless, false, or fraudulent. The Primary Insurers' duty to defend KFI continues until the applicable limits of liability set forth in the Primary Policies are exhausted.

**Answer:** **Paragraph 120 of the Complaint asserts legal contentions and conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny issuing any "Primary Policies" as that term is used in the Complaint, deny being a "Primary Insurer" as that term is used in the Complaint, and deny all other allegations of Paragraph 120 as directed to the Answering Defendants. The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 120 of the Complaint as they relate to any other defendant and therefore deny them.**

121. Upon information and belief, the promise by each Insurer that issued or subscribed to an Excess Policy to pay or indemnify for "all sums" includes a promise to defend, to pay, or to reimburse KFI for all costs, including attorneys' fees and supplemental expenses, incurred by KFI in the investigation and defense of claims and suits for which the insurer has a potential duty to indemnify as set forth in Paragraph 118 ("Defense Obligation"). These Insurers' Defense Obligation is subject only to exhaustion of applicable underlying, upper, or quota-share limits of liability (if any) expressly set forth in the Policies.

**Answer:** **Paragraph 121 of the Complaint asserts legal contentions and conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations in Paragraph 121 of the Complaint as they relate to the Answering Defendants and lack knowledge or information sufficient to form a belief**

**as to the truth of the allegations in Paragraph 121 of the Complaint as they relate to any other defendant and therefore deny them.**

122.     Upon information and belief, all premiums due under the Policies have been paid and all other pertinent conditions and requirements for obtaining the declaration of coverage under the Policies sought herein have been or will be satisfied and/or have been waived, excused, or are subject to an estoppel against the Insurers, such that Plaintiff is entitled to seek the relief herein sought.

**Answer:     Paragraph 122 of the Complaint asserts legal contentions and conclusions to which no response is required. To the extent a response is required, the Answering Defendants lack knowledge or information sufficient to form a belief as to the allegation in Paragraph 122 regarding asserted payment of premiums, deny all remaining allegations in Paragraph 122 as they relate to the Answering Defendants and lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 122 of the Complaint as they relate to any other defendant and therefore deny them.**

123.     Upon information and belief, none of the Policies contain terms that apply to preclude coverage for the AFFF Claims.

**Answer:     Paragraph 123 of the Complaint asserts legal contentions and conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations in Paragraph 123 of the Complaint as they relate to the Answering Defendants. The Answering Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 123 of the Complaint as they relate to any other defendant and therefore deny them.**

124.     Each of the AFFF Claims alleges a covered, or potentially covered, occurrence, and seeks damages for bodily injury, property damage, or personal injury, as those terms are defined in the Policies.  Accordingly, the Primary Insurers have a current duty to defend and/or to pay or reimburse defense costs in full.

**Answer:**     **Paragraph 124 of the Complaint asserts legal contentions and conclusions to which no response is required. To the extent a response is required,  the Answering Defendants deny that they are a "Primary Insurer" as that term is used in the Complaint, deny all remaining allegations in Paragraph 124 of the Complaint as they relate to the Answering Defendants, and lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 124 of the Complaint as they relate to any other defendant and therefore deny them.**

125.     Despite multiple requests, no Primary Insurer has agreed to defend KFI against the AFFF Claims or to pay or reimburse KFI's defense costs incurred in connection with the AFFF Claims.

**Answer:**     **The Answering Defendants deny that they are a "Primary Insurer" as that term is used in the Complaint and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 125 of the Complaint and therefore deny them.**

126.     Despite multiple requests, no Insurer has acknowledged its coverage obligations to KFI for the AFFF Claims, nor has any Insurer agreed to provide coverage for those Claims upon exhaustion of any applicable underlying limits.

**Answer:  The Answering Defendants deny owing any coverage obligations to KFI for the AFFF Claims and therefore deny the allegations in Paragraph 126 of the Complaint as**

they relate to the Answering Defendants. **The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 126 of the Complaint as they relate to any other defendant and therefore deny them.**

127. KFI is entitled to defense coverage from any Insurer that issued a Policy containing a duty to defend or a Defense Obligation (as defined in Paragraphs 120 and 121).

**Answer:** **Paragraph 127 of the Complaint asserts legal contentions and conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations in Paragraph 127 of the Complaint as they relate to the Answering Defendants and lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 127 of the Complaint as they relate to any other defendant and therefore deny them.**

128. In addition to the Insurers' obligation to cover defense costs, to the extent that KFI is held liable for any AFFF Claims, any such liability would be covered under each Policy that was in effect during any portion of the period in which bodily injury, personal injury, or property damage allegedly happened.

**Answer:** **Paragraph 128 of the Complaint asserts legal contentions and conclusions to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations in Paragraph 128 of the Complaint as they relate to the Answering Defendants and lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 128 of the Complaint as they relate to any other defendant and therefore deny them.**

129. An actual controversy of a justiciable nature presently exists between KFI and the Insurers concerning the proper construction of the Policies and the extent of the Insurers' duty to

defend, pay and/or reimburse KFI for any damages, losses, liabilities, defense costs, or other monetary obligations that may be sustained by or imposed upon KFI as a result of the AFFF Claims and any similar AFFF-related claims that may be filed in the future.

**Answer:** **Paragraph 128 of the Complaint asserts legal contentions and conclusions to which no response is required. To the extent a response is required the Answering Defendants deny the allegations in Paragraph 129 of the Complaint as they relate to the Answering Defendants and lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 129 of the Complaint as they relate to any other defendant and therefore deny them.**

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief – Primary Insurers' Duty to Defend)

130. KFI repeats and reincorporates by reference the allegations set forth in Paragraphs 1 through 129 as if fully set forth herein.

**Answer:** **The Answering Defendants repeat and reincorporate by reference their responses to Paragraphs 1 through 129 of the Complaint as if fully set forth herein.**

131. This is a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201 et seq. KFI seeks declaratory relief in the form of a judicial determination of the rights and of the duties of the Primary Insurers to defend KFI against the AFFF Claims and any similar AFFF-related claims that may be filed in the future under the Primary Policies.

**Answer:** **The allegations in Paragraph 131 of the Complaint are part of a claim asserted only against other defendants, and not against the Answering Defendants, and therefore do not require a response. To the extent a response is required, the Answering Defendants deny being a "Primary Insurer" as that term is used in the Complaint, deny**

**issuing any "Primary Policies" as that term is used in the Complaint, and deny all other allegations in Paragraph 131 of the Complaint as they relate to the Answering Defendants, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 131 of the Complaint as they relate to any other defendant and therefore deny them.**

132.     Pursuant to the terms of the Primary Policies, the Primary Insurers have a duty to defend KFI against the AFFF Claims and any similar AFFF-related claims that may be filed in the future.  The Primary Insurers' contractual duty to defend KFI as set forth herein is subject only to the conditions set forth in Paragraph 120, which are incorporated herein by reference.

**Answer:        The allegations in Paragraph 132 of the Complaint are part of a claim asserted only against other defendants, and not against the Answering Defendants, and therefore do not require a response. To the extent a response is required, the Answering Defendants deny being a "Primary Insurer" as that term is used in the Complaint, deny issuing any "Primary Policies" as that term is used in the Complaint, and thus deny the allegations in Paragraph 132 of the Complaint as they relate to the Answering Defendants, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 132 of the Complaint as they relate to any other defendant and therefore deny them.**

133.     No Primary Insurer has accepted its obligation to defend KFI against the AFFF Claims as required under the terms of each Primary Policy issued by each Primary Insurer.

**Answer:        The allegations in Paragraph 133 of the Complaint are part of a claim asserted only against other defendants, and not against the Answering Defendants, and therefore do not require a response. To the extent a response is required, the Answering**

Defendants deny being a "Primary Insurer" as that term is used in the Complaint, deny issuing any "Primary Policies" as that term is used in the Complaint, and thus deny the allegations in Paragraph 133 of the Complaint as they relate to the Answering Defendants, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 133 of the Complaint as they relate to any other defendant and therefore deny them.**

134. Through their failure to provide a complete defense to KFI despite multiple requests that they provide such a defense, each Primary Insurer has effectively denied coverage for the AFFF Claims.

**Answer:** **The allegations in Paragraph 134 of the Complaint are part of a claim asserted only against other defendants, and not against the Answering Defendants, and therefore do not require a response. To the extent a response is required, the Answering Defendants deny that they are a "Primary Insurer" as that term is used in the Complaint, and thus deny the allegations in Paragraph 134 of the Complaint as they relate to the Answering Defendants. The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 134 of the Complaint as they relate to any other defendant and therefore deny them.**

135. An actual controversy of a justiciable nature presently exists between KFI and the Primary Insurers concerning the proper construction of the Primary Policies and the extent of the Primary Insurers' duty to defend KFI against the AFFF Claims and any similar AFFF-related claims that may be filed in the future. The issuance of declaratory relief by this Court addressing the Primary Insurers' duty to defend KFI will terminate some or all of the existing controversy between the parties.

**Answer:** The allegations in Paragraph 135 of the Complaint are part of a claim asserted only against other defendants, and not against the Answering Defendants, and therefore do not require a response. To the extent a response is required, the Answering Defendants deny being a "Primary Insurer" as that term is used in the Complaint, deny issuing any "Primary Policies" as that term is used in the Complaint, and thus deny the allegations in Paragraph 135 of the Complaint as they relate to the Answering Defendants, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 135 of the Complaint as they relate to any other defendant and therefore deny them.

136. Plaintiff also seeks an award of attorneys' fees and costs for prosecuting this claim for declaratory relief.

**Answer:** The allegations in Paragraph 136 of the Complaint are part of a claim asserted only against other defendants, and not against the Answering Defendants, and therefore do not require a response. To the extent a response is required, the Answering Defendants deny that Plaintiff is entitled to any award of attorneys' fees or costs from the Answering Defendants, or any other relief Plaintiff may seek in this action from the Answering Defendants.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract – Primary Insurers' Duty to Defend)

137. KFI repeats and reincorporates by reference the allegations set forth in Paragraphs 1 through 129 as if fully set forth herein.

**Answer:** The Answering Defendants repeat and reincorporate by reference their responses to Paragraphs 1 through 129 of the Complaint as if fully set forth herein.

138.     This is a claim for damages for breach of contract.  KFI seeks reimbursement from the Primary Insurers of the defense costs they have incurred and will continue to incur to defend against the AFFF Claims, which the Primary Insurers have failed or refused to defend.

**Answer:        The allegations in Paragraph 138 of the Complaint are part of a claim asserted only against other defendants, and not against the Answering Defendants, and therefore do not require a response. To the extent a response is required, the Answering Defendants deny that they are a "Primary Insurer" as that term is used in the Complaint, and thus deny the allegations in Paragraph 138 of the Complaint as they relate to the Answering Defendants, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 138 of the Complaint as they relate to any other defendant and therefore deny them.**

139.     KFI has incurred and/or will continue to incur financial losses in the investigation and defense of the AFFF Claims.

**Answer:        The allegations in Paragraph 139 of the Complaint are part of a claim asserted only against other defendants, and not against the Answering Defendants, and therefore do not require a response. To the extent a response is required, the Answering Defendants deny being a "Primary Insurer" as that term is used in the Complaint, deny issuing any "Primary Policies" as that term is used in the Complaint, and thus deny the allegations in Paragraph 139 of the Complaint as they relate to the Answering Defendants, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 139 of the Complaint as they relate to any other defendant and therefore deny them.**

140.    The Primary Insurers have breached their contractual obligations under the Primary Policies to provide a complete defense to KFI against the AFFF Claims.

**Answer:    The allegations in Paragraph 140 of the Complaint are part of a claim asserted only against other defendants, and not against the Answering Defendants, and therefore do not require a response. To the extent a response is required, the Answering Defendants deny being a "Primary Insurer" as that term is used in the Complaint, deny issuing any "Primary Policies" as that term is used in the Complaint, and thus deny the allegations in Paragraph 140 of the Complaint as they relate to the Answering Defendants, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 140 of the Complaint as they relate to any other defendant and therefore deny them.**

141.    As a direct result of the Primary Insurers' breach of their duty to defend, KFI has been and will be deprived of the benefit of the insurance coverage for which Plaintiff's predecessors paid substantial premiums, and have been and will be forced to pay sums in the investigation and defense of the AFFF Claims, including attorneys' fees, experts' fees, and supplemental expenses, which the Primary Insurers have a contractual obligation to pay.

**Answer:    The allegations in Paragraph 141 of the Complaint are part of a claim asserted only against other defendants, and not against the Answering Defendants, and therefore do not require a response. To the extent a response is required, the Answering Defendants deny being a "Primary Insurer" as that term is used in the Complaint, deny issuing any "Primary Policies" as that term is used in the Complaint, and thus deny the allegations in Paragraph 141 of the Complaint as they relate to the Answering Defendants, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the**

**allegations in Paragraph 141 of the Complaint as they relate to any other defendant and therefore deny them.**

142.     As a direct result of the Primary Insurers' breach of their duty to defend, KFI has been forced to incur and will continue to incur consequential damages, including, without limitation, attorneys' fees and other expenses in bringing these claims and the interest and lost earnings on amounts wrongfully held by the Primary Insurers, which damages are not subject to the Primary Policies' limits of liability.

**Answer:     The allegations in Paragraph 142 of the Complaint are part of a claim asserted only against other defendants, and not against the Answering Defendants, and therefore do not require a response. To the extent a response is required, the Answering Defendants deny being a "Primary Insurer" as that term is used in the Complaint, deny issuing any "Primary Policies" as that term is used in the Complaint, and thus deny the allegations in Paragraph 142 of the Complaint as they relate to the Answering Defendants, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 142 of the Complaint as they relate to any other defendant and therefore deny them.**

143.     As a direct and proximate result of the aforesaid acts and omissions by the Primary Insurers, KFI has been damaged in an amount to be proven at trial, for all damages, costs, and payments, and other sums.

**Answer:     The allegations in Paragraph 143 of the Complaint are part of a claim asserted only against other defendants, and not against the Answering Defendants, and therefore do not require a response. To the extent a response is required, the Answering Defendants deny that they are a "Primary Insurer" as that term is used in the Complaint,**

and thus deny the allegations in Paragraph 143 of the Complaint as they relate to the Answering Defendants. The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 143 of the Complaint as they relate to any other defendant and therefore deny them.

<u>THIRD CLAIM FOR RELIEF</u>

<u>(Declaratory Relief – Insurers' Defense Obligation under Excess Policies)</u>

144.    KFI repeats and reincorporates by reference the allegations set forth in Paragraphs 1 through 129 as if fully set forth herein.

**Answer:      The Answering Defendants repeat and reincorporate by reference their responses to Paragraphs 1 through 129 of the Complaint as if fully set forth herein.**

145.    This is a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201 et seq.  KFI seeks declaratory relief in the form of a judicial determination of the rights and of the duties of the Insurers with respect to their Defense Obligation under the Excess Policies for the AFFF Claims and any similar AFFF-related claims that may be filed in the future.  The Insurers' contractual Defense Obligation is subject only to the conditions set forth in Paragraph 121, which is incorporated herein by reference.

**Answer:      The allegations contained in Paragraph 145 of the Complaint are Plaintiff's characterization of this action to which no response is required. To the extent that a response is required, the Answering Defendants deny the allegations in Paragraph 145 of the Complaint as they relate to the Answering Defendants and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 145 of the Complaint as they relate to any other defendant and therefore deny them.**

146.    The Insurers have denied or otherwise failed or refused to acknowledge their Defense Obligation pursuant to the Excess Policies with respect to the AFFF Claims and with respect to any similar AFFF-related claims that may be filed in the future.

**Answer:        The Answering Defendants deny that they have a "Defense Obligation" under any policies they may have issued with respect to the "AFFF Claims" and deny the remaining allegations in Paragraph 146 of the Complaint as they relate to the Answering Defendants. The Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 146 of the Complaint as they relate to any other defendant and therefore deny them.**

147.    An actual controversy of a justiciable nature presently exists between KFI and the Insurers concerning the proper construction of the Excess Policies and the extent of the Insurers' Defense Obligation.  The issuance of declaratory relief by this Court addressing the Insurers' Defense Obligation will terminate some or all of the existing controversy between the parties.

**Answer:        Paragraph 147 of the Complaint asserts legal contentions and conclusions as to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations in Paragraph 147 of the Complaint as they relate to the Answering Defendants and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 147 of the Complaint as they relate to any other defendant and therefore deny them.**

148.    KFI also seeks an award of attorneys' fees and costs for prosecuting this claim for declaratory relief.

**Answer:        Paragraph 148 of the Complaint contains Plaintiff's request for relief to which no response is required. To the extent that a response is required, the Answering**

Defendants deny that Plaintiff is entitled to any award of attorneys' fees or costs from the Answering Defendants, or any other relief Plaintiff may seek in this action from the Answering Defendants, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 148 of the Complaint as they relate to any other defendant and therefore deny them.

## FOURTH CLAIM FOR RELIEF

### (Declaratory Relief – Insurers' Duty to Indemnify)

149.    KFI repeats and reincorporates by reference the allegations set forth in Paragraphs 1 through 129 as if fully set forth herein.

**Answer:        The Answering Defendants repeat and reincorporate by reference their responses to Paragraphs 1 through 129 of the Complaint as if fully set forth herein**

150.    This is a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201 et seq.  KFI seeks declaratory relief in the form of a judicial determination of the rights and the obligations of the Insurers under the Policies to indemnify KFI for any damages, losses, liabilities, and monetary obligations that may be sustained by or imposed upon Plaintiff as a result of the AFFF Claims and any similar AFFF- related claims that may be filed in the future.

**Answer:        The allegations contained in Paragraph 150 of the Complaint are Plaintiff's characterization of this action to which no response is required. To the extent that a response is required, the Answering Defendants deny the allegations in Paragraph 150 of the Complaint as they relate to the Answering Defendants and lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 150 of the Complaint as they relate to any other defendant and therefore deny them.**

151.    Pursuant to the terms of the Insurance Policies, the Insurers are obligated to indemnify KFI for, or pay on their behalf, all sums that they become legally obligated to pay through judgment, settlement, or otherwise as a result of the AFFF Claims and any similar AFFF-related claims that may be filed in the future.  The Insurers' contractual duty to indemnify KFI as set forth herein is subject only to the conditions set forth in Paragraph 119, which is incorporated herein by reference.

**Answer:        Paragraph 151 of the Complaint asserts legal contentions and conclusions as to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations in Paragraph 151 of the Complaint as they relate to the Answering Defendant and lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 151 of the Complaint as they relate to any other defendant and therefore deny them.**

152.    The Insurers have denied or otherwise failed or refused to acknowledge their duty to indemnify KFI with respect to the AFFF Claims and with respect to any similar AFFF-related claims that may be filed in the future.

**Answer:        The Answering Defendants deny that they have a "duty to indemnify" KFI under any policies they may have issued with respect to the "AFFF Claims" and thus deny the allegations in Paragraph 152 of the Complaint as they relate to the Answering Defendants, and lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 152 of the Complaint as they relate to any other defendant and therefore deny them.**

153.    An actual controversy of a justiciable nature presently exists between KFI and the Insurers concerning the proper construction of the Policies and the extent of the Insurers' duty to

indemnify KFI for any damages, losses, liabilities, and monetary obligations that may be sustained by or imposed upon KFI as a result of the AFFF Claims. The issuance of declaratory relief by this Court addressing the Insurers' duty to indemnify KFI will terminate some or all of the existing controversy between the parties.

**Answer:** **Paragraph 153 of the Complaint asserts legal contentions and conclusions as to which no response is required. To the extent a response is required, the Answering Defendants deny the allegations in Paragraph 153 of the Complaint as they relate to the Answering Defendants and lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 153 of the Complaint as they relate to any other defendant and therefore deny them.**

154.    KFI also seeks an award of attorneys' fees and costs for prosecuting this claim for declaratory relief.

**Answer:** **Paragraph 154 of the Complaint contains Plaintiff's request for relief to which no response is required. To the extent that a response is required, the Answering Defendants deny that Plaintiff is entitled to any award of attorneys' fees or costs from the Answering Defendants or any other relief Plaintiff may seek in this action from the Answering Defendants and lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 154 as they relate to any other defendant and therefore deny them.**

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff prays for relief as follows:

155.    On the First Claim for Relief, KFI requests that the Court enter a judgment:

(a) declaring that the Primary Insurers are contractually obligated to provide a complete defense to KFI, including to pay its reasonable attorneys' fees, experts' fees, and other costs, in connection with the AFFF Claims and any similar AFFF-related claims that may be filed in the future;

(b) entering a judgment awarding KFI its reasonable attorneys' fees, interest, costs and the expenses of this action; and

(c) awarding such other and further relief as the Court deems just and proper.

**Answer:** **Paragraph 155 of the Complaint contains Plaintiff's request for relief to which no response is required. To the extent that a response is required, the Answering Defendants deny that Plaintiff is entitled to any such relief from the Answering Defendants, and otherwise deny the allegations in Paragraph 155.**

156. On the Second Claim for Relief, KFI requests that the Court enter a judgment:

(a) awarding KFI compensatory damages and consequential damages, in an amount to be proven at trial, plus interest thereon and costs according to law, for the Primary Insurers' breach of their contractual duty to defend KFI against the AFFF Claims;

(b) entering a judgment awarding KFI its reasonable attorneys' fees, interest, costs and the expenses of this action; and

(c) awarding such other and further relief as the Court deems just and proper.

**Answer:** **Paragraph 156 of the Complaint contains Plaintiff's request for relief to which no response is required. To the extent that a response is required, the Answering Defendants deny that Plaintiff is entitled to any such relief from the Answering Defendants, and otherwise deny the allegations in Paragraph 156.**

157.     On the Third Claim for Relief, KFI request that the Court enter a judgment:

(a) declaring that pursuant to the terms of the Excess Policies, the Insurers are obligated to defend, pay for, or reimburse KFI for costs incurred by KFI with respect to the defense of the AFFF Claims and any similar AFFF-related claims that may be filed in the future, subject only to exhaustion of any applicable underlying or upper limit of liability as set forth in each of the Excess Policies;

(b) entering a judgment awarding KFI its reasonable attorneys' fees, interest, costs and the expenses of this action; and

(c) awarding such other and further relief as the Court deems just and proper.

**Answer:      Paragraph 157 of the Complaint contains Plaintiff's request for relief to which no response is required. To the extent that a response is required, the Answering Defendants deny that Plaintiff is entitled to any such relief from the Answering Defendants, and otherwise deny the allegations in Paragraph 157.**

158.     On the Fourth Claim for Relief, KFI requests that the Court enter a judgment:

(a) declaring that pursuant to the terms of the Policies, Insurers are obligated to indemnify KFI for, or pay on its behalf, all sums for which it becomes legally obligated to pay as allocated by KFI in the event of judgment, settlement, or otherwise, as a result of the AFFF Claims or any similar AFFF-related claims that may be filed in the future;

(b) declaring that, in the event of a judgment, settlement, or other resolution of the AFFF Claims, KFI is entitled to recover all sums paid in connection with the AFFF Claims from any triggered Policy subject only to exhaustion of the upper and lower limits of liability as set forth in each of the Policies;

(c) entering a judgment awarding KFI its reasonable attorneys' fees, interest, costs and the expenses of this action; and

(d) awarding such other and further relief as the Court deems just and proper.

**Answer:** **Paragraph 158 of the Complaint contains Plaintiff's request for relief to which no response is required. To the extent that a response is required, the Answering Defendants deny that Plaintiff is entitled to any such relief from the Answering Defendants, and otherwise deny the allegations in Paragraph 158.**

## GENERAL DENIAL

To the extent that the Answering Defendants have not admitted, explained, or otherwise answered any allegation within the Complaint, the Answering Defendants deny any and all such allegations.

## ADDITIONAL DEFENSES

The Answering Defendants assert the following further and additional defenses to the claims asserted in the Complaint. The inclusion of a defense below is not an admission that the defense is an affirmative defense or a representation regarding the burden of proof or persuasion with respect to any such defense separate defense.

## FIRST ADDITIONAL DEFENSE

The Court lacks subject matter jurisdiction over this action and each and every cause of action set forth in KFI's Complaint.

## SECOND ADDITIONAL DEFENSE

The Complaint fails to state facts sufficient to constitute a cause of action against the Answering Defendants and fails to state a claim upon which relief may be granted as to the Answering Defendants.

## THIRD ADDITIONAL DEFENSE

KFI's claims are barred or may be barred, in whole or in part, to the extent KFI is not an insured and does not have rights to coverage under the Answering Defendants policies at issue.

## FOURTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent that the limits and/or existence of terms, conditions, exclusions, and/or endorsements contained or incorporated in of any policy alleged to have been issued by any of the Answering Defendants have not been established.

## FIFTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, by the terms, conditions, exclusions, endorsements, and/or limits of any policy alleged to have been issued by any of the Answering Defendants, and/or by public policy considerations.

## SIXTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent that any specific claim against the Answering Defendants is determined to have arisen out of risks or matters known to, expected by, or intended by an insured, or that arose from an event, act, occurrence, loss or claim that was in progress, known, not fortuitous, or not contingent at or before the time that any policy alleged to have been issued by the Answering Defendants was actually issued.

## SEVENTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent that KFI is seeking coverage for claims, costs, expenses, damages, or losses that do not arise from, are not incurred because of, and/or do not constitute "bodily injury,"

"property damage," "personal injury," "damages," "loss," and/or "ultimate net loss" within the meaning of any policy alleged to have been issued by the Answering Defendants.

## EIGHTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent that any applicable statutes of limitation, statutes of repose, contractual limitations, or any other time-related defense applies.

## NINTH ADDITIONAL DEFENSE

KFI's claims are barred or may be barred, in whole or in part, to the extent that KFI negligently or intentionally failed to disclose, concealed, or misrepresented facts that were material to the Answering Defendants in issuing any policy at issue.

## TENTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent that KFI is seeking coverage for bodily injury, personal injury or property damage that did not take place during the policy period of any policy alleged to have been issued by the Answering Defendants.

## ELEVENTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent that KFI is seeking coverage for any loss that took place prior to the inception of any policy alleged to have been issued by the Answering Defendants, or after the expiration of the period when any such policy was in effect.

## TWELFTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent that KFI is seeking coverage for an underlying matter(s) that does not

constitute an "occurrence" or "accident" within the meaning of any policy alleged to have been issued by the Answering Defendants.

## THIRTEENTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent that, with respect to any specific claim, KFI is seeking coverage for underlying matters that fall within any pollution, seepage, or contamination exclusion contained or incorporated in any policy alleged to have been issued by the Answering Defendants.

## FOURTEENTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are subject to any applicable deductibles, retentions, retrospective premiums, and/or limits of liability including, but not limited to any impairment or exhaustion of applicable policy limits with respect to any policy(ies) alleged to have been issued by the Answering Defendants.

## FIFTEENTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent that other insurance or contracts of indemnity are applicable to any underlying claim(s) and/or losses(es), and/or to the extent coverage under any policy alleged to have been issued by the Answering Defendants may be excess to other insurance with respect to specific losses or claims.

## SIXTEENTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent that underlying or other applicable policy limits have not been properly exhausted or paid as required by the terms of any policy alleged to have been issued by the Answering Defendants.

## SEVENTEENTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent that any policy alleged to have been issued by the Answering Defendants only provides excess liability coverage and does not have a duty to defend or to pay any defense costs.

## EIGHTEENTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent that the Answering Defendants' right to setoffs, subrogation, or contribution have been impaired.

## NINETEENTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, until the amount of KFI's obligation to pay with respect to particular underlying claims shall have been finally determined either by judgment against KFI, or by an applicable, authorized written agreement between KFI and the claimant.

## TWENTIETH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, as to the Answering Defendants to the extent KFI is seeking coverage for injury, loss or damage sustained by organizations, entities or individuals that do not qualify as a named insured or an insured under the terms of any policy alleged to have been issued by the Answering Defendants.

## TWENTY-FIRST ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, as to the Answering Defendants to the extent that those claims arise out of the activities of

corporations or other entities that took place prior to an insured's acquisition of such corporations or entities.

## TWENTY-SECOND ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent the Answering Defendants were not provided with adequate, particularized, timely, and proper notice of the underlying claims or any of them, or of the accidents, occurrences, and/or suits that form the basis for any such claim(s), or of any other developments that could affect the liability of the Answering Defendants.

## TWENTY-THIRD ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent KFI is seeking to recover amounts for loss which any insured failed to exercise reasonable care and diligence to mitigate, minimize, avoid.

## TWENTY-FOURTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent the person or entity asserting such claim(s) has no rights under any policy alleged to have been issued by the Answering Defendants, or to the extent any such rights were not properly assigned.

## TWENTY-FIFTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent that, with respect to any specific underlying claim against KFI, it is seeking coverage for injury or damages that resulted from fraud or any condition in violation of or noncompliance with any federal, state, local or governmental rule, law, regulation ordinance, statute or public policy

applicable thereto, and to the extent indemnification is sought for costs or liabilities resulting therefrom.

## TWENTY-SIXTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent KFI is seeking coverage for liability it assumed pursuant to any contracts or agreements, or for losses voluntarily paid, or where KFI otherwise assumed the obligation to pay or paid, when it had no legal obligation to do so.

## TWENTY-SEVENTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent KFI is seeking coverage for expenses, costs, or obligations incurred in connection with the underlying claims, or settlements entered into relating to the underlying claims, without the Answering Defendants' consent or approval.

## TWENTY-EIGHTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent any insured failed to perform all of the obligations under any policy alleged to have been issued by the Answering Defendants and all conditions precedent and conditions subsequent to coverage, including but not limited to conditions concerning timely notice, assistance, cooperation, settlements, and maintaining underlying insurance.

## TWENTY-NINTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent that any policy alleged to have been issued by the Answering Defendants does not cover costs incurred solely to comply with statutes and regulations governing the business operations of an insured under the policies.

## THIRTIETH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, by the doctrines of res judicata, collateral estoppel, judicial estoppel, claim preclusion, issue preclusion, laches, unclean hands, ratification, payment, accord and satisfaction, and/or waiver.

## THIRTY-FIRST ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent that, with respect to any specific underlying claim, KFI is seeking coverage for losses that are not eligible for coverage under any policy alleged to have been issued by the Answering Defendants or public policy, including but not limited to reimbursement for restitution or disgorgement; equitable or injunctive relief; costs or other amounts arising out of administrative or non-judicial proceedings; amounts that do not constitute "damages" or which the Answering Defendants are not legally obligated to pay as damages; statutory, civil or criminal fines, fees or penalties; punitive or exemplary damages; and losses arising from intentional misconduct, willful, wanton, reckless or grossly negligent behavior, or illegal conduct.

## THIRTY-SECOND ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent an insured relinquished or otherwise waived or released rights under any applicable insurance policies.

## THIRTY-THIRD ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent they are barred by the terms of any settlement agreement.

## THIRTY-FOURTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent any alleged harm was caused by superseding and/or intervening causes by third parties not under the control of the Answering Defendants' insured(s).

## THIRTY-FIFTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent that KFI is seeking coverage for costs relating to the underlying claims incurred prior to the date of notice to the Answering Defendants; nor are any pre-tender costs covered under any policy alleged to have been issued by the Answering Defendants.

## THIRTY-SIXTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent that KFI is seeking coverage for expenses that are not reasonable and necessary to the defense of KFI in underlying claims, or amounts paid in settlement that are not reasonable.

## THIRTY-SEVENTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent that the Answering Defendants are entitled to a set-off or credit for any amounts paid by other insurers and/or third parties.

## THIRTY-EIGHTH ADDITIONAL DEFENSE

To the extent that the Answering Defendants may be liable for any loss alleged by KFI, such liability being expressly denied, the extent of such coverage must be limited by the terms of the policies issued by the Answering Defendants and principles of allocation based upon the nature and timing of the alleged injuries and damage and the time on the risk.

## THIRTY-NINTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, because KFI has failed to provide the Answering Defendants complete and sufficient information or documentation showing coverage under any policy alleged to have been issued by the Answering Defendants, or an amount of loss for any covered occurrence.

## FORTIETH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent that KFI had prior knowledge of bodily injury, personal injury, or property damage for which they seek coverage and to the extent that such knowledge precludes coverage for such bodily injury, personal injury or property damage under the policies alleged to have been issued by the Answering Defendants.

## FORTY-FIRST ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent that, with respect to any specific underlying claim, KFI is seeking coverage for the underlying claim which is subject, in whole or in part, to an exclusion contained in or incorporated in any policy alleged to have been issued by the Answering Defendants that provides that the policy or underlying policy shall not apply to any obligation for which the insured or any of its insurers may be held liable under any worker's or unemployment compensation, disability benefits, or similar law, or to any voluntary payment of benefits under any unemployment compensation, disability benefits or similar law.

## FORTY-SECOND ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent that KFI is seeking coverage or contribution for harm or damages that fall within any exclusion contained in or incorporated in any policy alleged to have been issued by the

Answering Defendants for injury to, damage to, or destruction of property owned, used by, rented by, occupied by, possessed by, or within the care, custody or control of an insured.

### FORTY-THIRD ADDITIONAL DEFENSE

KFI's claims the Answering Defendants are or may be barred, in whole or in part, to the extent that recovery is sought for costs and expenses incurred pursuant to the ordinary course of business.

### FORTY-FOURTH ADDITIONAL DEFENSE

KFI's claims the Answering Defendants are or may be barred, in whole or in part, to the extent that, KFI seeks coverage for preventive or prophylactic measures.

### FORTY- FIFTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants are barred or may be barred, in whole or in part, to the extent that KFI is seeking coverage for underlying matters that do not constitute claims or suits within the meaning of any policy alleged to have been issued by the Answering Defendants.

### FORTY-SIXTH ADDITIONAL DEFENSE

KFI's claims against the Answering Defendants may be barred, in whole or in part, to the extent that KFI has not incurred damages or costs for which it seeks indemnity under the policies alleged to have been issued by the Answering Defendants.

### FURTHER ADDITIONAL DEFENSES

At the time of this Answer to the Complaint, the Answering Defendants do not know whether further additional defenses may apply and do not knowingly or intentionally waive any applicable defenses. The Answering Defendants reserve the right to assert and rely upon other applicable defenses that may become available or apparent during discovery in this matter. Additionally, the Answering Defendants incorporate all defenses asserted by any other defendants

in this action to the extent that such defenses are also applicable and available to the Answering Defendants. The Answering Defendants reserve the right to amend their answer and/or defenses.

## DEMAND FOR JURY TRIAL

The Answering Defendants demand a jury trial on all issues so triable. Pursuant to 28 U.S.C. § 157(e) and Federal Rule of Bankruptcy Procedure 9015, the Answering Defendants do not consent to have a jury trial conducted by a bankruptcy judge.

## PRAYER FOR RELIEF

The Answering Defendants request that judgment be entered in their favor and against Plaintiff, and that the Court award the Answering Defendants their attorneys' fees, costs, and such other relief as the Court deems appropriate.

Dated: February 12, 2024        Goldstein & McClintock, LLLP

/s/ Maria Aprile Sawczuk
Maria Aprile Sawczuk (No. 3320)
501 Silverside Road, Suite 65
Wilmington, DE 19809
Telephone: (302) 444-6710
Facsimile: (302) 444-6709
E-Mail: marias@goldmclaw.com

and

Mark J. Leimkuhler (admitted *pro hac vice*)
Jessica R. Lobis Buckwalter (admitted *pro hac vice*)
Lewis Baach Kaufmann Middlemiss PLLC
1050 K Street, NW, Suite 400
Washington, DC 20001
Telephone: (202) 833-8900
Facsimile: (202) 466-5738
E-Mail: mark.leimkuhler@lbkmlaw.com
E-mail: jessica.buckwalter@lbkmlaw.com

and

David Christian, Esq. (admitted *pro hac vice*)
David Christian Attorneys LLC
105 W. Madison St., Suite 2300
Chicago, IL 60602
Telephone: (312) 282-5282
Email: dchristian@dca.law

*Attorneys for Wellfleet New York Insurance Company, formerly known as Atlanta International Insurance Company; Columbia Casualty Company; The Continental Insurance Company, on its own behalf and as successor-in-interest to Harbor Insurance Company and London Guarantee and Accident Company of New York; and Government Employees Insurance Company (GEICO)*