
# **EXHIBIT A**

**(*Proposed* Order)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>KFI WIND-DOWN CORP.,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 23-10638 (LSS) |
| KFI WIND-DOWN CORP,<br><br>Plaintiff,<br><br>v.<br><br>ACE AMERICAN INSURANCE COMPANY, *et al.*,<br><br>Defendants | Adv. Proc. No. 23-50758 (LSS)<br><br>(Consolidated Adversary Proceeding)<br><br>**Related Adv. Docket Nos. 297, 340** |

**ORDER REGARDING PROTOCOL FOR
<u>DOCUMENT COLLECTION AND PRODUCTION</u>**

To promote the efficient and expeditious disposition of the above-captioned adversary proceeding, the following protocol (the "**Protocol**") shall apply for document collection and production among KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. ("**KFI**") and the defendant insurers in the above-captioned action ("**Insurers**", and together with KFI, the "**Parties**") in the above-captioned adversary proceeding.

**IT IS HEREBY ORDERED THAT:**

This Protocol supplements the Federal Rules of Civil Procedure and the Local Rules of the United States Bankruptcy Court for the District of Delaware. The Parties mutually seek to reduce the time, expense, and other burdens of discovery of certain hard copy documents and ESI, and to better define the scope of their obligation with respect to producing such information and materials. This Protocol is intended to promote a "just, speedy, and inexpensive determination" of this

---

[1] The last four digits of Kidde-Fenwal, Inc.'s tax identification number are 5282. The Debtor's corporate headquarters is located at c/o Alix Partners, 909 Third Avenue, New York, NY 10022.

Chapter 11 Case. Fed. R. Civ. P. 1. This Protocol does not prevent the Parties from negotiating additional agreements regarding discovery as may be necessary in the course of this action. This Protocol is not intended to expand any document storage, preservation, or production requirement beyond the common law or the Federal Rules of Civil Procedure or to limit any protections otherwise available to a Party under the Federal Rules of Civil Procedure or the Federal Rules of Evidence.

**I.    Preservation and Production of Data**

1. By preserving information that is reasonably anticipated to be subject to discovery in this action in accordance with the terms of this Protocol, no Party shall be deemed to have waived any objection to particular discovery requests or the scope of discovery.

2. Absent a showing of good cause by a Party, activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery.

3. A Party may use technology assisted review ("TAR") or similar technologies to assist in the review of potentially relevant ESI, provided that the Party makes a good faith effort to ensure that the TAR or similar technologies being used are accurate to a reasonable degree.

4. To the extent a Producing Party has served production sets and responsive information in other litigations, including but not limited to *In re: Aqueous Film-Forming Foams Product Liability Litigation,* No. 2:18-mn-2873-RMG (D.S.C. 2018) (or the "AFFF MDL") it is not obligated to re-run or re-validate those production sets or responsive information and is not obligated to re-collect the documents that served as the basis for that production for the purpose of obtaining additional metadata as described in Part II.1 below. Should the Requesting Party come forward with a particularized need for additional metadata information as to a specific document, however, the parties will meet and confer to discuss reasonable efforts to locate and recollect such information.

5. To the extent that a Producing Party uses a prior production(s) to satisfy requests from a Receiving Party, the Producing Party will provide an explanation of the methodology and date ranges used to assemble the prior production(s). The utilization of a prior production(s) by a Producing Party to satisfy requests from a Receiving Party will not exempt the Producing Party from having to run additional and/or supplemental productions to account for additional keyword searches, custodians, and expanded date ranges that were not taken into account in assembling and serving the prior productions and relevant information, about which the parties shall upon request meet and confer in good faith.

6. Contingent upon each Party's compliance with the obligations set forth in this document, the Parties agree that the circumstances of this case do not warrant the preservation, review, or production of ESI that is not reasonably accessible because it is unlikely that significant relevant information would be located in those sources that is not otherwise available in reasonably accessible sources. Moreover, that remote possibility is substantially outweighed by the burden and cost of preservation and/or review and production of ESI from these sources. The Parties agree that the following ESI is not reasonably accessible: backup tapes; legacy data from systems no longer in use that are not readable by any system currently in use; residual, fragmented, damaged, permanently deleted, slack, and unallocated data, or other data only accessible by forensics; random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system; on-line access data such as temporary internet files, history, cache, cookies, and the like; data in metadata fields that are frequently updated automatically, such as last-opened dates; server, system, or network logs; voicemails; and call logs.

## II. ESI Production Specifications

1. Except as set forth below, each Party will produce ESI in single-page TIFF format with corresponding load files and multi-page OCR text or extracted text files. TIFF files shall be

created directly from the original electronic documents unless the original electronic documents no longer exist; a Party may not create a TIFF file from ESI by printing out paper copies of that electronic document and then scanning that paper copy of the ESI. Unless not feasible in certain circumstances to be discussed among the Parties, all TIFF files will conform to the following specifications:

    i. All TIFF files will be single page, black and white TIFF at 300x300 dpi resolution and 8½ x 11 inch page size, except and to the extent reasonably practicable for documents requiring color or different resolution or page size to be legible and comprehensible. Tracked changes, comments, or notes or other similar information shall be imaged so that this information is captured on the produced image file.

    ii. Each production of ESI and Documents shall include a standard format load file (Opticon opt, Concordance.Dat, Summation Dii, etc.) containing the production Beginning and Ending Bates numbers and the additional Metadata fields detailed below, and the appropriate unitization of the documents and family relationship shall accompany the TIFF production.

    iii. Except as otherwise agreed by the parties, all productions shall be made in .opt and .dat file formats.

    iv. All TIFF images shall be branded in the bottom right with a

Bates number, beginning with "ABC_00000001." Each page will also be branded in the bottom left corner with the appropriate confidentiality designation consistent with any protective order entered. Bates numbers should contain an alphanumeric prefix followed by an 8-digit number. Any numbers with less than 8 digits will be front padded with zeros to reach the required 8 digits. All ESI produced in TIFF format shall contain a unique Bates Number on each page of the document, electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document.

    v. Parties shall produce the following metadata fields to the extent they exist and are reasonably collectable with respect to the original electronic document or information, including files produced natively pursuant to Section l(vii) below:

        1. BegAttach
        2. EndAttach

       3.     From
       4.     To
       5.     CC
       6.     BCC
       7.     Subject
       8.     Datesent
       9.     Timesent
      10.    Datereceived
      11.    Timereceived
      12.    Datecreated (documents)
      13.    Timecreated (documents)
      14.    DateModified  (documents)
      15.    TimeModified  (documents)
      16.    Custodian
      11.    FileName
      12.    FileType
      13.    OriginalFilePath
      14.    Bates Begin
      15.    Bates End
      16.    Deduped Custodian
      17.    Deduped Custodian Path
      18.    All Custodian
      19.    All Custodian File Path
      20.    MD5 Hash (or SHA-1 Hash as applicable)
      21.    Extracted Text Path
      22.    Native File link
      23.    Page Count
      24.    Confidential Designation
      25.    Redaction
      26.    File Size
      27.    File Extension
      28.    Attachment Count
      29.    Attachment Names/Titles
      30.    Author (documents)
      31.    Title (documents)
      32.    Production Volume
      33.    Message ID
      34.    ESI Type

    vi.    Documents such as those that include hidden data, computer slide presentations (for example and without limitation PowerPoint files), spreadsheet files (for example and without limitation Excel files), audio files, video files, and other file types that cannot be accurately converted to image format as described in II.1.i. above shall be produced in native format unless such documents are redacted. The Producing Party shall produce a single page TIFF "placeholder" page for each such file bearing a Bates number and, if feasible, the placeholder page may also bear

    the file name, file type, and file extension. When a document is produced in native format, the Producing Party will append the relevant confidentiality designation, if any, to the file name.

 vii. The Parties, in consultation with their respective technical personnel shall promptly consult in good faith on a reasonable protocol for producing databases, and files that may not easily conform to the protocol above. In the event the Parties are unable to agree, either Party may promptly move the Court for an Order.

 viii. The presumptive source of extracted text shall be from the native file. Where a document has been redacted and produced in a .TIFF format, OCR may be used to generate text for the text file.

2. **De-duplication**. To the extent identical copies of ESI exist in a Producing Party's files, the Producing Party need only produce one such identical copy. Each Producing Party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. The All Custodian field shall include every custodian who was a source for that document, with each custodian value in the field separated by a semi-colon. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. Near-duplicate documents (*i.e.*, documents identified as duplicates based on criteria other than matching MD5 or SHA-1 hash values) shall not be removed without prior agreement of the parties. Email thread suppression techniques will not be applied in production, although such techniques may be used as a review tool. If global de-duplication is done across the entire collection, the Deduped Custodian field will list each custodian, separated by a semi-colon, who was a source of that document.

3. **De-NISTing.** ESI collections will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

4864-4274-5051, v. 3

4. **Zero-byte Files.** The Parties may filter out files identified as zero bytes in size and any logo files.

5. **Embedded Objects.** Embedded objects or files such as Excel spreadsheets, Word documents, audio and video files shall be extracted and searched consistent with its category of ESI. Non-substantive embedded files, such as logos, need not be extracted. All embedded files produced under this procedure shall be produced subject to the same requirements set forth in this Protocol. For production purposes, embedded files shall be identified as attachments to the parent document in which the file was embedded, and load files for such embedded files shall refer to the parent document in which the file was embedded.

### III. Supplemental Production of Specific Native Format Documents

1. Other than as set forth above, a Party may request native format files of specifically identified electronic documents from a Producing Party in accordance with the provisions of this Section III (each, a "**Requesting Party**").

2. No Requesting Party may seek to compel production of native format files on a wholesale or otherwise unreasonable basis.

3. Any request for native documents will be carried out under the following protocol:

   i. The Requesting Party will identify the native files sought by Bates range, ensuring that the BatesBegin value (*i.e.*, the first Bates number in a document) is used to identify the requested documents.

   ii. The Producing Party will respond in writing within ten (10) calendar days by either agreeing or refusing to produce the requested files.

   iii. If the Producing Party agrees to the request, the production shall be made within fifteen (15) calendar days of the notification of agreement or as otherwise agreed by the parties.

  iv. If the Producing Party refuses to produce the requested file(s), it shall provide a written statement of the reasons it declines the request. If the reason is technical difficulty in producing, the written statement shall detail the technical difficulty.

  v. The Requesting Party may then move the Court for relief, and any objections shall be due seven (7) days after service of the Motion. No reply briefs will be permitted.

**IV. Hard Copy Production Specifications**

  1. Hard copy documents and attachments should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following information: Custodian(s), Bates Number Beginning, Bates Number Ending, Family Range Beginning (Parent/Child Order), Family Range Ending (Parent/Child Order), Confidential Designation, Redaction, OCR Text Path, and Production Volume. Where reasonably feasible, hard copy documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. Where possible, original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape), and the Bates number shall be outside of the portions of the imaged pages containing content. At the request of the Receiving Party, document pages that have affixed notes, such as Post-it® Notes, shall be imaged with and without the note attached. If an original document contains color, then the document produced shall be in color, produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image. Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.

  2. Multi-page OCR text for each document will also be provided. OCR text files shall be provided as a single text file for each hard copy document, not one text file per page. The filename itself should match its respective TIFF or JPG filename. The OCR software shall

maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. Notwithstanding the requirements set forth above, absent a showing of good cause, a Party is not obligated to re-scan and re-process hard copy documents that were scanned before the entry of this Protocol.

3. If any Party determines that any of the specific requirements in this section impose an undue burden or otherwise present an issue with respect to compliance, the Parties shall meet and confer regarding that issue, including discussing any appropriate resolution of that issue or alternative process.

## V. Costs

1. The cost of preserving, collecting and producing documents shall be borne by the Producing Party. In the event, however, that a Party requests documents that would result in the production of cumulative or repetitive information that otherwise imposes an undue burden or expense, the Producing Party (*i.e.*, the party producing documents) may object. The Parties shall work to resolve any such objection. In the event that the Parties are unable to resolve an objection, and upon substantiation of that objection, the Producing Party may move the Court for an Order shifting the cost of producing such cumulative or repetitive information or information that otherwise imposes an undue burden or expense to the Receiving Party.

## VI. Redactions

1. The Producing Party may redact from any TIFF image, metadata field, or native file material that is protected from disclosure by applicable privilege or immunity or that is required by applicable law or regulation or as permitted by the Protective Order governing this case. Redactions must be limited to only language or information within the document deemed protected. For privilege redactions, the Producing Party shall identify redactions clearly on the

4864-4274-5051, v. 3

face of any TIFF image, either with "Redacted – Privileged" or similar language. For personally identifiable ("**PII**") redactions, the Producing Party shall use black boxes for redactions.

2. Spreadsheets requiring redactions must be produced with native redactions and re-OCRd text. If any type of document (other than a spreadsheet) that otherwise would be produced in native format requires redaction, such document may be produced in TIFF format with an OCR text file in accordance with this Protocol. The native file version of non-spreadsheet redacted documents need not be produced unless the Parties agree otherwise.

3. The Producing Party is not required to produce any of the following metadata for redacted documents:

    i. Title

    ii. Subject

    iii. FileName

    iv. OriginalFilePath

    v. All File Paths

    vi. MD5 or SHA 1 Hash

    vii. Attachment Names

4. Any Receiving Party may make, and the Producing Party shall meet and confer in good faith regarding, reasonable and appropriate requests for the metadata identified in Section VI(3) with respect to any redacted document.

**VII.  Other Issues**

1. **Encryption.** To maximize the security of information in transit, any production may be encrypted. In such cases, the Producing Party shall transmit the encryption key or password to the Receiving Party, under separate cover, contemporaneously with sending the encrypted media.

2.      **English Language.**  To the extent any Document exists in more than one language, the Document shall be produced in English, if available.  If no English version of the Document is available, the Producing Party does not have an obligation to produce an English translation of that Document.

3.      **Time Zone Standardization.**  The Parties acknowledge that if the processing time zone for this case is not standardized across the entire collection, then the email metadata for custodians in the different time zones will be different, because the time (and possibly the date) would be different.  As a result, two copies of the same email may fail to be de-duplicated, and the different time zones could create a convoluted chronology.  As a result, to the extent reasonably practicable the Parties agree to produce their ESI standardized to Eastern Standard Time (EST).

4.      **Protective Order.**  The terms of any Stipulated Protective Order (and any addendum thereto) filed with the Court are incorporated herein by reference and also govern all production pursuant to this Document Production Protocol.

5.      **Further Conferral.**  If any Party determines that any of the requirements in this Protocol impose an undue burden or otherwise pose an issue with respect to compliance, the Parties shall meet and confer regarding that issue, including discussing, as appropriate, an alternative process or processes.

6.      **Privilege Log.**  The parties will meet and confer further regarding privileged-document logging.

7.      Nothing contained herein limits a Producing Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

8.   Nothing in this Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.

9.   Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), an external hard drive, via a secure FTP site, or similar electronic format.

4864-4274-5051, v. 3