IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>KFI WIND-DOWN CORP.,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 23-10638 (LSS) |
| KFI WIND-DOWN CORP.,<br><br>Plaintiff,<br><br>v.<br><br>ACE AMERICAN INSURANCE COMPANY, *et al.*,<br><br>Defendants. | Adv. Proc. No. 23-50758 (LSS)<br><br>(Consolidated Adversary Proceeding)<br><br>**Re: Adv. D.I. 539 & 540** |

**AIG INSURERS' RESPONSE TO MOTION TO STAY ADVERSARY PROCEEDING FILED BY KFI WIND-DOWN CORP., THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND THE AD HOC COMMITTEE OF GOVERNMENTAL CLAIMANTS**

Defendants Lexington Insurance Company and National Union Fire Insurance Company of Pittsburg, Pa. (collectively, "AIG" or the "AIG Insurers"), respectfully submit this Response to the motion (the "KFI Stay Motion" or "Mot.")[2] [Adv. Pro. No. 23-50758, D.I. 539-40] filed by KFI Wind-Down Corp. (f/k/a Kidde-Fenwal, Inc.) ("KFI" or the "Debtor"), the Official Committee of Unsecured Creditors in the above-captioned bankruptcy proceeding (the "UCC"), and the Ad Hoc Committee of Governmental Claimants (the "Ad Hoc Committee" and with the UCC, the "Committees") (collectively, "Movants"), to stay the adversary proceeding captioned *KFI Wind-Down Corp. v. Ace American Insurance Co., et al.*, Adv. Pro. No. 23-50758 (LSS) (the "Adversary Proceeding"), pending the Effective Date of the Debtor's Chapter 11 plan.

---

[1] The last four digits of Kidde-Fenwal, Inc.'s tax identification number are 5282. The Debtor's corporate headquarters is located at c/o Alix Partners, 909 Third Avenue, New York, NY 10022.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**PRELIMINARY STATEMENT**

1. On November 9, 2023, KFI initiated this Adversary Proceeding against the Defendant-insurers, seeking insurance coverage for thousands of lawsuits alleging harms from aqueous film-forming foam ("AFFF") that allegedly has polluted soil and drinking water sources with PFAS over decades – the "AFFF Lawsuits." KFI's complaint named 37 insurers under 109 policies, including nine policies issued by the AIG Insurers. KFI named the AIG Insurers as defendants notwithstanding clearly applicable arbitration provisions in each of the AIG policies governing disputes concerning one of the key coverage issues raised by KFI's complaint – the interpretation of the pollution exclusions in those policies. As a result, on February 12, 2024, the AIG Insurers moved to stay the Adversary Proceeding against them in favor of arbitration. *See* Motion to Stay the Claims Against Them in Favor of Arbitration, Adv. Pro., D.I. 120 ("AIG Arbitration Stay Motion"). KFI opposed the AIG Arbitration Stay Motion, which remains pending.

2. Meanwhile, the parties to the Adversary Proceeding have been engaged in discovery, which has included the production of many hundreds of thousands of documents, extensive written discovery, third-party discovery, meet and confer sessions and discovery disputes. Throughout this process, the AIG Insurers have been clear that their participation in discovery pursuant to the Court's discovery orders is without prejudice to their arbitration rights.

3. On October 18, 2024, KFI filed a Notice of Entry into Plan Support Agreement. After nearly a year of mediation – from which the insurers were excluded – the Plan Settlement Agreement ("PSA") describes a partial proposed settlement involving KFI, the UCC (but not the Ad Hoc Committee) and the AFFF MDL Plaintiffs' Executive Committee with respect to two sub-classes of AFFF claims. The PSA claims to be seeking billions of dollars in insurance recoveries as the primary source of funding for a Settlement Trust that will be established to pay claimants in

the AFFF Lawsuits.  Schedule 1 to the PSA lists approximately 334 insurance and reinsurance policies under which coverage apparently will be sought, issued by about 80 insurers and reinsurers.  On November 14, 2024, KFI filed a Chapter 11 Plan of Liquidation ("Liquidation Plan"), as presaged by the PSA.

4.	The gist of the KFI Stay Motion is that the Adversary Proceeding should be stayed because the Liquidation Plan will seek to transfer to a Settlement Trust certain rights (allegedly held by KFI and non-debtors alike) to coverage for the AFFF Lawsuits under scores of insurance and reinsurance policies, and that Settlement Trust "will have the exclusive right . . . to control any coverage litigation relating to the" insurance policies listed in the PSA.  Mot. at 1.

5.	Thus, after opposing the AIG Arbitration Stay Motion, KFI itself now has asked to stay the Adversary Proceeding, because, as KFI certainly could have predicted before it filed the Adversary Proceeding, KFI is being liquidated and plans to transfer its insurance rights to a Settlement Trust.  KFI and the other Movants now argue that continuing the Adversary Proceeding that KFI brought would be "a waste of estate and judicial resources," because "[t]he intended recipients of the rights under the relevant Insurance Policies (the Settlement Trust and Carrier) would be deprived of the right to participate in the litigation before the Effective Date."  Mot. at 1-2.  Movants never explain how Carrier Global Corporation ("Carrier") could be an "intended recipient" of insurance proceeds, as opposed to the plaintiffs in the AFFF Lawsuits to which Carrier is allegedly liable, and for which liability Carrier now seeks indemnification.  Nor do Movants explain why Carrier would be "deprived" of the right to participate in the litigation, given Carrier's pending motion to intervene, which was supported by KFI and the Committees.  Be that as it may, the KFI Stay Motion and Liquidation Plan demonstrate that this Adversary Proceeding was premature and ill-advised from the get-go.

6.  The Court has discretion to set the terms of the stay requested in the KFI Stay Motion. As discussed further below, if the Court stays the Adversary Proceeding pursuant to the KFI Stay Motion, the AIG Insurers respectfully request that the Court include in the order staying the case language recognizing the pendency of the AIG Arbitration Stay Motion, and providing that the stay is without prejudice to the AIG Insurers' arbitration rights, as follows: **"The stay and adjournment of the Adversary Proceeding is without prejudice to the arbitration rights of Defendants National Union Fire Insurance Co. of Pittsburgh, Pa. and Lexington Insurance Company (collectively, the "AIG Insurers") asserted in the AIG Insurers' Motion to Stay the Claims Against Them in Favor of Arbitration (D.I. 120)."**

7.  Before the KFI Stay Motion was filed, the AIG Insurers informed Movants that they would not object to a stay as long as the Movants agreed to make clear that the AIG Insurers' arbitration rights would continue to be preserved. Movants did not respond to the AIG Insurers' proposal before filing the KFI Stay Motion, which makes no mention of the AIG Insurers' pending motion or arbitration rights, necessitating this Response.

## BACKGROUND

8.  On May 14, 2023, KFI filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in this Court. *See* Case No. 23-10638-LLS ("Main Case"), D.I. 1.

9.  On July 27, 2023, this Court entered an order extending the automatic stay provided to the Debtor through section 362(a) of title 11 of the United States Code to include Kidde plc, Kidde Fire Fighting, Inc., Chubb Fire Ltd., Carrier, Carrier Fire & Security Americas Corp., Inc., (f/k/a UTC Fire & Security Americas Corporation), Raytheon Technologies Corporation (f/k/a United Technologies Corporation), National Foam, Inc., Angus International Safety Group, Ltd., and Angus Fire Amour Corp. Main Case, D.I. 69. The order enjoined any AFFF claims against these companies, and has since been repeatedly extended by stipulation. *Id.*

10. On November 9, 2023, KFI commenced this Adversary Proceeding. Adv. Pro. No. 23-50758 ("Adv. Pro."), D.I. 1. In its complaint, KFI seeks declaratory relief against 37 insurers under 109 policies, including nine policies issued by the AIG Insurers. *Id.*

11. On November 21, 2023, the Court entered an order directing the following parties to attempt to mediate their disputes: KFI, the "Carrier Parties" (i.e., Carrier, Carrier Corporation, Carrier Fire & Security Corporation, Carrier Fire & Security Americas Corporation, and Kidde Fire Protection, Inc., along with their "predecessors, successors, assigns, subsidiaries, and current and former affiliates"),[3] the UCC, the Ad Hoc Committee, and the Plaintiffs' Executive Committee in the AFFF MDL (the "Mediation"). Main Case, D.I. 660, ¶ 2 & n.3. KFI's insurers were not invited to participate in the Mediation.

12. On November 21, 2023, the UCC moved to intervene in the Adversary Proceeding. *See* Adv. Pro., D.I. 5. On December 6, 2023, the AHC moved to intervene in the Adversary Proceeding. *See* Adv. Pro., D.I. 14.[4] These intervention motions were granted in April 2024. *See* Adv. Pro., D.I. 253, 273.

13. On February 12, 2024, the AIG Insurers filed the AIG Arbitration Stay Motion, asking the Court to enforce the arbitration provisions in their policies and to stay the claims against them in favor of arbitration. Adv. Pro., D.I. 120.

14. On April 2, 2024, the Court approved the sale of substantially all of KFI's assets to an affiliate of Pacific Avenue Capital Partners. Main Case, D.I. 1058.

---

[3] Although certain parties (e.g., RTX Corp.) are not specifically identified as "Carrier Parties" in the mediation order, they may still be participating in the mediation (or at least may be authorized to participate) on grounds that they are "Related Parties" as that term is defined in the Mediation Order. *See* Main Case, D.I. 660, ¶ 2 & n.3.

[4] On February 8, 2024, KFI initiated a separate adversary proceeding in which it raised materially identical allegations against Hartford Accident and Indemnity Company. *See* Adv. Pro. No. 24-50015. Hartford Accident and Indemnity Company answered KFI's complaint. *See* D.I. 12. On May 17, 2024, the Court granted a joint motion to consolidate this adversary proceeding with the earlier-filed adversary proceeding against KFI's other purported insurers. *See* D.I. 45.

15. On April 17, 2024, the legal representative for Future PFAS Personal Injury Claimants moved to intervene in the Adversary Proceeding. *See* Adv. Pro., D.I. 292. That motion remains pending.

16. On April 20, 2024, the Court entered a scheduling order in the Adversary Proceeding that had been agreed to by KFI and the Defendant-Insurers. Adv. Pro., D.I. 297. On September 16, 2024, the Court entered an amended scheduling order that modified certain case deadlines. Adv. Pro., D.I. 488. Under the current Amended Scheduling Order, the parties must substantially complete their production of documents in response to requests that were served on or before June 14, 2024, by November 13, 2024. *Id.* Fact depositions are scheduled to commence on February 10, 2025, and proceed through October 17, 2025. *Id.* All fact discovery must be completed by October 17, 2025. *Id.*

17. The AIG Insurers have participated in the discovery process based on KFI's agreement that such participation would be without prejudice to their arbitration rights and the pending AIG Arbitration Stay Motion. On November 13, 2024, the AIG Insurers produced documents to KFI in response to KFI's pending production requests.

18. On September 19, 2024, Carrier; Carrier Corporation; Carrier Fire & Security Americas LLC (f/k/a Carrier Fire & Security Americas Corporation f/k/a UTC Fire & Security Americas Corporation); Carrier Fire & Security LLC (f/k/a Carrier Fire & Security Corporation f/k/a UTC Fire & Security Corporation); Kidde PLC Inc., and RTX Corporation (f/k/a Raytheon Technologies Corporation f/k/a United Technologies Corporation) (collectively, "Intervenors") filed a motion to intervene in the Adversary Proceeding. Adv. Pro., D.I. 490-91. These affiliates of Carrier are the current parent of KFI, the successor to KFI's former parent, and related entities.

19. On October 3, 2024, certain Defendant-Insurers filed a joint response to the Intervenors' motion to intervene (the "Intervention Response"). Adv. Pro., D.I. 519. The

Intervention Response discussed the AIG Motion and included a proposed order with language explicitly preserving the AIG Insurers' arbitration rights.  Adv. Pro., D.I. 519-1.

20. On October 10, 2024, the Intervenors replied to the Intervention Response.  Adv. Pro., D.I. 529.  Intervenors did not object to explicitly preserving the AIG Insurers' arbitration rights.  *Id.*  Intervenors further agreed to adopt the following language in their proposed order: "The Intervenors shall be bound by any ruling on the Motion to Stay the Claims Against Them in Favor of Arbitration that Defendants Lexington Insurance Co. and National Union Fire Insurance Co. of Pittsburgh, Pa. filed in this consolidated adversary proceeding on February 12, 2024 (D.I. 120)."  *Id.* at 3.

21. On October 18, 2024, the Debtor filed notice that the Mediation had successfully concluded and that the Debtor, Carrier, the UCC, and the Co-Leads of the Plaintiffs' Executive Committee in the AFFF MDL had entered into the PSA.  Main Case, D.I. 1570-1.

22. On November 5, 2024, the Debtor and the UCC filed the KFI Stay Motion.  Adv. Pro., D.I. 539-40.

23. On November 14, 2024, KFI filed its Liquidation Plan.  Main Case, D.I. 1619.  As previewed in the PSA, the Liquidation Plan provides that the Debtor shall pursue a reorganization plan that transfers the Debtor's rights in connection with the Insurance Policies, which include, but are not limited to, the policies at issue in the Adversary Proceeding to a Settlement Trust.  *Id*.  Schedule 1 to the Liquidation Plan is identical to Schedule 1 to the PSA, which lists approximately 334 insurance policies under which coverage apparently will be sought, including approximately 181 policies not named in the Adversary Proceeding.  *Id*.  The schedule identifies at least 80 insurers and reinsurers, including approximately 40 insurers and reinsurers not named as defendants in the Adversary Proceeding.  *Id*.

Intervention Response discussed the AIG Motion and included a proposed order with language explicitly preserving the AIG Insurers' arbitration rights.  Adv. Pro., D.I. 519-1.

20. On October 10, 2024, the Intervenors replied to the Intervention Response.  Adv. Pro., D.I. 529.  Intervenors did not object to explicitly preserving the AIG Insurers' arbitration rights.  *Id.*  Intervenors further agreed to adopt the following language in their proposed order: "The Intervenors shall be bound by any ruling on the Motion to Stay the Claims Against Them in Favor of Arbitration that Defendants Lexington Insurance Co. and National Union Fire Insurance Co. of Pittsburgh, Pa. filed in this consolidated adversary proceeding on February 12, 2024 (D.I. 120)."  *Id.* at 3.

21. On October 18, 2024, the Debtor filed notice that the Mediation had successfully concluded and that the Debtor, Carrier, the UCC, and the Co-Leads of the Plaintiffs' Executive Committee in the AFFF MDL had entered into the PSA.  Main Case, D.I. 1570-1.

22. On November 5, 2024, the Debtor and the UCC filed the KFI Stay Motion.  Adv. Pro., D.I. 539-40.

23. On November 14, 2024, KFI filed its Liquidation Plan.  Main Case, D.I. 1619.  As previewed in the PSA, the Liquidation Plan provides that the Debtor shall pursue a reorganization plan that transfers the Debtor's rights in connection with the Insurance Policies, which include, but are not limited to, the policies at issue in the Adversary Proceeding to a Settlement Trust.  *Id*.  Schedule 1 to the Liquidation Plan is identical to Schedule 1 to the PSA, which lists approximately 334 insurance policies under which coverage apparently will be sought, including approximately 181 policies not named in the Adversary Proceeding.  *Id*.  The schedule identifies at least 80 insurers and reinsurers, including approximately 40 insurers and reinsurers not named as defendants in the Adversary Proceeding.  *Id*.

## ARGUMENT

24.  A court has the inherent power to "control the disposition of the causes on its docket" by staying proceedings.  *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936). "[T]he decision of whether to grant a stay rests within the sound discretion of the court through the exercise of judgment, weighing competing interesting and maintaining an even balance." *Alsoy v. Ciceksepeti Internet Hizmetleri Anonim Sirketi*, 232 F. Supp. 3d 613, 620 (D. Del. 2017) (internal quotation omitted).  A stay should not provide a tactical advantage to one party or cause unfairness to another party.  *See Landis,* 299 U.S. at 255 ("the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.").  "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.*  When evaluating whether a stay is appropriate, courts use several factors as guidance: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party, i.e., the balance of harms; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay will promote judicial economy, e.g., how close to trial has the litigation advanced."  *Alsoy,* 232 F. Supp. 3d *at* 620.

25.  Courts have used their discretion to refuse to issue stays in cases where the moving party would inappropriately receive a "tactical disadvantage." *See, e.g.*, *ARGOS v. Orthotec LLC*, 304 F. Supp. 2d 591, 598 (D. Del. 2004) (finding that a stay would provide a "distinct advantage" to the moving party and "merely delay" exercise of the non-moving party's rights).  KFI should not be granted a tactical advantage by allowing a stay of the Adversary Proceeding to prejudice the AIG Insurers' arbitration rights or to be used to advance an argument of waiver of those rights. The Federal Arbitration Act establishes arbitration as a favored method of dispute resolution, and the Third Circuit has consistently upheld the primacy of arbitration agreements in light of this

strong federal policy. *See, e.g.*, *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003) (the Federal Arbitration Act "establishes a strong federal policy in favor of the resolution of disputes through arbitration"). As the AIG Insurers demonstrated in their Arbitration Stay Motion, they are entitled to a stay of any litigation over the policies named in the Adversary Complaint seeking coverage for AFFF lawsuits in favor of arbitration of the dispute concerning the pollution exclusions in their policies. Adv. Pro., D.I. 120. This is true whether the entity seeking coverage is KFI or a bankruptcy trust.

26. The AIG Insurers do not oppose the KFI Stay Motion so long it is clear that as the stay is without prejudice to the AIG Insurers' arbitration rights asserted in the AIG Arbitration Stay Motion. *Id.* Otherwise, KFI will receive an inappropriate "tactical []advantage" and the AIG Insurers would be "unduly prejudice[d]" by the stay. *See Alsoy,* 232 F. Supp. 3d at 620.

27. Although the AIG Insurers raised the issue of preservation of their arbitration rights with KFI, the KFI Stay motion does not address the issue. However, in the Intervenors' reply to the Intervention Motion, Intervenors did not object to explicitly preserving the AIG Insurers' arbitration rights. Adv. Pro., D.I. 529. Intervenors further agreed to adopt the following language in their proposed order: "The Intervenors shall be bound by any ruling on the Motion to Stay the Claims Against Them in Favor of Arbitration that Defendants Lexington Insurance Co. and National Union Fire Insurance Co. of Pittsburgh, Pa. filed in this consolidated adversary proceeding on February 12, 2024 (D.I. 120)." *Id.* at 3.

28. In sum, the AIG Insurers respectfully urge the Court to include in any stay order language that explicitly preserves the AIG Insurers' arbitration rights.

## RELIEF REQUESTED

WHEREFORE, the AIG Insurers respectfully request that, in the event the Court grants the KFI Stay Motion, the following sentence be included in the stay order: "The stay and

adjournment of the Adversary Proceeding is without prejudice to the arbitration rights of Defendants National Union Fire Insurance Co. of Pittsburgh, Pa. and Lexington Insurance Company (collectively, the "AIG Insurers") asserted in the AIG Insurers' Motion to Stay the Claims Against Them in Favor of Arbitration (D.I. 120)."

| | |
|---|---|
| Dated: November 19, 2024<br>Wilmington, Delaware | **CHIPMAN BROWN CICERO & COLE, LLP**<br><br>*/s/ William E. Chipman, Jr.*<br>William E. Chipman, Jr. (No. 3818)<br>Hercules Plaza<br>1313 North Market Street, Suite 5400<br>Wilmington, Delaware 19801<br>Telephone:    (302) 295-0191<br>Email: chipman@chipmanbrown.com<br><br>**WILLKIE FARR & GALLAGHER LLP**<br><br>Christopher J. St. Jeanos (Admitted *pro hac vice*)<br>James H. Burbage (Admitted *pro hac vice*)<br>Simone Marton (Admitted *pro hac vice*)<br>787 Seventh Avenue<br>New York, New York 10019<br>Telephone:    (212) 728-8000<br>Facsimile:     (212) 728-9000<br>Email: cstjeanos@willkie.com<br>          jburbage@willkie.com<br>          smarton@willkie.com<br><br>Joseph G. Davis (Admitted *pro hac vice*)<br>1875 K Street, N.W.<br>Washington, D.C. 20006<br>Telephone:    (202) 303-1000<br>Facsimile:     (202) 303-2000<br>Email: jdavis@willkie.com<br><br>Jennifer Hardy (Admitted *pro hac vice*)<br>600 Travis Street<br>Houston, Texas 77002<br>Telephone:    (713) 510-1766<br>Email: jhardy2@willkie.com<br><br>*Counsel for National Union Fire Insurance Company of Pittsburgh, Pa. and Lexington Insurance Company* |

4853-9704-3965, v. 1