## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |
| KFI WIND-DOWN CORP., | Adv. Pro. No. 23-50758 (LSS) |
| Plaintiff, | (Consolidated Adversary Proceeding) |
| v. | |
| ACE AMERICAN INSURANCE COMPANY, *et al.*, | |
| Defendants. | |

## CERTAIN INSURERS' OPPOSITION TO MOTION OF KFI WIND-DOWN CORP. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO STAY ADVERSARY PROCEEDING

---

[1] The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters is located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT.................................................................................................... 3

   **A.**   **The Insurers Would Be Materially Prejudiced by a Stay.**........................................... 3

   **B.**   **Allowing the Adversary Proceeding to Continue Will Not Prejudice the Estate.**........ 7

   **C.**   **In the Alternative, the Court Should Permit Limited Discovery.** ............................... 9

CONCLUSION ........................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*In re Majestic Star Casino, LLC*
    No. 10-50841 (KG), 2010 WL 2540457
    (Bankr. D. Del. Apr. 24, 2010) ...........................................................................................7

*In re Point Investments, Ltd.*
    Civ. No. 23-630-CFC, 2024 WL 4262832
    (D. Del. Sept. 23, 2024) ...................................................................................................3

*Prairie Ventures, L.L.C. v. Liotta*
    No. 1:16-CV-2966-MHC, 2018 WL 11351132
    (N.D. Ga. Sept. 13, 2018) .................................................................................................3

Certain Insurers[2] respectfully oppose KFI Wind-Down Corp.'s ("KFI" or the "Debtor") and the Official Committee of Unsecured Creditors' (the "UCC," together with Debtor, the "Moving Parties") motion for entry of an order staying the above-captioned Adversary Proceeding pending the Effective Date of the Plan (the "Motion").  The Moving Parties cannot meet their burden for a stay here.  There is no prejudice at all to the Moving Parties in declining to stay this Adversary Proceeding that they initiated and that is neither wasteful nor unduly burdensome.  A stay, on the other hand, would substantially prejudice the insurers, who have spent considerable resources laying the groundwork for discovery in this case, including discovery that may be more difficult (or not possible) to obtain with the passage of time.  There is no reason to short-circuit that process, and the Court should deny the Motion.  At a minimum, the Court should permit the insurers to obtain limited discovery – the great majority of which does not come from the Debtor and does not create an undue burden or prejudice.

## PRELIMINARY STATEMENT

1.      On November 9, 2023, KFI initiated this Adversary Proceeding, suing dozens of its alleged insurers and asserting that it is entitled to coverage for its alleged AFFF liabilities.  Shortly thereafter, the parties served their first discovery requests on one another, and the parties have been hard at work conducting written discovery since that time.  *See, e.g.*, Adv. D.I. 194 & 195.  The parties have also served third-party discovery.  *See, e.g.*, Adv. D.I. 348, 385, 404, 406, 433, 445, 471–473.  In bringing this action, therefore, KFI ***chose*** to operate on a dual track – working towards a plan while at the same time pursuing its declaratory judgment and breach-of-contract claims against the defendant insurers.

[2]    The Certain Insurers include Great American Assurance Company and Great American Insurance Company of New York ("Great American") and Endurance American Specialty Insurance Company.

1

2.      Since KFI began this proceeding, the parties have spent significant time and money litigating this case.  The defendant insurers' efforts have included (among other things): (i) negotiating case schedules and confidentiality agreements (including with third parties); (ii) serving written discovery (including to third parties); (iii) extensive investigations by each insurer of its own files with regards to the extent of coverage for KFI and its affiliates; and (iv) collecting, reviewing, and producing hundreds of thousands of pages of the insurers' own documents, including hundreds of insurance policies, as well as extensive underwriting and other secondary documents that may evidence the issuance of additional policies.

3.      By stalling the Adversary until thirty days following the Effective Date of any Plan, the Moving Parties seek an inappropriate litigation advantage.  The Moving Parties are asking this Court to guarantee that, post-confirmation, the trustee will have ample opportunity to select a friendly forum for post-confirmation litigation in lieu of resuming this case.  That is not a legitimate basis for a stay.

4.      Moreover, if that occurs, the insurers (and the estate) also will have wasted a significant amount of time and money on the extensive discovery negotiations that have taken place, including the addendum to the bankruptcy protective order [D.I. 1571], efforts to take third-party discovery and evaluating the strength of their coverage defenses in this jurisdiction.

5.      Prior to filing this opposition, the insurers engaged in meet and confer discussions with the Moving Parties.  As part of their efforts to compromise, the insurers requested the completion of limited discovery – much of which would be sought from third parties – that the insurers would propose to complete, while permitting remaining elements of the Adversary Proceeding to be stayed until plan confirmation.  The Moving Parties never responded, and offered no rationale for why the limited discovery the insurers requested could not continue, nor

have they demonstrated any prejudice at all that the Adversary poses to plan confirmation efforts. This Court should deny the Motion or, at a minimum, should permit the insurers to take targeted discovery that will advance the ultimate resolution of these coverage disputes.

## ARGUMENT

6. In determining whether a stay is appropriate, courts weigh the "prejudice [that] would result [to the proponent of the stay] by continuation of the adversary proceeding" against "the hardship to [the opposing party] in maintaining the stay." *In re Point Invs., Ltd.*, Civ. No. 23-630-CFC, 2024 WL 4262832, at *10 (D. Del. Sept. 23, 2024); *see also Prairie Ventures, L.L.C. v. Liotta*, No. 1:16-CV-2966-MHC, 2018 WL 11351132, at *1 (N.D. Ga. Sept. 13, 2018) (weighing "efficiencies gained by staying the instant case [against] any potential prejudice . . . ."). Because "greater prejudice" would fall upon the insurers if the Court were to grant a stay, the Court should deny the Motion. *In re Point Invs., Ltd.*, 2024 WL 4262832, at *10. Indeed, here, the prejudice falls entirely (or nearly entirely) on the insurers.

### A.    The Insurers Would Be Materially Prejudiced by a Stay.

7. *First*, the Moving Parties' request for a stay is premature because the outcome they posit for this case is speculative. The Moving Parties assert that the Plan of Liquidation filed in accordance with the Plan Support Agreement ("PSA") provides for formation of a trust and that, post-confirmation, the trustee supervising it will be charged with resolution of certain insurance assets, including some (but not all) of the insurance policies that are at issue in this Adversary Proceeding.

8. It is not clear, however, when (or even if) a plan will ultimately be confirmed. As this Court is aware, confirmation of a Chapter 11 Plan in a mass tort case is a complex process

that often takes many months, if not years.[3]  And the Plan process here is still in its preliminary stages; at least as of the date of this opposition, no disclosure statement has been filed and none of the key dates has been set.  Moreover, the *Purdue* decision has complicated matters further, particularly where (as here) a plan may implicate third-party releases.  And the insurers have a number of concerns as to whether the debtor's plan can pass muster under the Bankruptcy Code, particularly under a post-*Purdue* regime.  Insurance assets are likely to be a key trust asset, yet this delay could prevent the insurers from obtaining discovery needed to resolve coverage disputes for years.

9.      A delay is particularly prejudicial to the insurers because, in a coverage action such as this one, an insured has most of the critical information relevant to resolution of coverage disputes.  The insurers have only recently received essential document discovery after months of negotiation with the Debtor and its related entities, such as National Foam.[4]  These documents undoubtedly will raise further questions and may indicate a need for additional written discovery on critical coverage issues, including serving deposition notices under Rule 30(b)(6) for KFI and National Foam to authenticate conclusive figures for AFFF sales, market share, and customers sales over time.

10.     A stay at this juncture would short circuit this process.  That is particularly prejudicial due to the prospect of potential loss of evidence because of the passage of time.  It has been ***decades*** since key witnesses were employed as part of the National Foam Business, and those witnesses will only be more difficult to locate and depose with time.  Moreover, to the

---

[3]     In the *Imerys* bankruptcy cases, for example, debtors filed their first plan on May 15, 2020, more than four years ago; in the *Cyprus* bankruptcy, debtor filed its first plan on February 17, 2021, more than three years ago.  To date, neither case has a confirmed plan.
[4]     The insurers were not dilatory in seeking this information.  The insurers have requested this basic information from KFI via omnibus interrogatories almost seven months ago, on May 21, 2024.  *See* Adv. D.I. 337.

extent that there are documents within the possession of the Debtor, a stay at this point poses a different risk. It appears that the Debtor intends to liquidate and wind-down, and it is unclear what will happen to documents and other information that is within the Debtor's custody once the Debtor liquidates. Likewise, Article 5.14 of the Plan provides that all directors and officers of the Debtor will be terminated as of the Effective Date, making it more difficult to locate witnesses who may have relevant testimony. The insurers should be permitted to take discovery before this information is lost.

11.    Likewise, the parties have made significant progress in discovery in the Adversary – progress that may be lost if there is a stay. In particular:

- The parties have exchanged dozens of written discovery requests and responses, produced thousands of pages of documents, and reached numerous compromises regarding discovery. And the parties have made this progress at great expense. A stay, followed by new litigation in a foreign forum could cause all that progress to be lost.

- Similarly, the parties spent months negotiating, at great costs, a mechanism for production of key documents from the AFFF MDL. The protective order revisions that were formulated to allow for this was the result of work by KFI, the insurers and a number of third parties. The Court should not enter a stay that would cause the parties to have to start this process anew.

12.    A stay, therefore, could result in the loss of substantial progress towards the resolution of coverage disputes that the Moving Parties *agree* will need to be resolved, whether now or in the future. The Court should not permit the Moving Parties to frustrate the efforts that the insurers have made in this Adversary, particularly when it was KFI that brought this action and forced the insurers to incur these costs.

13.     ***Second***, a stay would frustrate the insurers' efforts to obtain legitimate third-party discovery, which does not significantly burden the estate.[5]  Certain insurers have issued third-party subpoenas seeking discovery on a number of subjects including:  (i) relevant sales, market share, and customers of AFFF over the relevant time periods; (ii) information regarding what KFI (and other alleged insureds) knew of the harms associated with its AFFF and when it knew it; and (iii) when KFI started manufacturing AFFF in the first instance.  Forcing the insurers to discontinue pursuit of this discovery (which does not burden the estate) is both unnecessary and prejudicial to the insurers, several of whom have spent considerable time and effort obtaining this discovery in response to KFI's decision to bring this Adversary Proceeding.

14.     For similar reasons, a stay at this juncture would frustrate Certain Insurers' attempts to obtain discovery from proposed intervenors such as Carrier Global Corporation ("Carrier") and its affiliate intervenors ("Affiliates").  The Certain Insurers had only limited objections to the scope of Carrier's Motion to Intervene, and with good reason.  *See* Adv. D.I. 491.  Carrier is particularly important to this coverage dispute.  Not only is Carrier an indirect parent of KFI, but the Plan specifically contemplates that certain of Carrier's liabilities for AFFF Claims will be transferred to a trust, allegedly along with insurance rights under Certain Insurers' policies.  Additionally, the Affiliates now also purport to have rights to coverage under Certain Insurers' policies, which Certain Insurers should be entitled to test.

15.     Pursuing this discovery places few, if any, obligations or burden on the estate. But Carrier and the Affiliates may not be a party to a subsequent coverage action that the trustee initiates, nor will Carrier and the Affiliates be concerned to preserve relevant documents and

---

[5]     Subpoenas are outstanding to the following entities:  Carrier Global Corporation; the Fire Fighting Foam Coalition; Fire and Emergency Manufacturers Services Association; and National Fire Protection Association, Inc.

other evidence pertaining to liabilities that are being transferred to the Trust.  Barring the insurers from pursuing discovery from Carrier and the Affiliates now is unfairly prejudicial.

      **B.**      **Allowing the Adversary Proceeding to Continue Does Not Prejudice the Estate.**

      16.      The Moving Parties, in contrast, will not suffer any prejudice in the absence of a stay.  While the Moving Parties cite the need to avoid burden, waste and distraction, there is no evidence that a stay is necessary to avoid any of them.

      17.      ***Discovery is not "wasteful."***  First, the continuation of this case and, in particular, the completion of document discovery (which is the only discovery currently going forward) will not be "wasteful," even if the Moving Parties are able to move forward and confirm a plan.  The discovery that the parties conduct can and will be used to "jumpstart" any subsequent coverage action, leaving the trustee and the insurers with less discovery to complete.  The discovery taken now, in other words, will be useful to the parties.  And, given that documents and other discovery generally become less available over time, not more, there is no reason to disrupt the current discovery process, particularly with respect to discovery sought from third parties, which places no burden at all on the Debtor.

      18.      ***Continuing the Adversary Proceeding is not a "distraction."***  Likewise, there is no evidence that the Adversary Proceeding will be an undue "distraction."  The Moving Parties contend that they should not be required to "juggle" the Adversary Proceeding with moving forward with a proposed plan.  The cases that the Moving Parties cite, however, are not on point.  Those cases merely recognize that a stay may be appropriate where dual proceedings would be a distraction from senior management's focus on a reorganization.  *See, e.g.*, *In re Majestic Star Casino, LLC*, No. 10-50841 (KG), 2010 WL 2540457, at *2 (Bankr. D. Del. Apr. 24, 2010).  That danger is not present here and the Moving Parties have offered no evidence otherwise.

Certain Insurers' proposed discovery of third parties does not place significant demands (or any) on Debtor's management. Moreover, both KFI and the Committee are represented in this Adversary Proceeding by two leading insurance recovery law firms specifically hired to address coverage issues. Those firms handle multiple cases as a matter of course and have more than adequate resources to ensure that the Adversary Proceeding does not unduly distract from plan proceedings.

19.     If the parties complete document discovery and move into depositions that affect key personnel, then it may be appropriate for the Moving Parties to come back to the Court to seek appropriate protections or renew their motion. But at present, it cannot fairly be said that continuation of document discovery would in any sense be a distraction.

20.     ***The cost of the Adversary Proceeding is not an undue burden.*** Finally, Moving Parties have not shown that allowing the Adversary Proceeding to continue would "drain estate and judicial resources." *See* Adv. D.I. 540 at 6. Expense is one result of deciding to pursue litigation. But there is no waste or prejudice if discovery proceeds. This discovery is work that will have to be done one way or another. Any work that is accomplished now (and paid for by the estate) in the Adversary Proceeding likely would eventually have to be done by the Settlement Trust and its lawyers. While costs that the estate incurs now may reduce the assets that are available to be transferred to the trust for the benefit of creditors, there will be a resulting savings in litigation costs for the trustee, who will not be required to duplicate the work that is completed here.

**C.    In the Alternative, the Court Should Permit Limited Discovery.**

21.    A stay is unwarranted.  To the extent that the Court is inclined to stay the

Adversary, however, the Certain Insurers request that such stay be subject to limited carveouts

for discrete discovery that can be completed with little or no burden on the estate.

22.    Certain Insurers request that, if the Court imposes a stay, at a minimum the

following items of discovery be carved out and permitted to proceed:

> a.  KFI's Mediation Statements.  Certain insurers have requested KFI's
> mediation statements, both from the bankruptcy case as well as the
> underlying AFFF MDL, and no mediation privilege prevents KFI from
> producing its own materials.  These statements are likely to contain
> information and evaluations concerning the AFFF liabilities (both for KFI
> and for Carrier) for which coverage is sought in the Adversary.  The
> Certain Insurers are also concerned that, following confirmation, KFI may
> wind down and dispose of its assets, making it more difficult to obtain
> these statements.  There has never been any basis for KFI to withhold its
> *own* mediation statement from its insurers.  They should be required to be
> produced now.
>
> b.  KFI's claim evaluations.  Similarly, the insurers have made repeated
> requests for KFI's liability evaluations and/or assessments of the claims
> between it and Carrier Global.  Much like KFI's mediation statements,
> these evaluative materials are likely to contain critical information
> concerning the liabilities for which KFI and Carrier are seeking coverage.
> And, like the mediation statements, the Certain Insurers are concerned that
> it may be more difficult or impossible to obtain these materials in post-
> confirmation litigation.
>
> c.  Deposition of a KFI document custodian.  As noted above, the passage of
> time will threaten the insurers' ability to get information that is already
> decades old, and the wind-down of KFI is likely to result in the dispersal
> of the company's knowledge concerning what documents it has, how they
> are maintained and where they are kept.  The Certain Insurers should be
> permitted a deposition to gather information about where KFI's relevant
> documents are now, before more time passes and before KFI dissolves and
> a potential settlement trust takes over.
>
> d.  Third-party discovery.  The Certain Insurers should be permitted to
> complete discovery that has already been served on various non-parties
> (including proposed intervenors such as Carrier).  This discovery is also
> critical to understanding the nature of the AFFF liabilities at issue, as well

as potential coverage defenses (such as the insureds' knowledge of harm). The Certain Insurers have expended considerable resources to serve these requests, and there is no burden on the estate for this discovery to proceed.

 *e.*  <u>Production of certain deposition transcripts and associated exhibits.</u> Finally, the Certain Insurers should be permitted to obtain a limited number of depositions transcripts and associated exhibits from the AFFF MDL that are in the possession of KFI, including key witnesses for the Kidde Defendants, National Foam and the Fire Fighting Foam Coalition, which bear directly on the nature of the liabilities at issue in this Adversary.  KFI should also be required to provide other documents from the AFFF MDL, including:  (a) written discovery responses from the KFI Defendants, National Foam, or any other KFI affiliates; (b) expert reports; (c) the Kidde Defendants' privilege and redaction logs; and (d) unredacted copies of the Government Contractor Defense summary judgment briefing and exhibits from the AFFF MDL.

Each of these categories of documents is relevant to the coverage disputes, whether they are

ultimately resolved here, or in another forum.  They pose little burden to the estate, as they

consist of either third-party documents or documents that should be readily identifiable.  To the

extent that the Court decides that a stay is otherwise warranted, the insurers should be permitted

to obtain this limited discovery now, rather than being forced to bear the risk that it will be

unavailable later.

<strong><u>CONCLUSION</u></strong>

 For the foregoing reasons, the Certain Insurers respectfully request that the Court deny

the Motion or, in the alternative, permit the insurers to obtain limited discovery.


 Date:  November 19, 2024      Respectfully submitted,

              **BODELL BOVÉ LLC**

              /s/ Bruce W. McCullough

              Bruce W. McCullough (Del. ID 3112)
              1225 N. King Street, Suite 1000
              Wilmington, DE 19801-3250
              Telephone: (302) 655-6749

bmccullough@bodellbove.com

-and-

**RUGGERI PARKS WEINBERG LLP**
Joshua D. Weinberg (admitted *pro hac vice*)
Annette P. Rolain (admitted *pro hac vice*)
1875 K Street NW, Suite 600
Washington, DC 20006
Telephone: (202) 984-1400
jweinberg@ruggerilaw.com
arolain@ruggerilaw.com

*Counsel for Great American Assurance
Company and Great American Insurance
Company of New York*

*/s/ Robert K. Beste*

Of counsel:

Paul R. Koepff
Kevin Haas
Ryan Westerfield
Mina Beshara
Clyde & Co. LLP
405 Lexington Avenue, 16th Fl.
New York, New York 10174
Telephone: (212) 710-3900
paul.koepff@clydeco.com

Fred L. Alvarez
Walker Wilcox Matousek LLP
One North Franklin Street, Suite 3200
Chicago, IL 60606
Telephone: (312) 244-6700
falvarez@walkerwilcox.com

Tony L. Draper
Walker Wilcox Matousek LLP
1001 McKinney Street, Suite 2000
Houston, Texas 77002
Telephone: (713) 343-6556

Robert K. Beste (Del. ID 3931)
Smith, Katzenstein & Jenkins LLP
1000 North West Street, Suite 1501
Wilmington, DE 19899
Telephone: (302) 652-8400
rkb@skjlaw.com

*Counsel for Endurance American Specialty
Insurance Company*

11