# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>KFI WIND-DOWN CORP.,[1]<br><br>              Debtor. | Chapter 11<br><br>Case No. 23-10638 (LSS) |
| KFI WIND-DOWN CORP.,<br><br>              Plaintiff,<br><br>v.<br><br>ACE AMERICAN INSURANCE COMPANY, *et al.*,<br><br>              Defendants. | Adv. Pro. No. 23-50758 (LSS)<br><br>(Consolidated Adversary Proceeding) |

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF KFI WIND-DOWN CORP., THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND THE AD HOC COMMITTEE OF GOVERNMENTAL CLAIMANTS <u>TO STAY ADVERSARY PROCEEDING</u>**

---

[1] The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters is located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

**TABLE OF CONTENTS**

                                                **Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

    I.    The Imposition of a Stay Would Not Prejudice the Opposing Insurers. ............................ 3

        A.    The Adversary Proceeding Is Still in the Initial Phases of Document Discovery. ........... 3

        B.    The Plan Support Agreement Provides for Extensive Cooperation with the Debtor to Ensure a Smooth Transition as the Debtor Winds Down Its Operations. ........................ 6

        C.    The Adversary Proceeding Is an Improper Forum Through Which to Conduct Plan Discovery. ...................................................................................................................... 7

    II.    Continuing the Adversary Proceeding Would Be Prejudicial to the Contemplated Settlement Trust and Wasteful of Estate Resources. ............................................................ 8

CONCLUSION ...................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Archdiocese of Milwaukee*,
   511 B.R. 551 (Bankr. E.D. Wis. 2014), *rev'd and remanded due to change in circumstances in the case, the original circumstances being applicable here*,
   523 B.R. 655 (E.D. Wis. 2014)..................................................................................8

*In re DaVita Inc. Stockholder Derivative Litig.*,
   No. 17-152-MPT, 2018 WL 3105061 (D. Del. June 25, 2018)..................................3

*Schmitt v. Arbor Care Tree Experts, Inc. (In re Schmitt)*,
   Adv. Proc. No. 10-00572DK, 2010 WL 3829469 (Bankr. D. Md. Sept. 24, 2010) ........................................................................................................................9

**Rules & Regulations**

Fed. R. Bank. P. 2004 ........................................................................................................8

**INTRODUCTION**

Certain Insurers'[2] and Great American and Endurance's[3] (the "**Opposing Insurers**") oppositions to KFI Wind-Down Corp. (f/k/a Kidde-Fenwal, Inc.) ("**KFI**" or the "**Debtor**"), the Official Committee of Unsecured Creditors (the "**UCC**"), and the Ad Hoc Committee of Governmental Claimants' (the "**Ad Hoc Committee**," together, with the Debtor and the UCC, the "**Movants**") Motion to Stay the Adversary Proceeding (the "**Motion**") ignore basic facts about the status of the Adversary Proceeding and the Debtor's chapter 11 case (the "**Bankruptcy Case**") as well as the contemplated structure for resolving the Bankruptcy Case under the Plan Support Agreement[4] and the Debtor's plan of reorganization (the "**Plan**").[5]

Under the Plan Support Agreement, rights to the Insurance Policies will be transferred to the post-bankruptcy Settlement Trust. Subject to Carrier Global Corporation's ("**Carrier**") Insurance Consent Rights, the Settlement Trust—not the Debtor—will have the exclusive right to (1) pursue and monetize the Insurance Policies, and (2) control any coverage litigation relating to

---

[2] "Certain Insurers" include: ACE American Insurance Company; Allstate Insurance Company (solely as successor-in-interest to Northbrook Excess and Surplus Insurance Company, formerly Northbrook Insurance Company); American Guarantee & Liability Insurance Company; Arch Insurance Company and Arch Specialty Insurance Company; Century Indemnity Company (as successor to CIGNA Specialty Insurance Company f/k/a California Union Insurance Company; and as successor to CCI Insurance Company, as successor to Insurance Company of North America); Columbia Casualty Company; The Continental Insurance Company (on its own behalf and as successor-in-interest to Harbor Insurance Company and London Guarantee and Accident Company of New York); Federal Insurance Company; First State Insurance Company; Government Employees Insurance Company (GEICO); Hartford Accident and Indemnity Company; Pacific Employers Insurance Company; Travelers Casualty and Surety Company (f/k/a The Aetna Casualty and Surety Company); Twin City Fire Insurance Company; United National Insurance Company; Wellfleet New York Insurance Company (formerly known as Atlanta International Insurance Company); and Zurich American Insurance Company.
[3] "Great American" and "Endurance" mean Great American Assurance Company and Great American Insurance Company of New York and Endurance American Specialty Insurance Company, respectively.
[4] Capitalized terms not defined herein shall have the meanings ascribed to them in the Settlement Support Agreement with Respect to Estate Claims Settlement, Chapter 11 Plan of Liquidation, and Class Settlements of Certain AFFF MDL Claims (the "**Plan Support Agreement**"), D.I. 1570–1.
[5] The Movants do not substantively respond to AIG Insurers' Response to the Motion to Stay, *see* A.D.I. 550, because they agree to include AIG's proposed language, with minimum alterations, in the proposed order. The Movants agree to include the following language in the proposed order: "The stay and adjournment of the Adversary Proceeding is without prejudice to the arbitration rights of Defendants National Union Fire Insurance Co. of Pittsburgh, Pa. and Lexington Insurance Company (collectively, the "AIG Insurers"), if any, asserted in the AIG Insurers' Motion to Stay the Claims Against Them in Favor of Arbitration (A.D.I. 120)." (emphasis added).

1

the Insurance Policies. Any continuation of the Adversary Proceeding takes away, and potentially prejudices, the rights of the Settlement Trust to control any coverage litigation.

The imposition of a stay now, when document discovery is not nearly complete, would not prejudice the Opposing Insurers. The Plan Support Agreement further provides safeguards to ensure that the Debtor's documents and records transfer to the Settlement Trust so that no information is lost as the Debtor winds down. To ensure that the Opposing Insurers suffer no prejudice, the Movants are amenable to several compromises proposed by the Opposing Insurers, as detailed below. The Opposing Insurers' requests for extensive discovery, however, are unworkable. The continuation of discovery would defy the definition of and reasons for the stay.

A stay of the Adversary Proceeding is particularly pressing now as the Bankruptcy Case quickly proceeds towards Plan confirmation proceedings. The Debtor filed a Plan on November 14, 2024, D.I. 1619, and an amended Plan and Disclosure Statement on November 25, 2024, D.I. 1649, 1650. The filed Plan contemplates the negotiation of various trust agreements, Trust Distribution Procedures ("**TDPs**"), and cooperation agreements. The parties should be focusing their efforts and resources on drafting and negotiating these documents. Continuing the Adversary Proceeding at this juncture only serves to drain estate and judicial resources and distract the parties from these efforts.

**ARGUMENT**

1.      The Court should exercise its inherent power to stay the Adversary Proceeding here where, given the status of the Adversary Proceeding, a stay would not prejudice the Opposing Insurers, and would instead potentially prejudice the contemplated Settlement Trust and its right to control any insurance litigation, and waste estate and judicial resources, which resources should be used towards implementation of the Plan Support Agreement and advancing the Bankruptcy Case to Plan confirmation proceedings.

**I.      The Imposition of a Stay Would Not Prejudice the Opposing Insurers.**

*A.      The Adversary Proceeding Is Still in the Initial Phases of Document Discovery.*

2.      The Adversary Proceeding is still in the preliminary phases of discovery, and substantial document discovery remains to be completed. Under the current Amended Scheduling Order, which likely needs to be further amended based on the current status of discovery,[6] depositions are not scheduled to commence until the new year. Fact discovery cut-off is not until October 2025, expert discovery cut-off is not until April 2026, and dispositive motions are not due until June 2026. The parties are a long way away from a trial date.[7] A stay of the proceedings at this juncture, when document discovery is in its early stages and prior to the noticing of any depositions, is a natural point to pause the litigation and would not prejudice the Opposing Insurers.

3.      As the Opposing Insurers point out, *see* Certain Insurers Opp'n, A.D.I. 552 ¶ 9; Great American Opp'n, A.D.I. 551 ¶ 4, navigating complex protective order issues has slowed the pace of the discovery process. The Defendant Insurers (including insurers not opposing the Motion)[8] delayed their receipt of many documents by refusing to sign the protective order applicable to the AFFF MDL under any circumstances and refusing to sign the Bankruptcy Protective Order (D.I. 337-1) until it was renegotiated. The Addendum to Protective Order for Adversary Proceedings Involving Insurance (the "**Protective Order Addendum**") (D.I. 1571) sought by the Defendant Insurers, permitting, among other things, the Defendant Insurers to share

---

[6] At the October 9, 2024 hearing, in response to a reference to the date of the end of substantial completion of document production, the Court remarked:

> THE COURT: Do we think that's going to happen? Is that real? . . .
> THE COURT: Because I'm not hearing that it is. I mean . . .
> THE COURT: You know, I'm not inviting a request or a stipulation. But just from what I'm hearing today, it doesn't sound like it's happening . . . .

Hr'g Tr. 69:25 ‑70:9.

[7] One factor courts weigh in deciding a motion to stay is whether "discovery is complete and a trial date set." *In re DaVita Inc. Stockholder Derivative Litig.*, No. 17-152-MPT, 2018 WL 3105061, at *3 (D. Del. June 25, 2018).

[8] The "Defendant Insurers" refers to all the insurer defendants in the Adversary Proceeding.

3

documents previously produced under an attorneys-eyes-only designation with their clients, was entered only approximately two weeks prior to the filing of the Motion.[9]

4. While the Opposing Insurers argue this fact means "[d]iscovery is now well underway," the opposite is true. Certain Insurers Opp'n, A.D.I. 552 ¶ 9. At this stage in the Adversary Proceeding, the majority of document discovery has been the production of the Debtor's documents. The Defendant Insurers have produced minimal documents (7,475 in total, across dozens of insurers), with eight Defendant Insurers having produced less than 20 documents, including one that has produced zero documents.[10] *See* Decl. of Bruno Campos ("Campos Decl.") ¶¶ 2–3. In contrast, the Debtor has produced 161,198 documents to all Defendant Insurers and has produced to Chubb[11] an additional 253,632 documents originally produced in the AFFF MDL by National Foam.[12] Campos Decl. ¶ 4. The failure of the Opposing Insurers to produce documents led the Debtor and the UCC to bring motions to compel certain discovery against, at least initially, one Opposing Insurer. Further, since the filing of the Motion to Stay the Adversary Proceeding, document discovery has effectively been paused with no Opposing Insurer producing further documents; since that time, only the AIG Insurers have made a production – their first production

---

[9] Now that the Protective Order Addendum has been signed, the Defendant Insurers have no reason to continue to delay signing the Bankruptcy Protective Order (D.I. 337-1), but the Defendant Insurers have yet to provide evidence that they have done so.

[10] Admiral Insurance Company has not produced any documents; seven other Defendant Insurers have produced less than 20 documents: RSA Insurance Group Limited (17), Arch Insurance Company and Arch Specialty Insurance Company (10), Employers Mutual Casualty Company through Coaction Specialty Management Company, Inc. (8), TIG Insurance Company as successor to Gibraltar Casualty Company and Evanston Insurance Company (4), United National Insurance Company (3). Campos Decl. ¶ 3.

[11] "Chubb" refers to ACE American Insurance Company, Century Indemnity Company (as successor to CIGNA Specialty Insurance Company, formerly known as California Union Insurance Company; and as successor to CCI Insurance Company, as successor to Insurance Company of North America), Federal Insurance Company, and Pacific Employers Insurance Company.

[12] On September 9, 2024, counsel for National Foam confirmed in writing to the Debtor that National Foam had reached an agreement with Chubb whereby National Foam agreed to permit the Debtor to provide National Foam's AFFF MDL production to Chubb subject to Chubb's agreement to certain conditions regarding the confidential treatment of such documents. The Debtor has not received written confirmation from National Foam that it has reached an agreement permitting the production of its documents to any other Defendant Insurer. The Debtor is prepared to produce these documents to other Defendant Insurers upon receiving written confirmation from National Foam that it may do so. Campos Decl. ¶ 5.

4

was made on November 13, 2024 – and the AIG Insurers do not oppose the stay.  Campos Decl. ¶ 6.  Pausing the Adversary Proceeding now, before extensive analysis, discussions, and decisions have been undertaken, will not prejudice the Opposing Insurers.

5.      While the Movants are not in the position to make strategic decisions that will ultimately belong to the Settlement Trust pursuant to the Plan Support Agreement and Plan, to ensure the Opposing Insurers suffer no prejudice as to discovery conducted to date, the Movants will not object if the Court, in its discretion, orders:

- that discovery requests, responses, and compromises reached prior to November 5, 2024 in the Adversary Proceeding be used in any future coverage action, subject to applicable law; and

- that discovery of underlying MDL documents be permitted, once the stay is lifted, pursuant to a structure that is substantially similar to the Protective Order Addendum, subject to applicable law.

6.      Additionally, the Debtor is open to considering many of the Opposing Insurers' specific requests that certain documents produced in the MDL, *see* Certain Insurers Opp'n, A.D.I. 552 ¶¶ 5, 37; Great American Opp'n, A.D.I. 551 ¶ 22, be produced to the Defendant Insurers notwithstanding a stay of the Adversary Proceeding, subject to all parties' compliance with the Bankruptcy Protective Order and the AFFF MDL protective order and to the extent such documents are in the Debtor's possession as doing so would not require extensive efforts to search for documents.

7.      In the interest of further compromise, and understanding that some third-party discovery is in process, and that the continuation of a portion of that third-party discovery would not materially deplete the resources of the estate, the Movants are willing to agree to permit the

5

continuation of *document* discovery that was propounded on or prior to the filing of the Motion against third-party entities that have not moved to intervene in this Adversary Proceeding.

8.      Unlike the third-party entities from which discovery has been sought, Intervenors Carrier and its affiliates and RTX Corporation (f/k/a United Technologies Corp.) (the "**Intervenors**") are current and former corporate affiliates of the Debtor.  *See* Compl., A.D.I. 1 ¶¶ 3, 86–100.  The Intervenors have asserted that they "are entitled to coverage . . . for the AFFF Claims to the same extent that [Debtor] is," have a "direct, substantial, and independent stake in the outcome of the Adversary Proceeding," and are "asserting the same claims against the same insurance company defendants" as the Debtor has done in the Adversary Proceeding.  *See* Mem. In Supp. of Mot. to Intervene in Adversary Proc., A.D.I. 491 ¶ 3; *see also id.* ¶¶ 20–21.  Accordingly, permitting broad discovery by the Opposing Insurers of the Debtor's current and former corporate affiliates would serve as a back-door to the stay of the Adversary Proceeding, effectively allowing continued discovery as to the Debtor, demanding the Debtor's attention and thereby further depleting the resources of the estate.

>  B.    *The Plan Support Agreement Provides for Extensive Cooperation with the Debtor to Ensure a Smooth Transition as the Debtor Winds Down Its Operations.*

9.      The Opposing Insurers will suffer no prejudice due to the Debtor's transition towards liquidation.  The Plan Support Agreement provides that both the Debtor and Carrier will "provide the Settlement Trust with all documents related to any Insurance Policy, Insurance Action, or that are reasonably related to the Settlement Trust's pursuit of its rights under the Insurance Assignment," not including documents subject to a privilege held by Carrier.  *See* Plan Support Agreement, § 2.01(h) & Ex. A-1, at 2.  The Plan Support Agreement further requires that the parties execute a cooperation agreement to delineate the Debtor's and Carrier's cooperation requirements and responsibilities.  Cooperation agreements in mass tort bankruptcies typically also

address the post-bankruptcy trust's access to key witnesses to prevent any loss of knowledge of the facts pertinent to the coverage litigation. It does not behoove the contemplated Settlement Trust to obtain anything less from the Debtor and Carrier than all documents and resources necessary for the Settlement Trust to pursue the Insurance Rights in good faith.

C. *The Adversary Proceeding Is an Improper Forum Through Which to Conduct Plan Discovery.*

10. The Opposing Insurers insist that discovery must continue in the Adversary Proceeding because they need certain discovery to be able to evaluate "[t]he reasonableness of the recently filed Plan Support Agreement." Certain Insurers Opp'n, A.D.I. 552 ¶ 25.[13] The Bankruptcy Case and not the Adversary Proceeding is the proper forum to conduct this discovery. The Opposing Insurers may seek this information in the context of Plan confirmation proceedings.

11. Further, some of the discovery related to the Plan that the Opposing Insurers seek now in the Adversary Proceeding has already been rejected by the Court in the Bankruptcy Case. Certain Opposing Insurers previously sought "documents, including but not limited to drafts of the plan of reorganization, that the Debtor and the Committees have exchanged in the mediation." *See* Chubb Insurers' 2004 Mot., D.I. 1116 ¶ 2. The Court denied this request. Hr'g Tr. 37:12, June 5, 2024. The Opposing Insurers now request, as an example, "KFI's mediation statement(s) in . . . the court-ordered mediation." Great American Opp'n, A.D.I. 551 ¶ 22(a); *see also* Certain Insurers Opp'n, A.D.I. 552 ¶ 22(a).

12. In the interest of compromise, however, while reserving their rights to object on other grounds and assert any applicable privileges and protections, the Movants are willing to agree that they will not object to discovery appropriately sought by Opposing Insurers in the

---

[13] *See also* Certain Insurers Opp'n, A.D.I. 552 ¶ 21 ("Halting discovery in this Adversary Proceeding until after a Plan is confirmed may also limit the ability of the insurers, as interested parties, to obtain the information they need to understand the implications of the Plan . . . .").

7

Bankruptcy Case pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure on the basis of the "pending proceeding" rule.

## II. Continuing the Adversary Proceeding Would Be Prejudicial to the Contemplated Settlement Trust and Wasteful of Estate Resources.

13. In their requests to continue the litigation or, at the very least, continue discovery, the Opposing Insurers patently ignore the rights of the Settlement Trust contemplated under the Plan Support Agreement and the now-filed Plan. Far from an "unnecessary middleman,"[14] the Settlement Trust will have control over any coverage litigation post-confirmation (subject to Carrier's Insurance Consent Rights). Any litigation decisions made now, before the Effective Date of the Plan and the creation of the Settlement Trust, bind the Settlement Trust to a strategy it had no input in creating. What the Opposing Insurers seek to frame as easing the burden for the Settlement Trust—"tak[ing decisions] *off* the Settlement Trust's plate"—will in fact eliminate options that would otherwise be available to the Settlement Trust, potentially prejudicing the Settlement Trust and depriving it, and ultimately the AFFF claimants as beneficiaries of the Settlement Trust, of the ability to implement its own litigation strategy.[15]

14. Given the pace at which the Bankruptcy Case is now progressing, the parties' resources are best spent implementing the Plan Support Agreement and moving towards Plan confirmation. As described above, a Plan was filed on November 14, 2024, and amended Plan and Disclosure Statement was filed on November 25, 2024. The Bankruptcy Proceeding is quickly moving towards Plan confirmation proceedings—a hearing on the Disclosure Statement is scheduled for January 22, 2025, and the Disclosure Statement proposes that the Plan confirmation hearing occur on April 30, 2025. The Plan contemplates the negotiation of various trust

---

[14] *See* Certain Insurers Opp'n, A.D.I. 552 ¶ 32.
[15] *See In re Archdiocese of Milwaukee*, 511 B.R. 551, 555 (Bankr. E.D. Wis. 2014), *rev'd and remanded due to change in circumstances in the case, the original circumstances being applicable here*, 523 B.R. 655 (E.D. Wis. 2014).

agreements, TDPs, and cooperation agreements. The parties should be focusing their efforts and resources on drafting and negotiating these documents. Continuing the Adversary Proceeding would only serve to drain estate and judicial resources and distract the parties from these efforts.[16]

## CONCLUSION

For the foregoing reasons, the Court should grant the Movant's Motion and order that the Adversary Proceeding by stayed until the Effective Date of the Plan, as modified herein.

---

[16] *See, e.g.*, *Schmitt v. Arbor Care Tree Experts, Inc. (In re Schmitt)*, Adv. Proc. No. 10-00572DK, 2010 WL 3829469, at *3 (Bankr. D. Md. Sept. 24, 2010) (granting a motion to stay adversary proceeding "for reasons of judicial efficiency").

| | |
|---|---|
| Dated: November 26, 2024 | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br><br>By: /s/ *Derek C. Abbott*<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Daniel B. Butz (No. 4227)<br>Tamara K. Mann (No. 5643)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br>E-mail: dabbott@morrisnichols.com<br>aremming@morrisnichols.com<br>dbutz@morrisnichols.com<br>tmann@morrisnichols.com<br><br>-and-<br><br>**COVINGTON & BURLING LLP**<br>Benedict M. Lenhart (admitted *pro hac vice*)<br>Alexis N. Dyschkant (admitted *pro hac vice*)<br>Kevin R. Glandon (admitted *pro hac vice*)<br>One CityCenter<br>850 Tenth Street, NW<br>Washington, DC 20001<br>Telephone: (202) 662-5575<br>E-mail: blenhart@cov.com<br>adyschkant@cov.com<br>kglandon@cov.com<br><br>David A. Luttinger, Jr. (admitted *pro hac vice*)<br>New York Times Building<br>620 8th Ave<br>New York, NY 10018<br>Telephone: (212) 841-1134<br>E-mail: dluttinger@cov.com<br><br>*Counsel for KFI Wind-Down Corp. (f/k/a Kidde-Fenwal, Inc.)* |

| | |
|---|---|
| /s/ Daniel K. Hogan | Sander L. Esserman, Esquire |
| Daniel K. Hogan, Esquire (DE # 2814) | Peter C. D'Apice, Esquire |
| Garvan F. McDaniel, Esquire (DE # 4167) | Cliff I. Taylor, Esquire |
| Daniel C. Kerrick, Esquire (DE # 5027) | STUTZMAN, BROMBERG, |
| HOGAN♦MCDANIEL | ESSERMAN, & PLIFKA, |
| 1311 Delaware Avenue | A Professional Corporation |
| Wilmington, DE 19806 | 2323 Bryan Street, Ste. 2200 |
| (302) 656-7540; (302) 656-7599 (f) | Dallas, TX 75201 |
| E-mail: dkhogan@dkhogan.com | (214) 969-4900; (214) 969-4999 (f) |
| gmcdaniel@dkhogan.com | E-mail: esserman@sbep-law.com |
| dckerrick@dkhogan.com | dapice@sbep-law.com |
| | taylor@sbep-law.com |
| *Local Counsel to the Official Committee of Unsecured Creditors* | *Co-Lead Counsel to the Official Committee of Unsecured Creditors* |

-and-

| | |
|---|---|
| David J. Molton, Esquire | Cathrine M. Castaldi, Esquire |
| Jeffrey L. Jonas, Esquire | BROWN RUDNICK LLP |
| Sigmund S. Wissner-Gross, Esquire | 2211 Michelson Drive, 7th Floor |
| D. Cameron Moxley, Esquire | Irvine, CA 92612 |
| Kenneth Aulet, Esquire | (949) 752-7100; (949) 525-1514 (f) |
| Gerard T. Cicero, Esquire | E-mail: ccastaldi@brownrudnick.com |
| Susan Sieger-Grimm, Esquire | |
| BROWN RUDNICK LLP | *Co-Lead Counsel to the Official Committee of Unsecured Creditors* |
| 7 Times Square | |
| New York, NY 10036 | |
| (212) 209-4800; (212) 209-4801 (f) | |
| E-mail: dmolton@brownrudnick.com | |
| jjonas@brownrudnick.com | |
| swissner-gross@brownrudnick.com | |
| dmoxley@brownrudnick.com | |
| kaulet@brownrudnick.com | |
| gcicero@brownrudnick.com | |
| ssieger-grimm@brownrudnick.com | |

*Co-Lead Counsel to the Official Committee of Unsecured Creditors*

-and-

11

| | |
|---|---|
| Kami E. Quinn, Esquire<br>Emily P. Grim, Esquire<br>W. Hunter Winstead, Esquire<br>Daniel I. Wolf, Esquire<br>Ethan H. Kaminsky, Esquire<br>Alison D. Gaske, Esquire<br>Lelia F. Parker, Esquire<br>Ifenanya Agwu, Esquire<br>GILBERT LLP<br>700 Pennsylvania Avenue, SE<br>Suite 400<br>Washington, DC 20003<br>(202) 772-2200; (202) 772-3333 (f)<br>E-mail: quinnk@gilbertlegal.com<br>grime@gilbertlegal.com<br>winsteadh@gilbertlegal.com<br>wolfd@gilbertlegal.com<br>kaminskye@gilbertlegal.com<br>gaskea@gilbertlegal.com<br>parkerl@gilbertlegal.com<br>agwui@gilbertlegal.com<br><br>*Special Insurance Counsel to the Official Committee of Unsecured Creditors* | Eric R. Goodman, Esquire<br>BROWN RUDNICK LLP<br>601 Thirteenth Street, NW, Ste. 600<br>Washington, DC 20005<br>(202) 536-1700; (202) 536-1701 (f)<br>E-mail: egoodman@brownrudnick.com<br><br>*Co-Lead Counsel to the Official Committee of Unsecured Creditors* |

*-and-*

                                          **A. M. SACCULLO LEGAL, LLC**
                                          */s/ Anthony M. Saccullo*
                                          Anthony M. Saccullo (Bar No. 4141)
                                          Mark T. Hurford (Bar No. 3299)
                                          Mary E. Augustine (Bar No. 4477)
                                          27 Crimson King Drive
                                          Bear, Delaware 19701
                                          Telephone: (302) 836-8877
                                          Facsimile: (302) 836-8787
                                          E-mail: ams@saccullolegal.com
                                          mark@saccullolegal.com

*-and-*

**KELLEY DRYE & WARREN LLP**
James S. Carr (admitted *pro hac vice*)
Whitney M. Smith (admitted *pro hac vice*)
Richard Gage (admitted *pro hac vice*)
Steven Yachik (admitted *pro hac vice*)
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Tel: (212) 808-7800
Fax: (212) 808-7897
Email: jcarr@kelleydrye.com
wsmith@kelleydrye.com
rgage@kelleydrye.com
syachik@kelleydrye.com

*Counsel to the Ad Hoc Committee of Governmental Claimants*